UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

_____
                                    )
RANBAXY LABORATORIES LIMITED,       )
Plot No. 90, Sector 92              )
Gurgaon 122001 Haryana              )
India                               )
                                    )
RANBAXY INC.,                       )
600 College Road East               )
Princeton, New Jersey 08540 and     )
                                    )
RANBAXY PHARMACEUTICALS, INC.,      )
9431 Florida Mining Boulevard. East )
Jacksonville, Florida 32257         )
                                    )
        Plaintiffs,                 )
                                    )
        v.                          )   CIVIL NO.
                                    )
MICHAEL O. LEAVITT                  )
SECRETARY OF HEALTH AND HUMAN       )
SERVICES                            )
        and                         )
DEPARTMENT OF HEALTH AND            )
HUMAN SERVICES                      )
        and                         )
LESTER M. CRAWFORD.,                )
COMMISSIONER OF                     )
FOOD AND DRUGS,                     )
        and                         )
FOOD AND DRUG ADMINISTRATION,       )
                                    )
        Defendants.                 )
_____)

COMPLAINT FOR DECLATORY JUDGMENT
AND INJUNCTIVE RELIEF

Plaintiffs Ranbaxy Laboratories Limited, Ranbaxy Inc., and Ranbaxy Pharmaceuticals, Inc., (collectively, "Ranbaxy") by and through their counsel, respectfully bring this action

against the Food and Drug Administration ("FDA"), the Department of Health and Human Services, Lester M. Crawford, D.V.M., Ph.D., Commissioner of Food and Drugs, and Michael O. Leavitt, Secretary of the United States Department of Health and Human Services. In support thereof, Plaintiffs state the following:

### Nature of the Action

1. The Hatch Waxman amendments ("Hatch Waxman") to the Federal Food, Drug, and Cosmetic Act ("FDCA") sought to encourage the availability of low cost generic drugs. To accomplish this purpose, Congress provided incentives to encourage generics to challenge the patents claiming brand name drugs. As an incentive for challenging the patents, Congress provided a 180-day period of exclusivity to the first applicant to seek FDA approval for a generic version of a drug and challenged the patent listed with the FDA claiming the drug - effectively a six month head start on other generic competitors.

2. Ranbaxy was the first to submit an application for a generic version of Merck's brand-name drug Zocor® in the 80 mg strength. In its application, Ranbaxy challenged two patents that Merck and Company ("Merck") had listed as claiming Zocor, entitling Ranbaxy to 180-day exclusivity. After Ranbaxy had earned exclusivity for simvastatin 80 mg, Merck requested that FDA remove the listing of those patents as patents claiming Zocor. FDA did so, but did so prior to the expiration of Ranbaxy's 180-day exclusivity. As a consequence, FDA has nullified Ranbaxy's entitlement to 180-day exclusivity.

3. Ranbaxy is entitled to 180-day exclusivity regardless of whether Merck continues to assert that the patents claim Zocor. FDA has recognized an entitlement to 180-day exclusivity notwithstanding a request for removal of listed patents in similar circumstances, but refuses to recognize it in these circumstances. FDA's refusal to recognize Ranbaxy's 180-day exclusivity

violates section 505(j)(5) of the FDCA, is in excess of stuatuory authority, arbitrary and capricious, an abuse of discretion, and otherwise not in accordance with law, and is therefore in violation of the Administrative Procedures Act.

Parties

4. Plaintiff Ranbaxy Laboratories Limited is an Indian corporation, with its principal place of business in New Delhi, India. Ranbaxy Laboratories Limited is engaged in the development, manufacturing, and marketing of pharmaceuticals in the United States and worldwide.

5. Plaintiff Ranbaxy Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Princeton, N.J. Ranbaxy Inc. is a wholly owned subsidiary of Ranbaxy Laboratories Limited, and is the agent of Ranbaxy Laboratories Limited in the United States.

6. Plaintiff Ranbaxy Pharmaceuticals, Inc. is a corporation organized under the laws of Delaware, with its principal place of business in Princeton, N.J. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., and is the agent of Ranbaxy Inc. Ranbaxy Laboratories Limited deals with the FDA through Ranbaxy Pharmaceuticals, Inc.

7. Defendant Michael O. Leavitt, as Secretary of the Department of Health and Human Services, is responsible for administering the FDCA. That authority is exercised through the Commissioner of Food and Drugs pursuant to Section 903(d)(2) of the FDCA, 21 U.S.C. § 393(d)(2).

8. Defendant Department of Health and Human Services is an executive department administered by Secretary Leavitt, with responsibility under the FDCA for regulating drugs marketed in the United States.

9. Defendant Lester M. Crawford is Commissioner of Food and Drugs. He is responsible for executing the FDCA pursuant to Section 903(d)(2) of the FDCA, 21 U.S.C § 393(d)(2).

10. Defendant Food and Drug Administration is an administration in the Department of Health and Human Services, with responsibility pursuant to Section 903 of the FDCA, 21 U.S.C. § 393, for regulating drugs marketed in the United States.

11. Defendants Leavitt and Crawford are named only in their official capacities.

## Jurisdiction and Venue

12. This action arises under the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 201, et. seq., the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551-59, 701, et. seq., and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question). There exists an actual, justiciable controversy between the parties.

14. Venue is proper in this court pursuant to 28 U.S.C. § 1391(e).

## Factual and Legal Background

### Hatch Waxman 180-Day Exclusivity Incentive to Challenge Patents

15. Before marketing a drug that has not previously been approved by FDA, a manufacturer must submit a New Drug Application ("NDA") to FDA for approval. 21 U.S.C. § 355(a), (b). Among other information, an NDA must contain studies demonstrating that the drug is sufficiently safe and effective to merit approval. Drugs approved by means of an NDA are referred to as brand name drugs because they are usually marketed under a trade name for the drug product (Zocor), rather than the name of the active ingredient in the drug product (simvastatin).

4

16.     Hatch Waxman requires that an NDA must include the patent number and expiration date of any patent claiming the drug (or the use of the drug) that is the subject of the application. 21 U.S.C. § 355(b)(1).  When the NDA is approved, FDA lists this patent information in the Approved Drug Products With Therapeutic Equivalence Evaluations ( the "Orange Book").  Id. The statute also requires the NDA holder to update its NDA to list any patent that claims the drug (or a method of using the drug) issued after an NDA has been approved, for inclusion in the Orange Book.  21 U.S.C. § 355(c)(2).

17.     The listing of a patent in the Orange Book provides an NDA holder with certain statutory protection against FDA approval of a generic version of a drug that infringes a listed patent.

18.     A generic drug is a version of a brand-name drug, usually approved for the same indications as the brand-name drug, that contains the same active ingredient as the brand-name drug.  A generic version typically sells for less than the brand-name drug.

19.     An applicant for approval of a generic version of a previously approved brand-name drug may submit an abbreviated new drug application ("ANDA") referencing the brand-name drug.  An ANDA relies for proof of safety and efficacy on studies showing that the drug that is the subject of the application is bioequivalent to the brand-name drug.  21 U.S.C. § 355(j)(2)(A)(iv).  So long as bioequivalence can be demonstrated, a generic drug manufacturer need not duplicate the safety and efficacy studies that were conducted in support of the NDA.

20.     An ANDA must also contain one of four certifications regarding each patent listed in the Orange Book as claiming the drug.  An ANDA applicant must certify (I) that no patent information has been filed; or (II) that the patent has expired; or (III) the date on which the patent

will expire; or (IV) that the patent is invalid or will not be infringed by the drug for which the ANDA applicant seeks approval. 21 U.S.C. § 355(j)(2)(A)(vii).

21. If it makes a certification under paragraph IV (a "paragraph IV certification"), the ANDA applicant must also provide notice to the NDA holder of the paragraph IV certification. 21 U.S.C. § 355(j)(2)(B)(i). This notice must include specific information setting out the factual and legal bases for certifying that the patent is invalid or will not be infringed. 21 C.F.R. § 314.95(c)(6).

22. The filing of an ANDA is an act of infringement under the patent statute, 35 U.S.C. § 271(e)(2)(A), which enables the NDA holder to sue the ANDA applicant. Once an applicant makes a paragraph IV certification and provides notice, the NDA holder can determine whether the drug product that is the subject of the ANDA infringes its listed patent, and it may file a patent infringement suit against the ANDA applicant. If the patent holder brings suit within forty-five days of receiving notice, FDA's approval of the ANDA is stayed while the validity, enforceability and/or infringement of the patent is litigated, up to a period of thirty months. 21 U.S.C. § 355(j)(5)(B)(iii). If no action is brought within 45 days, FDA may approve an ANDA with a paragraph IV certification, and the approval becomes effective despite the unexpired patent.

23. The first ANDA applicant to file a paragraph IV certification to a listed patent generally bears considerable costs associated with the investigation necessary to determine the strength or weakness of the listed patent, the research and development necessary to manufacture a non-infringing drug, and/or costs associated with patent infringement litigation.

24. Hatch Waxman rewards the first generic applicant that files paragraph IV challenge by providing that the first applicant to submit an ANDA for the drug containing a paragraph IV

certification receives a 180-day period of exclusivity, during which time FDA may not approve other ANDAs. For any ANDA submitted prior to December 8, 2003, such as Ranbaxy's, Section 505(j)(5)(B)(iv) of the FDCA, 21 U.S.C. § 355(j)(5)(B)(iv) (2002), provides that if an ANDA with a paragraph IV certification "is for a drug for which a previous application has been submitted under this subsection [containing a paragraph IV] certification, the application shall be made effective not earlier than one hundred eighty days after" the earlier of (1) the ANDA applicant's first commercial marketing of the drug or (2) a decision of a court finding the patent invalid, unenforceable or not infringed.

25. A successful paragraph IV challenge to the NDA holder's patent can occur in one of two ways: by successfully designing a non-infringing drug product and thus avoiding a lawsuit for patent infringement or by a court judgment holding that a patent is invalid, unenforceable or not infringed.

26. An ANDA applicant can successfully challenge a listed patent by designing a generic version that does not infringe the NDA holder's listed patent. An ANDA applicant that successfully designs a non-infringing generic should not be sued within 45 days, in which case its approval will not be delayed by the 30-month stay, and it will be able to introduce its generic version in the market immediately.

27. An ANDA applicant also can successfully challenge a listed patent by virtue of a court judgment holding that the patent is invalid, unenforceable or not infringed, obtained either in a suit brought by a patent holder for infringement or through a declaratory judgment action brought by an ANDA applicant.

28. Regardless of whether the listed patent has been successfully challenged as a result of a court decision or by the NDA holder's decision not to contest approval of the ANDA

containing a paragraph IV certification, the first ANDA applicant receives 180-day exclusivity. Once the 180-day period has expired, FDA may then approve other ANDAs for the same brand-name drug.

Ranbaxy Is Entitled to 180-Day Exclusivity for Simvastatin 80 mg

29. Simvastatin is in a class of medications called HMG-CoA reductase inhibitors, also known as statins. Statins slow the production of cholesterol in the body. Because of this, statins are prescribed for the millions of Americans who suffer from atherosclerosis, a disease characterized by the build-up of cholesterol fats along the walls of blood vessels that can lead to heart disease, angina, strokes and heart attacks. Collectively, the statins are the most widely prescribed drugs in the United States.

30. Simvastatin is the active ingredient in Zocor, approved by FDA in 1991 for the reduction of elevated cholesterol levels. Currently, there are no generic versions of Zocor on the market.

31. Merck is the holder of NDA 19-766 for simvastatin, which it markets in 5 mg, 10 mg, 20 mg, 40 mg and 80 mg strengths.

32. Merck initially submitted one patent to FDA, United States Patent No. 4,444,784 ("the '784 patent"), as claiming Zocor. It later updated its NDA to list two additional patents, U.S. Patent No. RE 36,481 ("the '481 patent"), and U.S. Patent No. RE 36,520 ("the '520 patent"), as claiming Zocor. All three were listed in the Orange Book as of November 2001.

33. Ranbaxy submitted an ANDA referencing Zocor to FDA in November 2001. Ranbaxy's ANDA contained a paragraph III certification to the '784 patent and paragraph IV certifications to the '481 and '520 patents.

8

34.  Merck did not sue Ranbaxy within 45 days of receiving notice of Ranbaxy's paragraph IV certifications.

35.  While several applicants submitted ANDAs for simvastatin, Ranbaxy believes it was the first applicant to submit an ANDA with a paragraph IV certification to the '481 and '520 patents for simvastatin 80 mg.

36.  As the first to submit a substantially complete ANDA for the 80 mg strength with a paragraph IV certification to the '481 and '520 patents, Ranbaxy is entitled to 180-day exclusivity for simvastatin 80 mg.

37.  The exclusivity accorded Merck as a result of the '784 patent, to which Ranbaxy submitted a paragraph III certification, is scheduled to expire on June 23, 2006.

38.  Ranbaxy's ANDA received tentative approval from FDA on September 26, 2003. Tentative approval means that FDA has approved the ANDA with a delayed effective date, e.g., pending expiration of a patent on which the ANDA applicant has filed a paragraph III certification.  21 C.F.R. § 314.105(d).

39.  Ranbaxy is prepared to market simvastatin 80 mg immediately on receipt of final approval, which it anticipates that it will receive in June 2006.

FDA's Action to Extinguish Ranbaxy's 180-Day Exclusivity

40.  On September 24, 2004, Ranbaxy learned that FDA had amended the Orange Book to remove the '481 and '520 patents.  Neither Ranbaxy nor the public had been given an explanation or prior notice of FDA's action.

41.  Upon information and belief, FDA removed these patents at Merck's request.  Upon information and belief, Merck requested removal of these patents because it had been prompted to do so by another generic applicant, Teva Pharmaceuticals USA, Inc. ("Teva"), which was not

9

first to file an ANDA for any strength for simvastatin. As long as these patents remained in the Orange Book, approval of Teva's 80 mg ANDA would be subject to Ranbaxy's 180-day exclusivity.

42. FDA's decision to prematurely remove the '481 and '520 patents from the Orange Book means that the agency is free to approve all ANDAs for simvastatin 80 mg, without regard to Ranbaxy's 180-day exclusivity, effectively nullifying Ranbaxy's exclusivity.

43. Upon learning that FDA had removed the '481 and '520 patents from the Orange Book, Ranbaxy immediately sought and obtained a meeting with FDA's chief counsel. At the meeting, FDA requested that Ranbaxy submit a Citizen Petition to address these issues.

44. On February 1, 2005, Ranbaxy submitted a Citizen Petition, pursuant to 21 C.F.R. § 10.30 and Section 505 of the FDCA, requesting that FDA (1) refrain from the approval of any ANDA for simvastatin 80 mg tablets until Ranbaxy's 180-day exclusivity has expired and (2) confirm that Ranbaxy's rights to 180-day exclusivity with regard to ANDA No. 76-285 for simvastatin 80 mg have not been affected by FDA's delisting of the '481 and '520 patents. In order to preserve its entitlement to exclusivity, Ranbaxy requested that FDA correct its erroneous removal of the patent listings by reinserting the information in the Orange Book and maintaining it until Ranbaxy's term of exclusivity has elapsed.

45. 21 C.F.R. § 10.30(e)(4) provides that the "Commissioner shall furnish a response to each petitioner within 90 days of receipt of a petition . . . ." The response must either "approve or disapprove the petition."

46. Seven months have elapsed since FDA received Ranbaxy's Citizen Petition. The Commissioner has not responded. To date, FDA has not rectified its erroneous removal of the '481 and '520 patents from the Orange Book.

47. Ranbaxy also wrote to FDA on July 5, 2005, informing the agency that the '481 and '520 patents claim ingredients present in Zocor, and the formulation and composition of Zocor and, as such, are required to be listed in the Orange Book. Ranbaxy has received no response to this letter.

48. FDA's removal of the patents from the Orange Book constitutes final agency action reviewable under the APA.

49. Ranbaxy has relied on its entitlement to 180-day exclusivity and is prepared to launch its drug immediately upon the expiration of Merck's '784 patent in June 2006. Unless FDA restores the '481 and '520 patent listings, or otherwise acknowledges Ranbaxy's right to exclusivity for simvastatin 80 mg, Ranbaxy will be seriously and irreparably harmed. Ranbaxy will have lost the benefit of the legally sanctioned head start in the market to which it is entitled under the statute. Moreover, the harm to Ranbaxy will be completely unrecoverable because there is no remedy at law against FDA.

Hatch Waxman Precludes Nullification of Ranbaxy's Right to 180-Day Exclusivity

50. Congress' clear intent in enacting the 180-day exclusivity was to encourage ANDA applicants to challenge patents through the submission of paragraph IV certifications. Once the ANDA applicant has fulfilled the statutory objective of challenging the patent by investing in the design and development of a non-infringing drug and exposing itself to an infringement suit, the statute demonstrates a clear intent to reward the applicant by delaying approval of ANDAs submitted for the same drug by subsequent challengers.

51. The FDCA nowhere suggests that an NDA holder may nullify 180-day exclusivity by requesting that FDA remove its patent from the Orange Book.

52. Previously, FDA interpreted Hatch Waxman to preclude the nullification of 180-day exclusivity through the removal of a patent from the Orange Book in response to an NDA holder's request to remove a patent from the Orange Book.

53. In adopting regulations implementing Hatch Waxman in 1994, FDA recognized that removing patents from the Orange Book created the potential for nullification of the statutory right to 180-day exclusivity. Were FDA to remove a patent from the Orange Book based on the withdrawal of a patent submission by an NDA holder, the statutory right to 180-day exclusivity could be nullified if either (a) subsequent ANDA applicants were to withdraw their paragraph IV certifications referring to that patent or (b) additional ANDAs were submitted without a corresponding paragraph IV certification to the patent.

54. FDA noted the absurd result presented by the removal of a patent from the Orange Book after the vesting of 180-day exclusivity based on a judicial holding that the patent is invalid. Allowing an NDA holder to withdraw a patent when 180-day exclusivity had attached would be contrary to Hatch Waxman. In the preamble to its 1994 regulations, FDA stated that such an interpretation would undermine 180-day exclusivity:

> [T]he *agency agrees that the protection offered by 180-day exclusivity should not be undermined by changes from paragraph IV certification or by the filing of original certifications other than paragraph IV certifications.* If a patent were removed from the list immediately upon a court decision that the patent is invalid or unenforceable, an applicant with a subsequently filed application might seek to certify that there is no relevant patent and seek an immediately effective approval. Abbreviated New Drug Application Regulations; Patent and Exclusivity Provisions, 59 Fed. Reg. 50,338, 50,348 (Oct. 3, 1994) (emphasis added).

55. FDA correctly recognized that the right to 180-day exclusivity must be preserved in this circumstance, not only because of the clear command of the statute, but also because 180-day exclusivity serves one of the fundamental purposes of the statute – to encourage generic

competition by encouraging patent challenges through a reward to the first applicant to challenge a patent. As the agency stated:

> 180-day exclusivity should not be undermined by changes from paragraph IV certification or by the filing of original certifications other than paragraph IV certifications. . . . [A] patent is deemed to be relevant under § 314.94(a)(12)(ii) until the end of the term of the patent or applicable 180-day exclusivity period, whichever occurs first. . . . [W]here there is a patent that has been challenged by a paragraph IV applicant, a subsequent applicant will not be able to file a certification that there is no relevant patent or seek an immediately effective approval until either the patent or the 180-day exclusivity period expires. Id.

56. To prevent the nullification of the 180-day exclusivity, FDA interpreted the statute to preclude the delisting of a patent until the end of the applicable 180-day exclusivity period:

> To ensure that [withdrawal of a paragraph IV certification upon delisting] does not occur, the agency has required that a patent remain on the list after being declared invalid or unenforceable until the end of any applicable 180-day exclusivity period. This means that *a patent is deemed to be relevant* under § 314.94(a)(12)(ii) until the end of the term of the patent or applicable 180-day exclusivity period, whichever occurs first. *Thus, where there is a patent that has been challenged by a paragraph IV applicant, a subsequent applicant will not be able to file a certification that there is no relevant patent or seek an immediately effective approval until either the patent or the 180-day exclusivity period expires.* The agency has amended § 314.94(a)(12)(viii)(B) and made a similar change to § 314.50(i)(6)(ii) to reflect this position. Id. (emphasis added).

57. FDA's decision to remove the '481 and '520 patents from the Orange Book is contrary to the FDCA and to FDA's previous interpretation of Hatch Waxman.

FDA's Regulations Preclude Nullification of Ranbaxy's Right to 180-Day Exclusivity

58. At the time of the enactment of the Hatch Waxman implementing regulations, FDA believed that the statute conferred 180-day exclusivity only upon the first applicant to have successfully defended a patent infringement suit. Accordingly, when it enacted regulations to

prevent nullification of 180-day exclusivity, the regulations addressed only the delisting of patents in litigation. Id. Thus, FDA's regulations specifically prohibited the removal of a patent that is the subject of a lawsuit from the Orange Book so as not to nullify the entitlement to 180-day exclusivity:

> A patent that is the subject of a lawsuit under § 314.107(c) shall not be removed from the list until FDA determines either that no delay in effective dates of approval is required under that section as a result of the lawsuit, that the patent has expired, or that any such period of delay in effective dates of approval is ended. 21 C.F.R. § 314.94(a)(12)(viii)(B).

59. Because FDA did not then interpret the statute to accord 180-day exclusivity in the absence of a successful defense of a patent infringement suit, FDA's regulation was silent on the timing of its removal of a listed patent from the Orange Book in situations in which exclusivity is based on a statutory entitlement other than a successful defense of a patent infringement suit.

60. The "successful defense" requirement was overturned by this Court in Mova v. Shalala, 955 F. Supp. 128 (D.D.C. 1997), aff'd, 140 F.3d 1060 (D.C. Cir. 1998). The Court held that FDA had exceeded its statutory authority in imposing the successful defense requirement as a prerequisite to the invocation of the 180-day exclusivity rule. The Court of Appeals concluded that "[t]he successful-defense requirement is inconsistent with the statutory text and structure. . . ." 140 F.3d at 1077. Following this decision FDA decided, consistent with the statute and the Court's holding, that the first applicant to submit an ANDA containing paragraph IV certification to a listed patent is entitled to exclusivity regardless of whether an NDA holder sues for patent infringement or not.

61. Immediately following the Mova decision, FDA announced that it would amend its regulations to, among other things, take into account the Mova decision. Notice of Guidance, 63

14

Fed. Reg. 37,890 (Jul. 14, 1998); FDA, Guidance to Industry: 180-Day Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act at 4 (June 1998).

62. In November 1998, FDA amended its regulation at 21 C.F.R. § 314.107(c) to remove the requirement for a successful defense. Interim Rule, 63 Fed. Reg. 59,710 (Nov. 5, 1998). FDA did not, however, amend its anti-nullification regulation, 21 C.F.R. § 314.94(a)(12)(viii)(B). The regulation continues to seek to protect against nullification of 180-day exclusivity, but because it was promulgated based on a pre-Mova rationale, it addresses the removal of patents from the Orange Book only when a first applicant has earned exclusivity by successfully defending an infringement suit; not when the very same statutory exclusivity is earned through a successful patent challenge that avoids litigation.

63. FDA's regulations were never intended to and do not allow FDA to nullify 180-day exclusivity when the exclusivity is earned without patent litigation. As the courts have ruled, FDA may not condition the 180-day exclusivity rights upon a "successful defense" of an infringement suit. The regulation cannot be applied to resurrect the "successful defense" requirement for 180-day exclusivity by preventing nullification of exclusivity when there is a successful defense, but allowing nullification when there is no litigation.

There Is No Reasoned Basis for Nullifying Ranbaxy's Right to 180-Day Exclusivity

64. FDA has never advanced an interpretation of the statute, promulgated a regulation or even issued a guidance that suggests that it may nullify a generic applicant's right to 180-day exclusivity. That is not surprising since nullification of 180-day exclusivity would harm generic applicants, innovators and consumers, and therefore be inconsistent with Hatch Waxman.

65. Nullification of the right to 180-day exclusivity will harm an ANDA applicant such as Ranbaxy, because the applicant will lose a benefit on which it has relied in making business

decisions, which it earned at substantial cost, and which has affected the design of its product. This is a real, immediate harm to which Ranbaxy has in no way contributed.

66. Equally important, generic applicants are likely to be harmed if FDA allows the NDA holder to decide whether the generic applicant will or will not receive 180-day exclusivity. Allowing NDA holders to remove their patents from the Orange Book after an ANDA applicant has qualified for 180-day exclusivity would empower NDA holders to nullify the exclusivity accorded to a first ANDA applicant at no cost to the innovator, merely by submitting a patent withdrawal notice. An NDA holder might use this power to enter into an agreement with a subsequent ANDA applicant to remove the exclusivity awarded to the first applicant.

67. NDA holders also could list and delist for the purpose of undermining the incentives to file paragraph IV certifications. NDA holders intent on deterring ANDA applicants could react by withdrawing listed patents after the ANDA applicant has successfully invested time and resources designing around the patents and filed an application with a paragraph IV certification. Over time such conduct will act as a deterrent to ANDA applicants challenging patents. The result will be delayed generic entry, to the detriment of generic manufacturers and consumers alike.

68. Further, making 180-day exclusivity contingent on litigation may force ANDA applicants to provoke litigation in order to safeguard their 180-day exclusivity. Thus, for example, an ANDA applicant might decide to provide the minimum required information to the NDA holder in notifying the sponsor of a paragraph IV certification, rather than, as is often the practice now, providing more than is necessary so that the NDA holder will not have to file suit to make a fully informed judgment about the factual situation. Creating incentives for more patent lawsuits helps no one, not the NDA holder or generic applicant, which must finance the

lawsuit, not the courts which have to deal with unnecessary litigation and not the public, which will suffer the delay in generic approval while the litigation proceeds.

69. By contrast, an NDA sponsor suffers no harm from a delay in removing a patent from the Orange Book. The only consequence of removal is to extinguish 180-day exclusivity; thus, once an NDA sponsor has notified FDA of its view that a product should be delisted, the NDA sponsor should have no reason to care whether FDA actually removes the patent from the Orange Book.

70. Most importantly, consumers might be deprived of the cost saving benefits Hatch Waxman was intended to foster. The earlier a generic enters the market, the greater the benefit to consumers. Because the return expected with the 180-day exclusivity is so much higher than the return otherwise would be, the prospect of 180-day exclusivity may actually result in earlier entry than would occur if the patent had not been listed in the Orange Book. Consumers may receive a greater benefit from earlier entry by one or more generics that receives 180-day exclusivity, followed by the entry of additional generics, rather than a later entry by many.

71. In addition, allowing an NDA holder to control, via listing or delisting, whether the first generic filer will get 180-day exclusivity will impart a random, unpredictable quality to 180-day exclusivity. Adding a variable which makes it uncertain whether a generic first applicant will in fact receive 180-day exclusivity, can only diminish, not increase, competition.

### There Is No Principled Reason To Protect Exclusivity After Litigation Has Begun, But Not Before

72. Because the courts have held that the statute does not permit FDA to condition the award of exclusivity on the successful defense of patent litigation, there is no basis in the Hatch Waxman scheme for distinguishing between exclusivity earned by litigation or by successful design.

73. An ANDA applicant that is sued does not necessarily incur greater total expense than one that is not sued. Nor do consumers benefit more from a generic drug that was the subject of litigation. There is no material distinction between the expenditures required to defend a lawsuit and those required to design around a patent. From the perspective of an ANDA applicant, the costs of defending a suit can range from the insignificant into the millions, but so too can the cost of designing around a patent. Thus, the investment required to earn exclusivity is not dependent on whether an ANDA applicant was sued or not; in either case, the actual expenditures can be of similar magnitude. Nor is the nature of the benefit reaped by consumers dependent on whether opening a market to generics is due to litigation or to successful patent design. Thus, no meaningful distinction can be drawn between the two situations.

74. Allowing the nullification of an ANDA applicant's entitlement to 180-day exclusivity would result in: (1) direct and immediate harm to the ANDA applicant; (2) according NDA holders an unfair and unwarranted leverage over a first generic applicant; (3) harm to consumers from any delay in entry by any generic applicant due to the expectation of lower return for the first-filer; and (4) unequal treatment of similarly situated generic applicants. Preserving 180-day exclusivity, on the other hand, results in: (1) preserving the incentives to competition by generics; (2) depriving the innovators of unfair leverage over generic competitors; and (3) fair treatment of the first generic applicant.

<u>First Cause of Action</u>

75. FDA's decision to immediately remove the listing of the '481 and '520 patents from the Orange Book and nullify Ranbaxy's right to 180-day exclusivity violates the FDCA, and is in excess of statutory authority, arbitrary, capricious, an abuse of discretion and otherwise not in accordance with law and is therefore in violation of 5 U.S.C. § 706(2)(A) and (C).

WHEREFORE, Ranbaxy requests that this Court enter judgment:

1. declaring that Ranbaxy's entitlement to 180-day exclusivity for simvastatin 80 mg has not been affected by Merck's request to delist the '481 and '520 patents;

2. declaring that FDA's decision to remove the '481 and '520 patents from the Orange Book, prior to the expiration of Ranbaxy's right to 180-day exclusivity, is arbitrary, capricious, an abuse of discretion and contrary to law;

3. enjoining FDA from approving any other ANDAs for simvastatin 80 mg until and unless the '481 and '520 patents are restored in the Orange Book and any other ANDAs are required to contain patent certifications to the '481 and '520 patents;

4. awarding plaintiffs such other and further relief as this Court may deem just.

Respectfully submitted,

*Kate C. Beardsley by /cms*
Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314
William A. Garvin
D.C. Bar No. 486467

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Plaintiffs

Dated: September 16, 2005