UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANBAXY LABORATORIES LIMITED,<br>RANBAXY INC., and<br>RANBAXY PHARMACEUTICALS, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL O. LEAVITT<br>SECRETARY OF HEALTH AND HUMAN<br>SERVICES,<br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES,<br>ANDREW C. VON ESCHENBACH,<br>ACTING COMMISSIONER OF<br>FOOD AND DRUGS,<br>    and<br>FOOD AND DRUG ADMINISTRATION,<br><br>    Defendants. | CIVIL NO. 05-CV-01838 (RWR) |

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56, plaintiffs Ranbaxy Laboratories Limited,

Ranbaxy Inc., and Ranbaxy Pharmaceuticals, Inc. (collectively "Ranbaxy") hereby move for

summary judgment. Ranbaxy filed suit challenging the final decision of the Food and Drug

Administration ("FDA") that denies Ranbaxy the 180-day exclusivity to which it is entitled

under the Hatch Waxman provisions of the Food, Drug, and Cosmetic Act as the first to file an

Abbreviated New Drug Application containing a paragraph IV certification for a generic version

of Zocor®. FDA's decision is arbitrary, capricious, an abuse of discretion and contrary to law.

Summary judgment should be granted because there is no genuine issue as to any material fact

and Ranbaxy is entitled to judgment as a matter of law.  In support of this motion, Ranbaxy

submits the annexed Memorandum of Points and Authorities and the Statement of Material Facts

As to Which There is No Genuine Issue.

Respectfully submitted,

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314
William A. Garvin
D.C. Bar No. 486467

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Dated:  November 7, 2005                         Counsel for Ranbaxy

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

—————————————————————
                                                  )
RANBAXY LABORATORIES LIMITED,                     )
RANBAXY INC., and                                 )
RANBAXY PHARMACEUTICALS, INC.,                    )
                                                  )
      Plaintiffs,                                 )
                                                  )
      v.                                          )
                                                  )
MICHAEL O. LEAVITT,                               )
SECRETARY OF HEALTH AND HUMAN                     )
SERVICES,                                         )   CIVIL NO. 05-CV-01838 (RWR)
DEPARTMENT OF HEALTH AND                          )
HUMAN SERVICES,                                   )
ANDREW C. VON ESCHENBACH,                         )
ACTING COMMISSIONER OF                            )
FOOD AND DRUGS,                                   )
      and                                         )
FOOD AND DRUG ADMINISTRATION,                     )
                                                  )
      Defendants.                                 )
—————————————————————)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Of Counsel:

Jayadeep R. Deshmukh
Vice President – Intellectual Property
William D. Hare
Senior Counsel – Intellectual Property
Ranbaxy Laboratories Ltd
600 College Road East
Princeton, NJ 08540

William B. Schultz
Carlos T. Angulo
Zuckerman Spaeder LLP
1800 M St., NW, Ste. 1000
Washington, DC 20036

Dated:  November 7, 2005

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314
William A. Garvin
D.C. Bar No. 486467

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Ranbaxy Laboratories
Limited, Ranbaxy Inc, and
Ranbaxy Pharmaceuticals, Inc.

# TABLE OF CONTENTS

Statutory and Factual Background ................................................................................................. 3

   The Hatch Waxman Framework .............................................................................................. 3

   FDA's Regulation Conditioning Exclusivity on Patent Litigation ......................................... 6

   Ranbaxy's ANDA for Simvastatin ....................................................................................... 10

   FDA's Action to Extinguish Ranbaxy's 180-Day Exclusivity .............................................. 12

ARGUMENT ................................................................................................................................ 13

   Summary Judgment Standard ............................................................................................... 13

   Judicial Review Under the APA ............................................................................................ 13

   I.   The Statute Does Not Permit Nullification of Ranbaxy's 180-Day Exclusivity .............. 15

      A.   The Language of the Statute Does Not Permit FDA to Limit 180-Day Exclusivity
         Based on a Litigation Requirement ......................................................................... 15

      B.   The MMA Confirms That A Delisted Patent Does Not Nullify 180-Day Exclusivity
         ................................................................................................................................. 21

      C.   The Statute Does Not Permit FDA to Impose Conditions on Exclusivity Through
         Patent Listing Requirements ................................................................................... 22

   II.   FDA's Decision Is Arbitrary and Capricious .................................................................. 25

      A.   FDA's Interpretation Undermines A Central Goal of the Statute ......................... 27

      B.   FDA's Position Invites Abuse of the Patent Listing System and Creates
         Unnecessary Incentives to Trigger Patent Litigation ............................................. 31

      C.   FDA's Analogy to Patent Expiration is Unpersuasive .......................................... 33

      D.   FDA's Reliance on 21 C.F.R. § 314.94 is Arbitrary, Capricious and Contrary to
         Law ........................................................................................................................ 35

CONCLUSION .............................................................................................................................. 37

i

# TABLE OF AUTHORITIES

**Cases**

Abbott Labs. v. Young, 920 F.2d 984 (D.C. Cir. 1990) ................................................ 15

Am. Fed. of Labor and Cong. of Indus. Org. v. FEC, 333 F.3d 168 (D.C. Cir. 2003) ................ 14

Atl. City Elec. Co. v. FERC, 295 F.3d 1 (D.C. Cir. 2002) ............................................ 23

Barr Labs Inc., 930 F.2d 72 (D.C. Cir. 1991) ....................................................... 27

Bell Atl. Tele. Co. v. FCC, 131 F.3d 1044 (D.C. Cir. 1997) ......................................... 14

California State Board of Optometry v. FTC, 910 F.2d 976 (D.C. Cir. 1990) .......................... 14

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................... 13

Chevron U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) ...................... 14

Darrell Andrews Trucking, Inc. v. Fed. Motor Carrier Safety Admin., 296 F.3d 1120 (D.C. Cir. 2002) ................................................ 36

Dole v. United Steelworkers of America, 494 U.S. 26 (1990) ........................................ 14

Dr. Reddy's Labs., Inc. v. Thompson, 302 F. Supp. 2d 340 (D.N.J. 2003) ............................ 34

FDA v. Brown & Williamson, 529 U.S. 120 (2000) .................................................... 23

Fed. Election Comm'n v. Akins, 524 U.S. 11 (1998) ................................................. 13

Fina Oil and Chem Co. v. Norton, 332 F.3d 672 (D.C. Cir. 2003) .................................... 36

General Dynamics Land Systems, Inc. v. Cline, 124 S. Ct. 1236 (2004) .............................. 14

\* Granutec, Inc. v. Shalala, No. 97-1873, 1998 U.S. App. LEXIS 6685, at \*21 (4th Cir. 1998) (unpublished) ................................................ 8, 16, 18

Health Ins. Ass'n of Am. v. Shalala, 23 F.3d 412 (D.C. Cir. 1994) ................................. 25

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1977) ..................................... 22

Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989) ........................ 16, 18, 32

\* Mova Pharm. Corp. v. Shalala, 955 F. Supp. 128 (D.D.C. 1997), aff'd 140 F.3d 1060 (D.C. Cir. 1998) ................................................ 3, 8, 13, 16, 26, 27, 31

MPAA, Inc. v. FCC, 309 F.3d 796 (D.C. Cir. 2002) .................................................. 25

Mylan Pharm. Inc. v. Thompson, 139 F. Supp. 2d 1 (D.D.C. 2001) .................................. 3, 18

Mylan Pharms. Inc. v Henney, 94 F. Supp. 2d 36 (D.D.C. 2000) .................................. 9, 13, 18

Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30 (D.D.C. 2000) ................................ 14, 18

\* Northpoint Technology, Ltd. v. FCC, 412 F.3d 145 (D.C. Cir. 2005) ...................... 13, 14, 25, 26

Nt'l Ass'n of Regulatory Util. Comm'rs v. ICC, 41 F.3d 721 (D.C. Cir. 1994) .................... 14, 26

Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579 (D.C. Cir. 1997) ....................... 36

Perot v. FEC, 97 F.3d 553 (D.C. Cir. 1996) ........................................................ 32

Pharmachemie B.V. v. Barr Labs., Inc., 276 F.3d 627 (D.C. Cir. 2002) ............................... 9

\* Purepac Pharm. Co. v. Friedman, 162 F. 3d 1201 (D.C. Cir. 1998) ........................... 8, 17, 18

Purepac Pharm. Co. v. Torpharm, Inc., 354 F.3d 877 (D.C. Cir. 2004) ................................ 4

Teva Pharm. Indus. Ltd. v. Crawford, 410 F.3d 51 (D.C. Cir. 2005) .................................. 4

Teva Pharms. USA, Inc. v. FDA, 182 F.3d 1003 (D.C. Cir. 1999) ..................................... 18

Teva Pharms. USA, Inc. v. Pfizer, 395 F.3d 1324 (Fed. Cir. 2005) ................................... 18

Thomas Jefferson Univ. v. Shalala, 512 U.S. 504 (1994) ............................................ 35

TorPharm Inc. v. Shalala, No. 97-1925, 1997 U.S. Dist. LEXIS 21983, \*11 (D.D.C. 1997) ............ 18

Two Pesos Inc. v. Taco Cabana, Inc, 505 U.S. 763 (1992) ........................................... 22

United States v. Brown, 763 F.2d 984 (8th Cir. 1985) ............................................... 3

Valley Drug Co. v. Geneva Pharms., 344 F.3d 1294 (11th Cir. 2003) ................................. 27

Wells Fargo Bank, N.A. v. FDIC, 310 F.3d 202 (D.C. Cir. 2002) ..................................... 14

**Statutes**

21 U.S.C. § 355(a) ............................................................................................................ 3
21 U.S.C. § 355(b) ............................................................................................................ 3
21 U.S.C. § 355(b)(1) ....................................................................................................... 4
21 U.S.C. § 355(j)(2)(A)(iv) ............................................................................................ 4
21 U.S.C. § 355(j)(2)(A)(vii) ........................................................................................... 4
21 U.S.C. § 355(j)(2)(A)(vii)(III) .................................................................................. 29
21 U.S.C. § 355(j)(2)(B)(i) ............................................................................................. 5
21 U.S.C. § 355(j)(5)(B)(i) ............................................................................................. 4
21 U.S.C. § 355(j)(5)(B)(iii) ........................................................................................... 5
21 U.S.C. § 355(j)(5)(B)(iv) ........................................................................................... 6
21 U.S.C. § 505(b)(1) and (c)(2) ................................................................................... 23
21 U.S.C. § 505(j)(5)(B)(iv) .......................................................................................... 16
35 U.S.C. § 271(e)(2)(A) ................................................................................................. 5
35 U.S.C. §§ 271(a), 281, 283-85 ................................................................................. 34
5 U.S.C. § 706(2)(A) ...................................................................................................... 13

**Other Authorities**

Fed. R. Civ. P. 11 ........................................................................................................... 30
Fed. R. Civ. P. 56(c) ...................................................................................................... 13
H.R. Rep. No. 98-857, Pt. II, at 9 .................................................................................. 27
Medicare Prescription Drug Improvement and Modernization Act of 2003, Pub. L. No. 108-173
.................................................................................................................................. 15, 21

**Regulations**

21 C.F.R. § 10.30 ............................................................................................................ 12
21 C.F.R. § 10.85(d) and (c) .......................................................................................... 35
21 C.F.R. § 314.107(c) (1995) ........................................................................... 6, 7, 9, 19, 20
21 C.F.R. § 314.53(f) ................................................................................................ 28, 29
21 C.F.R. § 314.94(a)(12)(viii)(B) (1995) ........................... 7, 8, 9, 19, 20, 21, 35, 36
21 C.F.R. § 314.95(c)(6) ............................................................................................ 5, 29
54 Fed. Reg. 28,872 (Jul. 10, 1989) ............................................................................... 6
59 Fed. Reg. 50,338 (Oct. 3, 1994) ..................................................................... 7, 24, 35
63 Fed. Reg. 59,710 (Nov. 5, 1998) ............................................................................. 17
64 Fed. Reg. 42,873 (Aug. 6, 1999) .................................................................. 3, 9, 17, 33
68 Fed. Reg. 36,676 (June 18, 2003) ............................................................................ 32

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RANBAXY LABORATORIES LIMITED,<br>RANBAXY INC., and<br>RANBAXY PHARMACEUTICALS, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL O. LEAVITT,<br>SECRETARY OF HEALTH AND HUMAN<br>SERVICES,<br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES,<br>ANDREW C. VON ESCHENBACH,<br>ACTING COMMISSIONER OF<br>FOOD AND DRUGS,<br>    and<br>FOOD AND DRUG ADMINISTRATION,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 05-CV-01838 (RWR) |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT

Congress enacted Hatch Waxman in part to quickly get lower cost generic drugs to market. Central to the statutory scheme is the award of 180-day exclusivity to the first generic applicant that challenges an pioneer drug company's patents. The statute requires FDA to delay the approval of other generic drugs until 180 days after the first applicant's exclusivity begins.

Since the statute was enacted, FDA has attempted to limit the award of 180-day exclusivity. When it first promulgated regulations implementing Hatch Waxman, FDA tried to limit 180-day exclusivity to generic applicants who successfully defended a patent infringement suit brought by the pioneer.

When this provision was challenged, the courts repeatedly held that FDA may not condition eligibility for 180-day exclusivity on the successful defense of litigation. Following these decisions, FDA recognized that if the first applicant avoids a lawsuit, it should not be denied eligibility for exclusivity.

In this case, FDA attempts to resurrect its litigation requirement. Plaintiff Ranbaxy was the first applicant to file an application for a generic version of Zocor 80 mg challenging the pioneer's patents. As such, it is entitled to exclusivity. But FDA has denied Ranbaxy exclusivity because Ranbaxy was not sued by the pioneer. FDA's position is that when a patent has been withdrawn by the pioneer, an applicant who is sued retains exclusivity, but one who is not sued loses exclusivity.

The distinction that FDA makes – awarding exclusivity to a paragraph IV ANDA applicant that has been sued but not to an applicant that has challenged a patent through notice and was therefore not sued – has no rational basis. Both applicants have made the investment in the extensive research, testing, and manufacturing required to develop a generic drug. Both have been required to design around the patent or show the patent to be invalid or unenforceable, a process that can complicate and prolong the drug development process. Both have poured millions of dollars into the product. Both have exposed themselves to the risk of litigation. Both have produced product that is bioequivalent to the pioneer, and met FDA's standards for marketing. Both may have planned for production of quantities of drug, assuming exclusivity. The single distinction is whether they have been sued, a factor that is not within their control, not within FDA's control, unrelated to their effort, and unrelated to the quality of their product.

Successfully challenging a pioneer's patents without litigation serves the purposes of the statute equally as well, if not better than litigation, because it facilitates even faster entry of

generics. And it does so while conserving the pioneer's, the applicant's and the court's time and money. FDA itself has recognized this as a reason not to impose a litigation requirement, stating, in the preamble to its 1999 proposed rule, that "if the first applicant avoids a lawsuit and the related 30-month stay of final approval . . ., for example, by designing around a patent in a way that its drug product is clearly non-infringing, then the applicant should not be denied eligibility for exclusivity." 180-Day Generic Drug Exclusivity for ANDAs, Proposed Rule, 64 Fed. Reg. 42,873, 42,876 (Aug. 6, 1999).

FDA's decision is arbitrary, capricious and contrary to law.

<u>Statutory and Factual Background</u>

<u>The Hatch Waxman Framework</u>

Before marketing a drug that has not previously been approved by FDA, a manufacturer must submit a New Drug Application ("NDA") to FDA for approval. 21 U.S.C. § 355(a). Among other information, an NDA must contain studies demonstrating that the drug is sufficiently safe and effective to merit approval. 21 U.S.C. § 355(b).

A generic drug is a version of an approved drug ("pioneer drug") that contains the same active ingredient as, and is usually approved for the same indications as, the pioneer drug, but that sells for less than the pioneer drug. <u>Mova Pharm. Corp. v. Shalala</u>, 140 F.3d 1060, 1063 (D.C. Cir. 1998); <u>Mylan Pharm. Inc. v. Thompson</u>, 139 F. Supp. 2d 1, 5-6 (D.D.C. 2001) ("[G]eneric drugs are generally much cheaper to the consumer than brand-name drugs."); <u>rev'd on other grounds</u> 268 F.3d 1323 (Fed. Cir. 2001); <u>United States v. Brown</u>, 763 F.2d 984, 994 (8th Cir. 1985) ("It is well-known that generics are cheaper than the equivalent brand name product . . . ."). In 1984 Congress enacted the Drug Price Competition and Patent Term Restoration Act, known as "Hatch Waxman." Hatch Waxman struck a balance between

incentives for innovation and incentives "for quickly getting lower-cost generic drugs to market." Teva Pharm. Indus. Ltd. v. Crawford, 410 F.3d 51, 54 (D.C. Cir. 2005). In order to facilitate the entry of generic drugs into the marketplace, the statute provided a simplified application process for generic drugs. An applicant for a generic version of an approved drug may complete an Abbreviated New Drug Application ("ANDA"), in which safety and effectiveness may be demonstrated through studies showing that the drug that is the subject of the application is bioequivalent to the pioneer drug. 21 U.S.C. § 355(j)(2)(A)(iv).

Hatch Waxman also encouraged the swift marketing of generic products by establishing a system for prompt generic company challenges of pioneer company patents on their drugs. Under Hatch Waxman, the pioneer drug company must include in its NDA the patent number and expiration date of any patent claiming the drug (or use of the drug) that is the subject of the application. 21 U.S.C. § 355(b)(1). FDA lists this patent information in Approved Drug Products with Therapeutic Equivalence Evaluations, an FDA publication known as "the Orange Book." Purepac Pharm. Co. v. Torpharm, Inc., 354 F.3d 877, 880 (D.C. Cir. 2004).

Hatch Waxman also requires that, for each patent listed in the Orange Book, an ANDA applicant must certify whether its generic drug would infringe the patent, and, if not, why not. 21 U.S.C. § 355(j)(2)(A)(vii). An ANDA applicant has four certification options: it may certify (I) that the required patent information has not been filed; (II) that the patent has expired; (III) the date on which an unexpired patent will expire; or (IV) that the patent is invalid or will not be infringed by the drug. Id.

If the applicant makes a certification under paragraphs I or II, FDA may approve the ANDA effective immediately. 21 U.S.C. § 355(j)(5)(B)(i). If the applicant makes a certification

under paragraph III, the FDA may approve the ANDA effective on the date that the patent will

expire.  Id. at (j)(5)(B)(ii).

If the applicant makes a certification under paragraph IV (a "paragraph IV certification"),

an ANDA applicant must also provide notice to the NDA holder of the paragraph IV

certification.  21 U.S.C. § 355(j)(2)(B)(i).  This notice must include specific information setting

out the factual and legal basis for certifying that the patent is invalid or will not be infringed.  21

C.F.R. § 314.95(c)(6).

The filing of an ANDA with a paragraph IV certification is an act of patent infringement

that enables the NDA holder to sue the ANDA applicant.  35 U.S.C. § 271(e)(2)(A).  Once an

ANDA applicant makes a paragraph IV certification and provides notice, the NDA holder can

determine whether it believes that the drug product that is the subject of the ANDA infringes its

listed patent, and it may file a patent infringement suit against the ANDA applicant.  If the patent

holder brings suit within 45 days of receiving notice, FDA may not approve the ANDA while the

validity, enforceability and/or infringement of the patent is litigated, up to a period of 30 months

(a "30 month stay").  21 U.S.C. § 355(j)(5)(B)(iii).  If no action is brought within 45 days, the

approval "shall be made effective immediately."  Id.

In considering how to encourage generic company challenges of suspect pioneer

company patents, the framers of Hatch Waxman recognized that the first ANDA applicant to file

a paragraph IV certification generally bears considerable costs associated with the investigation

necessary to determine the strength or weakness of the listed patent and the research and

development necessary to manufacture a non-infringing drug.  The first company to file an

ANDA with a paragraph IV certification also faces the risk of patent litigation and its associated

costs.  Therefore, as an incentive for generic applicants to bear these costs and risks, Congress

provided in Hatch Waxman that the first generic applicant to file a paragraph IV certification

against a particular patent would receive a 180-day period of exclusivity, during which time

FDA may not approve other ANDAs containing paragraph IV certifications against the same

patent ("180-day exclusivity"). 21 U.S.C. § 355(j)(5)(B)(iv).

This 180-day exclusivity provision is of central importance to the Hatch Waxman

framework, encouraging generic companies to challenge pioneer company patents as soon as

possible and, where such challenges are successful, giving consumers quicker access to lower-

priced generic versions of brand drug products. See Testimony of Timothy J. Muris, Chairman,

Federal Trade Commission, before the U.S. Senate Committee on the Judiciary (June 17, 2003)

at 2 available at http://www.ftc.gov/os/2003/06/030617pharmtestimony.htm (last visited Nov. 6,

2005) (noting that 180-day exclusivity "increases the economic incentives for a generic company

to be the first to file an ANDA" because the generic applicant has the potential to reap the reward

of marketing the only generic drug product during the period of exclusivity).

<u>FDA's Regulation Conditioning Exclusivity on Patent Litigation</u>

Although the text of Hatch Waxman entitles the first ANDA applicant making a

paragraph IV certification to 180-day exclusivity without regard to whether the applicant was

sued or not sued by the NDA holder, FDA's 1994 regulations implementing the 180-day

exclusivity provisions required that, for the first ANDA applicant to be eligible for 180-day

exclusivity, it must have "successfully defended against a suit for patent infringement." 21

C.F.R. § 314.107(c) (1995). See also Abbreviated New Drug Application Regulations, Proposed

Rule, 54 Fed. Reg. 28,872, 28,894 (Jul. 10, 1989). As a result of this limitation on the scope of

180-day exclusivity, FDA's Hatch Waxman regulations were designed to give effect to, and to

protect, the exclusivity rights of only those ANDA applicants whose paragraph IV patent

challenges resulted in a successful defense of an infringement suit brought by the patent holder – the only circumstance under which FDA deemed the exclusivity to be available. 21 C.F.R. § 314.107(c) provided that 180-day exclusivity would be awarded to the first applicant to submit an ANDA containing a paragraph IV certification who successfully defended a suit for patent infringement. Abbreviated New Drug Application Regulations, Final Rule, 59 Fed. Reg. 50,338, 50,367 (Oct. 3, 1994).

A parallel regulation provided that, if a pioneer company sought to withdraw a patent from its NDA, FDA would remove the patent from the list of patents in the Orange Book unless the patent was the subject of litigation under Section 21 C.F.R. § 314.94(a)(12)(viii)(B) (1995); Id. at 50,348. The reason for maintaining the patent on the Orange Book list even after FDA received a pioneer's request to withdraw the patent was to ensure that 180-day exclusivity was not undermined by removal of patents from the list. Id.

Without this protection, 180-day exclusivity could have been undermined as a result of other certification and listing provisions in the regulation. Id. If an NDA holder were to withdraw a patent and FDA were to remove a patent from the list, the regulations provided that ANDA applicants were to amend their patent certifications in response to these changes. 21 C.F.R. § 314.94(a)(12)(viii)(B). The ANDA applicants' change in certification would eliminate paragraph IV certifications, and therefore 180-day exclusivity. For example, an NDA holder that lost a patent suit because the patent was found invalid could withdraw its listing of that patent from the Orange Book. 59 Fed. Reg. at 50,348. Once the patent listing was withdrawn, all ANDA applicants would withdraw their paragraph IV certification and could request immediate approval. Id. If FDA were to approve all these ANDAs, the first ANDA applicant would have lost its right to 180-day exclusivity even though it had successfully challenged the patent. Id. To

prevent the nullification of 180-day exclusivity in this manner, FDA's regulations did not allow the removal of a patent from the Orange Book once paragraph IV litigation over that patent had commenced until any 180-day exclusivity expired. Id.; 21 C.F.R. § 314.94(a)(12)(viii) (1995). This regulation covered all possible situations that otherwise could have undermined 180-day exclusivity because the only circumstance under which a generic applicant could obtain 180-day exclusivity was when it was sued for patent infringement by the pioneer.

In 1997, this Court invalidated FDA's regulation that conditioned the right to exclusivity on an ANDA applicant's successful defense against an infringement suit, finding that the plain language of Hatch Waxman did not and could not support FDA's distinction between litigated and unlitigated patents. Mova Pharm. Corp. v. Shalala, 955 F. Supp. 128, 130 (D.D.C. 1997), aff'd, 140 F.3d 1060 (D.C. Cir. 1998). On appeal, the Court of Appeals held that "it suffices to look only at the plain language of the statute" to reject the agency's interpretation according 180-exclusivity only to the first applicant that filed an ANDA containing a paragraph IV certification that successfully litigated a patent infringement case. Mova, 140 F. 3d at 1067, 1069. The Court of Appeals concluded that the text and structure of the statute "clearly forecloses the FDA's successful defense requirement":

> We conclude that the FDA's successful defense requirement is inconsistent with the unambiguously expressed intent of Congress. The rule is gravely inconsistent with the text and structure of the statute. Nor can the FDA show that the successful defense requirement is needed to avoid "a result demonstrably at odds with the intentions of [section 355 (j)(5)(B)(iv)'s] drafters." . . . In effect, the FDA has embarked upon an adventurous transplant operation in response to blemishes in the statute that could have been alleviated with more modest corrective surgery.

Id. at 1069. The Fourth Circuit reached the same conclusion. Granutec, Inc. v. Shalala, No. 97-1873, 1998 U.S. App. LEXIS 6685, at *21 (4th Cir. 1998) (unpublished); see also Purepac Pharm. Co. v. Friedman, 162 F. 3d 1201, 1204-05 (D.C. Cir. 1998).

By 1999 FDA had reconsidered the statutory language and decided that the statute does not condition 180-day exclusivity on the presence of patent litigation. The agency reasoned that an ANDA applicant that avoids a lawsuit by successful design around a patent is as deserving of 180-day exclusivity as one that successfully defends a patent suit.

> FDA believes that if the first applicant avoids a lawsuit and the related 30-month stay of final approval . . . , for example, by designing around a patent in such a way that its drug product is clearly non-infringing, then that applicant should not be denied eligibility for exclusivity.

64 Fed. Reg. at 42,876.

Thus, under FDA's current reading of the statute, the 180-day exclusivity protection is available not only to an ANDA applicant that successfully defends an infringement suit, but also to an ANDA applicant that successfully challenges a patent by providing notice to the NDA holder explaining why the patent is invalid, unenforceable, or not infringed and, based on such notice, avoids an infringement suit. "Successful notice," as well as "successful defense" in a lawsuit, will be rewarded under the statute.

Following Mova, and consistent with its new interpretation of the statute, FDA amended 21 C.F.R. § 314.107(c)(1). FDA has not enacted a new regulatory framework reflecting the Mova and Granutec courts' rejection of the litigated/non-litigated patent distinction. As a result, the Mova decision resulted in what FDA describes as "a somewhat fragmented regulatory framework." See Mylan Pharms. Inc. v Henney, 94 F. Supp. 2d 36, 57 (D.D.C. 2000), vacated as moot sub nom. Pharmachemie B.V. v. Barr Labs., Inc., 276 F.3d 627 (D.C. Cir. 2002). Among the regulations that FDA has not amended is its delisting regulation prohibiting the removal from the Orange Book only of those patents that were the subject to infringement litigation, but not patents that were not litigated. 21 C.F.R. § 314.94.

Ranbaxy's ANDA for Simvastatin

Simvastatin is in a class of medications called HMG-CoA reductase inhibitors, or statins. MedlinePlus, Drug Information: HMG-CoA Reductase Inhibitors (Systemic) at 1 at http://www.nlm.nih.gov/medlineplus/print/druginfo/uspdi/202294.html (last visited Nov. 6, 2005). Statins slow the production of cholesterol in the body and are therefore prescribed for the millions of Americans who suffer from atherosclerosis, a disease characterized by the build-up of cholesterol fats along the walls of blood vessels that can lead to heart disease, angina, strokes and heart attacks. Id. at 1; MedlinePlus, Drug Information: Simvastatin at 1 at http://www.nlm.nih.gov/medlineplus/print/druginfo/medmaster/a692030.html (last visited Nov. 6, 2005). Collectively, statins are the most widely prescribed drugs in the United States. Simvastatin is the active ingredient in Zocor,® approved by FDA in 1991 for the reduction of elevated cholesterol levels. Zocor® (simvastatin) Package Insert, Indications and Usage available at http://www.zocor.com/simvastatin/zocor/consumer/product_information/pi/index.jsp (last visited Nov. 6, 2005). Currently, there are no generic versions of Zocor on the market.

Merck is the holder of the approved NDA for Zocor, which it markets in 5 mg, 10 mg, 20 mg, 40 mg and 80 mg strengths. Merck initially submitted one patent to FDA, United States Patent No. 4,444,784 ("the '784 patent"), as claiming Zocor. Letter from Steven K. Galson, M.D., M.P.H., Director, Center for Drug Evaluation and Research to Monte R. Browder, Intellectual Property Counsel, Ivax Pharmaceuticals, Inc., et. al. (Oct. 24, 2005) ("Petition Response"), FDA Administrative Record ("AR"), Tab 23 at 2. It later updated its NDA to list two additional patents, U.S. Reissue Patent No. 36,481 ("the '481 patent"), and U.S. Reissue Patent No. 36,520 ("the '520 patent"), as claiming Zocor. Id.

All three Merck patents were listed in the Orange Book as of November 2001, when Ranbaxy submitted an ANDA for approval of a generic version of Zocor. Id. at 2-3. Ranbaxy's ANDA contained a paragraph III certification to the '784 patent and paragraph IV certifications to the '481 and '520 patents. Reply to FTC Response to Citizen Petition on behalf of Ranbaxy to Division of Docket Managements, FDA (May 20, 2005) ("Ranbaxy Reply"), Declaration of William D. Hare ("Hare Declaration"), AR, Tab 17 at 2-3. Merck did not sue Ranbaxy within 45 days of receiving notice of Ranbaxy's paragraph IV certifications.

On September 26, 2003, Ranbaxy received a letter from FDA finding Ranbaxy's generic simvastatin product to be safe and effective, but delaying the effective date of Ranbaxy's approval until expiration of the Merck '784 patent, for which Ranbaxy had filed a Paragraph III certification. Tentative Approval Letter from Gary Beuhler, Director, Office of Generic Drugs, CDER to Ranbaxy Pharmaceuticals, Inc. (Sep. 26, 2003), AR, Tab 4 at 1-2. The '784 patent is scheduled to expire on June 23, 2006. Petition Response, AR, Tab 23 at 3. Receipt of final approval, therefore, will occur in June 2006, and Ranbaxy is prepared to market simvastatin 80 mg immediately upon receipt of final approval. While several applicants submitted ANDAs for simvastatin, Ranbaxy believes it was the first applicant to submit an ANDA with a paragraph IV certification to the '481 and '520 patents for simvastatin 80 mg and is therefore entitled to 180-day exclusivity for simvastatin 80 mg. When FDA accepted Ranbaxy's ANDA as the first substantially complete ANDA containing a paragraph IV certification, Ranbaxy's ANDA was protected by 180-day exclusivity.

FDA's Action to Extinguish Ranbaxy's 180-Day Exclusivity

Unknown to Ranbaxy, in October 2003 Merck apparently requested that FDA remove the

'481 and '520 patents from the Orange Book.  Patent Delisting Request from Andrew M.

Tershakovec, M.D., Director, Regulatory Affairs to David Orloff, M.D. Director, Division of

Metabolic and Endocrine Drug Products (Oct. 10, 2003), AR, Tab 6 at 1.  FDA, however,

maintained the listing of the patents in the Orange Book for nearly another year, until September

2004.  Petition Response, AR, Tab 23 at 3.  On September 24, 2004, Ranbaxy learned that FDA

had amended the Orange Book to remove the '481 and '520 patents.  Citizen Petition filed on

behalf of Ranbaxy Laboratories Limited (Feb. 1, 2005) ("Ranbaxy Citizen Petition"), AR, Tab

13 at 2.  Neither Ranbaxy nor the public had been given an explanation for, or prior notice of,

FDA's action.

As long as the '481 and '520 patents remained listed in the Orange Book, approval of any

subsequent ANDA would be subject to Ranbaxy's 180-day exclusivity.  According to FDA, its

pre-Mova listing regulations authorize FDA to remove the '481 and '520 patents from the Orange

Book and therefore to approve all ANDAs for simvastatin 80 mg, nullifying Ranbaxy's

exclusivity.

Upon learning that FDA had removed the '481 and '520 patents from the Orange Book,

Ranbaxy immediately sought and obtained a meeting with FDA's chief counsel.  Subsequently,

at FDA's request, Ranbaxy submitted a Citizen Petition to FDA pursuant to 21 C.F.R. § 10.30,

requesting that FDA (1) refrain from the approval of any ANDA for simvastatin 80 mg tablets

until Ranbaxy's 180-day exclusivity has expired and (2) confirm that Ranbaxy's rights to 180-

day exclusivity have not been affected by FDA's delisting of the '481 and '520 patents.  Ranbaxy

Citizen Petition, AR, Tab 13 at 1.  To preserve its entitlement to exclusivity, Ranbaxy requested

12

that FDA correct its erroneous removal of the patent listings by reinserting the information in the Orange Book and maintaining it until Ranbaxy's term of exclusivity has elapsed.  Id.

After this lawsuit was filed, FDA rejected Ranbaxy's Citizen Petition.  Its response argues that because the statute does not address how patent withdrawals are to be handled, the agency may adopt any scheme that is not inconsistent with the language and purpose of the statute, and that FDA's position on Ranbaxy's exclusivity is consistent with the language of and policies behind the statute.  Petition Response, AR, Tab 23 at 3.

ARGUMENT

Summary Judgment Standard

Summary judgment may be granted when the pleadings and evidence demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Mylan Pharms. Inc. v. Henney, 94 F. Supp. 2d at 44.  In this case there is no genuine issue of material fact and Ranbaxy is entitled to judgment as a matter of law.

Judicial Review Under the APA

The APA provides that a decision made by a government agency that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law must be set aside." 5 U.S.C. § 706(2)(A).  An agency decision that is based on a misinterpretation of the relevant law may not be upheld.  Fed. Election Comm'n v. Akins, 524 U.S. 11, 25 (1998); Northpoint Technology, Ltd. v. FCC, 412 F.3d 145, 156 (D.C. Cir. 2005); Mova, 140 F.3d at 1076.

In assessing the validity of an agency's interpretation of a statute, the Court begins by asking "whether Congress has directly spoken to the question at issue," in which case "the unambiguously expressed intent of Congress," must be given effect.  Chevron U.S.A., Inc., v.

Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43 (1984). The Court must "'exhaust the

traditional rules of statutory construction' in determining whether Congress has spoken directly

to the disputed issue." Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 37 (D.D.C. 2000)

(quoting Southern Cal. Edison Co. v. FERC, 195 F.3d 17, 22 (D.C. Cir. 1999)); Dole v. United

Steelworkers of America, 494 U.S. 26, 35 (1990); California State Board of Optometry v. FTC,

910 F.2d 976, 980 (D.C. Cir. 1990).  The Court must consider the  text, history and purpose, as

well as the design of the statute as a whole, to ascertain Congressional intent. Bell Atl. Tele. Co.

v. FCC, 131 F.3d 1044, 1049 (D.C. Cir. 1997).  Because "the judiciary is the final authority on

issues of statutory construction . . . ." Chevron, 467 U.S. at 843 n.9, the inquiry at this first step

of Chevron is reserved for the court, and the agency's interpretation receives no deference.  Am.

Fed. of Labor and Cong. of Indus. Org. v. FEC, 333 F.3d 168, 173 (D.C. Cir. 2003); Gen.

Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 601 (2004); Wells Fargo Bank, N.A. v. FDIC,

310 F.3d 202, 205-6 (D.C. Cir. 2002); Bell Atl.,131 F.3d at 1047.

 If the statute is silent or ambiguous, the inquiry at Chevron step two becomes whether the

agency's interpretation is "based on a permissible construction of the statute." Northpoint, 412

F.3d at 151 (quoting Chevron, 467 U.S. at 843). An agency's interpretation at Chevron step two

is reasonable if it serves the statute's objectives. Northpoint, 412 F.3d at 151.  However, an

interpretation that is arbitrary, capricious or manifestly contrary to the statute is not. Id.  Where,

as here, the statute unambiguously forbids an agency's interpretation, the agency's decision fails

both under Chevron step one and Chevron step two.  See id.; Nt'l Ass'n of Regulatory Util.

Comm'rs v. ICC, 41 F.3d 721, 726 (D.C. Cir. 1994) ("[T]he inquiry at the second step of

Chevron overlaps analytically with a court's task under the Administrative Procedure Act. . . .").

I.  The Statute Does Not Permit Nullification of Ranbaxy's 180-Day Exclusivity

   A. The Language of the Statute Does Not Permit FDA to Limit 180-Day Exclusivity Based
      on a Litigation Requirement

   Statutory interpretation begins with the text of the statute. Abbott Labs. v. Young, 920

F.2d 984, 987 (D.C. Cir. 1990). The text of the statutory provision granting 180-day exclusivity

states:

> If the [ANDA] contains a [paragraph IV certification] and is for a
> drug for which a previous [ANDA] has been submitted
> [containing] [a paragraph IV certification], the [ANDA] shall be
> made effective not earlier than one hundred and eighty days after-
>
> (I)  The date the Secretary receives notice from [the first paragraph
>      IV ANDA applicant] of the first commercial marketing of the
>      drug ..., or
>
> (II) The date of a decision of a court . . . holding the patent which is
>      the subject of the certification to be invalid or not infringed,
>
> whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv) (2002).[1] Thus, the statute provides that the first ANDA applicant to

submit a paragraph IV certification receives 180-day exclusivity. In this case, Ranbaxy

submitted the first paragraph IV certification for simvastatin 80 mg; other ANDAs with

paragraph IV certifications followed. On its face, the statute plainly entitles Ranbaxy to 180-day

exclusivity.

   FDA argues, however, that it may nullify the first paragraph IV ANDA applicant's 180-

day exclusivity, depending on how the exclusivity was earned. If the patent is the subject of a

lawsuit, then the first paragraph IV applicant retains 180-day exclusivity regardless of the

---

1. This provision has been amended by the Medicare Prescription Drug, Improvement, and
Modernization Act of 2003, Public Law 108-173. While the 2003 amendments are relevant to
this case, the ANDA at issue is regulated under the pre-2003 statutory provision. See Pub. L.
No. 108-173 § 1102(b)(1).

pioneer's request for withdrawal of the patent. If the patent is not the subject of a lawsuit, then FDA will extinguish the first paragraph IV applicant's exclusivity in those circumstances. In FDA's view, the statutory right to 180-day exclusivity depends entirely on whether there is litigation over the patent that is subject to the first paragraph IV certification.

The text of the statute does not support FDA's distinction. The 180-day exclusivity provision contains a single standard, 21 U.S.C. § 505(j)(5)(B)(iv). That standard does not condition exclusivity on, or suggest any authority to extinguish exclusivity based on, the initiation of litigation over the patent; exclusivity depends on whether an applicant was the first to file a paragraph IV certification to a patent, regardless of when or whether litigation over the patent ensues.

The courts have consistently held that the statute does not allow FDA to condition eligibility for 180-day exclusivity on a litigation requirement. In Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523, 1526 (D.D.C. 1989), appeal dismissed, 43 F.3d 712 (D.C. Cir. 1989), the Court concluded that, because the statute was clear on its face, the Court would not "permit . . . the FDA to read into [the statute] a requirement of a lawsuit which is simply not there." In Mova, 955 F. Supp. at 130, the Court observed that:

> [t]he language of the statute may be complex, and even cumbersome, but it is plain and unambiguous. It does not include a 'successful defense' requirement, and indeed it does not even require the institution of patent litigation.

Id. On appeal, the D.C. Circuit upheld the decision in Mova, holding that the "FDA's successful defense requirement is inconsistent with the unambiguously expressed intent of Congress" and the FDA's implementing regulation was "gravely inconsistent with the text and structure of the statute." Mova 140 F.3d at 1069. In Granutec, 1998 U.S. App. LEXIS 6685, at *4, *18, the

16

Court concluded that "the first applicant under the statute . . . . was entitled to a 180-day

exclusivity period," holding that:

> [a]ll that Congress required for the 180-day exclusivity period is:
> (1) the filing of the first ANDA that includes a Paragraph IV
> certification, and (2) either (a) the first commercial marketing of
> the drug (after no infringement suit has been filed within 45 days
> or no resolution to such a suit has been reached after the expiration
> of the [30-month] stay, or (b) a decision that the patent in question
> is either invalid or not infringed.

In <u>Purepac Pharm. Co. v. Friedman</u>, 162 F.3d at 1204-05, the Court concluded that it is

consistent with the statute, and with the Court of Appeals decision in <u>Mova</u>, to award 180-day

exclusivity without regard to whether a paragraph IV certification leads to patent litigation or

not.

     In the wake of these cases, FDA acquiesced in the decisions, issuing a guidance in June

1998 stating that it would no longer require litigation as a condition for 180-day exclusivity and

would regulate directly from the statute.  FDA, Guidance for Industry: 180-day Generic Drug

Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic

Act, (June 1998), <u>available</u> <u>at</u> http://www.fda.gov/cder/guidance/2576fnl.pdf (last visited Nov. 6,

2005).  In November 1998, it issued an interim rule amending 21 C.F.R. § 314.107(c) intended to

"eliminate the requirement that an ANDA applicant successfully defend a patent infringement

suit to be eligible for 180-days of marketing exclusivity."  Interim Rule, 63 Fed. Reg. 59,710

(Nov. 5, 1998).  This was followed by a proposed rule in which FDA expressed its view that,

having reconsidered that statutory language, it now understood that "permitting an applicant who

avoids a lawsuit to be eligible for exclusivity is consistent with the statutory language and goal of

facilitating prompt entry of generic drug products into the market."  64 Fed. Reg. at 42, 876.

FDA eventually withdrew the proposed rule in 2002 due to adverse court decisions unrelated to

this issue[2] but, until now, FDA has been quite clear that it will <u>not</u> impose a litigation requirement in determining whether an applicant is eligible for 180-day exclusivity.

Allowing FDA to resurrect a litigation requirement would be contrary to Congressional intent.  As FDA concedes in the petition response, "[t]his 180-day period of marketing exclusivity acts as an incentive and reward to a generic drug manufacturer that exposes itself to <u>the risk</u> of patent litigation by being the first applicant to submit a paragraph IV certification to a patent."  Petition Response, AR, Tab 23 at 3 (emphasis added); <u>accord</u> <u>Mylan Pharm., Inc. v Henney</u>, 94 F. Supp. 2d at 40 (180-day exclusivity is "an incentive to the first generic maker to expose himself to the risk of costly patent litigation.").  That makes sense in the context of the Hatch Waxman 180-day exclusivity provisions, which are intended both as an incentive to "design around" patents and as a reward for exposure to the <u>risk</u> of patent litigation.  <u>Teva Pharms. USA, Inc. v. Pfizer</u>, 395 F.3d 1324, 1328 (Fed. Cir. 2005).  At the time an applicant prepares a paragraph IV notice explaining the basis for its belief that its drug product does not infringe the patent, or that the patent is invalid, it does not know whether it will be sued, only that it runs that risk, and this is particularly true when the applicant is the first to send a paragraph IV notification.  Having exclusivity depend on whether it is sued would seriously

---

2.  FDA determinations with respect to 180-day have quite regularly been overturned by the courts.  <u>Teva Pharms. USA, Inc. v. FDA</u>, 182 F.3d 1003, 1010 (D.C. Cir. 1999) <u>on remand</u>, 1999 U.S. Dist. LEXIS 14575 (D.D.C. 1999), <u>aff'd</u>, 2000 U.S. App. LEXIS 38667 (D.C. Cir. 2000) (Court rejects FDA's interpretation of a "decision of a court"); <u>Teva Pharms. USA, Inc. v. FDA</u>, 2005 U.S. Dist. LEXIS 24288 (D.D.C. 2005) (same); <u>Mylan Pharms. Inc. v. Henney</u>, 94 F. Supp. 2d at 47 (same); <u>Mylan Pharms., Inc. v. Shalala</u>, 81 F. Supp. 2d at 42 (same); <u>TorPharm Inc. v. Shalala</u>, No. 97-1925, 1997 U.S. Dist. LEXIS 21983, *11 (D.D.C. 1997) (same); <u>Mova</u>, 140 F.3d at 1069 (Court rejects FDA's "successful defense" requirement); <u>Granutec</u>, 1998 U.S. App. LEXIS 6685, at *21 (same); <u>Purepac</u>, 162 F. 3d at 1204-05 (same); <u>Inwood</u>, 723 F. Supp. at 1526 (same); <u>Torpharm, Inc. v. FDA</u>, No. 03-2401, 2004 U.S. Dist. LEXIS 524, *2 (D.D.C. 2004) (Sharing 180-day exclusivity violates FDCA); <u>Mylan Pharms., Inc. v. Thompson</u>, 207 F. Supp. 2d 476, 487 (D. W. Va. 2001) (FDA does not have authority under FDCA to change a Paragraph IV certification to a Paragraph III certification).

undermine the incentive Congress sought to create, because lawsuits are a factor that cannot be controlled by the ANDA applicant, and because ANDA applicants incur significant costs that should be recognized and rewarded, whether or not the applicant is sued.

FDA's position, however, provides the reward only for litigation, and not for exposure to the risk of litigation. It would extinguish 180-day exclusivity earned through a "successful notice" that exposes the ANDA applicant to the risk of litigation and avoids litigation by demonstrating that the ANDA applicant has "designed around" the patent or that the patent is invalid or not infringed. Thus, FDA's position does not reflect the intent of Congress, and FDA cannot look to Congressional intent to give the words of the statute a meaning other than that reflected in the statute's plain language.

Because it is inconsistent with the text of the statute, with the case law and with Congressional intent, FDA's regulation at 21 C.F.R. § 314.94(a)(12)(viii) protecting the 180-day exclusivity only when there has been litigation cannot be applied as FDA now interprets it. The reference in the regulation to a lawsuit is a remnant of FDA's previous regulatory scheme requiring litigation to earn 180-day exclusivity, which the agency has now abandoned. The regulation was integrally tied to that scheme, and still refers to the "lawsuit under Section 314.107(c)" and to the "delay in effective dates of approval . . . required under that section as a

result of the lawsuit."[3]  The "lawsuit under Section 314.107(c)" is the lawsuit upon which

exclusivity was based under the language of Section 314.107(c) that was removed by FDA in

1998 to eliminate the "successful litigation" requirement.  The "delay in effective dates of

approval . . . required under that section as a result of the lawsuit no longer exists because of the

1998 amendment.  As FDA concedes in its petition response, that reference no longer has any

basis in 21 C.F.R. § 314.107(c).  Until it issued its response to Ranbaxy's citizen petition, after

this litigation began, FDA has never set forth any reason for its failure to amend 21 C.F.R. §

314.94(a)(12)(viii).

    To fully eliminate the litigation requirement, FDA should have amended 21 C.F.R. §

314.94(a)(12)(viii)(B) in the same way that it amended 21 C.F.R. § 314.107(c), by striking the

clauses that require a lawsuit, most notably the words "that is the subject of a lawsuit under §

314.107(c)," and leaving the section to read "A patent shall not be removed from the list until

FDA determines that [no 180-day exclusivity is required, that the patent has expired, or that 180-

––––––––––––––––––––––––––––

3. Section 314.94(a)(12)(viii)(B) provides in relevant part:

      After removal of a patent from the list. If a patent is removed from the list, any applicant
      with a pending application (including a tentatively approved application with a delayed
      effective date) who has made a certification with respect to such patent shall amend its
      certification. The applicant shall certify under paragraph (a)(12)(ii) of this section that no
      patents described in paragraph (a)(12)(i) of this section claim the drug or, if other
      relevant patents claim the drug, shall amend the certification to refer only to those
      relevant patents. In the amendment, the applicant shall state the reason for the change in
      certification (that the patent is or has been removed from the list). *A patent that is the
      subject of a lawsuit under Section. 314.107(c)* shall not be removed from the list until
      FDA determines either that no *delay in effective dates of approval is required under that
      section as a result of the lawsuit*, that the patent has expired, or that any such period of
      delay in effective dates of approval is ended. An applicant shall submit an amended
      certification. Once an amendment or letter for the change has been submitted, the
      application will no longer be considered to be one containing a certification under
      paragraph (a)(12)(i)(A)(4) of this section.

(Emphasis added.)

day has ended]."  Only by striking these portions would the regulation be consistent with the statute and case law.  FDA's failure to amend 21 C.F.R. § 314.94(a)(12)(viii)(B) was a failure to eliminate the litigation requirement.  Just as the litigation requirement was unlawful and contrary to the statute in other sections of FDA's regulations, it is unlawful and contrary to the statute here.

B.  <u>The MMA Confirms That A Delisted Patent Does Not Nullify 180-Day Exclusivity</u>

Any doubt that Congress provided 180-day exclusivity to a paragraph IV ANDA applicant that has not been sued, even when an NDA holder delists the patent, has been clarified by the enactment of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, Pub. L. No. 108-173 ("MMA").  In the MMA, Congress enacted a provision governing the expiration of 180-day exclusivity when a patent is withdrawn.  The fact that Congress provided for the forfeiture of 180-day exclusivity under certain conditions once a patent is delisted means that Congress recognized that there is an exclusivity that can be forfeited.  This confirms that Congress understood that its Hatch Waxman provisions allowed 180-day exclusivity to survive the request to withdraw a patent.

In 2003 Congress amended the statute to resolve a number of issues that had arisen in the implementation of Hatch Waxman between 1984 and 2003.  Chief among the changes is a set of new forfeiture provisions that limit the ability of an ANDA applicant to delay the approval of subsequent ANDA applicants by requiring that an ANDA applicant that has 180-day exclusivity market its product within certain time periods or forfeit its exclusivity.  MMA, Pub. L. No. 108-173, § 1102, 117 Stat. 2066, 2457-60 (2003).

Most notably, the MMA provides that 180-day exclusivity be forfeited if a first applicant fails to market within a specific time period after an NDA holder withdraws a patent from the Orange Book:

"(1) Failure to Market. – The first applicant fails to market the drug by the later of –
      "(aa) the earlier of the date that is –
            "(AA) 75 days after the date on which the approval of the application of the first applicant is made effective under subparagraph (B)(iii); or
            "(BB) 30 months after the date of submission of the application of the firs applicant; or
      "(bb) with respect to the first applicant or any other applicant (which other applicant has received tentative approval), the date that is 75 days after the date as of which, as to each of the patents with respect to which the first applicant submitted and lawfully maintained a certification qualifying the first applicant for the 180-day exclusivity period under subparagraph (B)(iv), at least 1 of the following has occurred:

*     *     *

The patent information submitted under subsection (b) or (c) is withdrawn by the holder of the application approved under subsection (b).

Id. at 2458-59 (emphasis added). This provision affirmatively recognizes that exclusivity survives an NDA holder's request to delist, and does so without regard to whether the patent was subject to litigation. Subsequent legislation may be considered to assist in the interpretation of prior legislation when several sequential acts of Congress are passed on the same subject matter. Two Pesos Inc. v. Taco Cabana, Inc, 505 U.S. 763, 784 n.17 (1992); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 393 (1977). Thus, the MMA can and does confirm that Congress intended the first applicant with a paragraph IV certification to be entitled to 180-day exclusivity when a patent is withdrawn by the NDA holder even in the absence of patent litigation.

C.  The Statute Does Not Permit FDA to Impose Conditions on Exclusivity Through Patent Listing Requirements

     For the reasons set forth above, because Ranbaxy filed the first paragraph IV certification for the 80 mg strength of simvastatin, it is entitled to exclusivity under the plain language of the statutory 180-day exclusivity provision. FDA's petition response does not squarely address why the statutory language does not govern the outcome of this case. FDA appears, however, to be arguing that the agency may reimpose a litigation requirement for 180-day exclusivity through

22

the agency's regulations for delisting patents. FDA may not nullify exclusivity through a back-door mechanism based on patent listing regulations.

FDA begins its analysis by pointing to 21 U.S.C. § 505(b)(1) and (c)(2), which provide that innovators must list patents that claim the drug. It then infers that this provision also authorizes the NDA holder to remove patents from its NDA. FDA then states that it interprets its role in listing and delisting to be purely ministerial, that is, when an NDA holder removes a patent, FDA will delist it without questioning the correctness of the NDA holder's decision. Having made the argument that it is allowed to remove patents from the list based on the pioneer's views, it looks to its regulations on listing to extinguish Ranbaxy's exclusivity.

FDA's logic fails to persuade for several reasons. First, nothing in the statute commands the withdrawal of patents. The statute does not address patent withdrawal. Second, nothing requires FDA to assume a ministerial role in listing and delisting. The courts may have said that FDA may adopt a ministerial role in listing, but no court has required it. Third, FDA's suggestion that its regulations permit nullification of 180-day exclusivity when a patent is delisted is of no consequence if the statute does not permit nullification. Atl. City Elec. Co. v. FERC, 295 F.3d 1, 11 (D.C. Cir. 2002) (agency cannot rely on one of its own regulations to trump the plain meaning of the statute). FDA improperly attempts to balance a number of discretionary decisions that it has made in the past against the statutory right to 180-day exclusivity.

In fact, no balancing is required or permitted. The only statutes to which FDA points are not in conflict. FDA can allow an NDA holder to withdraw a patent, but leave the patent on the list, so as to preserve the statutory grant of 180-day exclusivity. This gives effect to all of the statutory provisions at issue. FDA v. Brown & Williamson, 529 U.S. 120, 125 (2000) (stating

that an agency may not exercise its authority in a manner inconsistent with the administrative structure Congress enacted into law).

FDA exercised its authority in a manner consistent with the structure Congress enacted when it promulgated its 1994 regulations. FDA then recognized that an pioneer's withdrawal of a patent should not result in the loss of exclusivity, stating that "the protection offered by 180-day exclusivity should not be undermined by changes from paragraph IV certification . . . ." 59 Fed. Reg. at 50,348. To avoid that result, FDA decided that, even where an NDA holder withdraws a patent, the "patent is deemed to be relevant . . . . until the end of the term of the patent or applicable 180-day exclusivity period, whichever occurs first . . . . [W]here there is a patent that has been challenged by a paragraph IV applicant, a subsequent applicant will not be able to file a certification that there is no relevant patent or seek an immediately effective approval until either the patent or the 180-day exclusivity period expires." Id. That reasoning was correct then, and it is correct now.

This is not the only circumstance in which FDA has recognized that listing concerns must give way to 180-day exclusivity when necessary to advance the intent of Congress. In analogous situations, FDA has treated listing and certification as flexible concepts. For example, an ANDA applicant who has filed a paragraph IV certification may not change it to a paragraph III certification if a lawsuit has been filed against another paragraph IV applicant unless FDA determines that 180-day exclusivity will not be affected. 21 C.F.R. § 314.94(a)(12)(viii). This section also reflects the old successful defense requirement. Similarly, where a NDA holder fails to list a patent timely, FDA does not require applicants with pending ANDA applications to certify to that patent. According to FDA, this approach "best embod[ied] the compromise

24

adopted by Congress" and provided "the best means for discouraging manipulation of the patent filing scheme." Id. at 50,340.

FDA's initial interpretation of the statute, preventing patent listing from extinguishing statutorily mandated 180-day exclusivity, was the correct interpretation, and FDA cannot be allowed to depart from it here. Neither FDA's patent listing and delisting regulations, nor any other regulations, may extinguish the right to 180-day exclusivity expressly provided by Congress.

II.    FDA's Decision Is Arbitrary and Capricious

An agency explanation that is manifestly contrary to the statute is impermissible under both Chevron step one and step two. Northpoint 412 F.3d at 151 (citing Chevron, 467 U.S. at 844)); see, e.g., MPAA, Inc. v. FCC, 309 F.3d 796, 801 (D.C. Cir. 2002). When an agency's interpretation does not serve the statute's objective, the agency's decision is arbitrary and capricious. See Northpoint, 412 F.3d at 151; Health Ins. Ass'n of Am. v. Shalala, 23 F.3d 412, 416 (D.C. Cir. 1994) (agency decision that conflicts with the policy judgments that undergird the statutory scheme cannot survive review under the APA). In this case, FDA's decision fails to survive scrutiny under the APA because it fails to square with the broad Congressional purpose to provide 180-day exclusivity equally to successful notice and successful defense ANDA applicants.

FDA argues that its decision is consistent with "the applicable policy goals for FDA." Petition Response, AR, Tab 23 at 8. FDA believes that 180-day exclusivity may give rise to certain delays in the approval of generic drugs and declares these delays to be "unwarranted." Id. at 16. FDA's explanation, therefore, rests on the assumption that the agency is entitled to balance the inherent costs and benefits of 180-day exclusivity and decide whether an ANDA

applicant that successfully challenges a patent by notice or design has the same rights to 180-day

exclusivity as one whose challenge succeeds in litigation.

Because the agency assumes it can interject its own policy judgments as to the effects of

180-day exclusivity on competition in determining who is entitled to 180-day exclusivity, FDA's

explanation fails at the threshold.  The short answer to FDA's assumption is that Congress did

not authorize FDA to determine whether 180-day exclusivity was good or bad for competition or

whether first applicants may be more or less worthy of exclusivity based on whether they

successfully challenged a patent through notice rather than litigation.  More fundamentally, FDA

cannot interpret the statute to negate the precise policy objective Congress sought to advance

through 180-day exclusivity.

FDA interjected its assumption that 180-day exclusivity delays generic entry when it

adopted its original successful defense interpretation.  Now it seeks to resurrect that assumption

here.  The lesson of Mova, Granutec and Purepac is that it is Congress, not FDA, who decides

whether 180-day exclusivity advances competition and Congress, not FDA, who decides whether

the scope of 180-day exclusivity should be limited to successful defense applicants.  As this

Court concluded in Mova, even if the "operation of the statute" "may appear to FDA to be

unwise," FDA cannot act in contravention of Congressional intent.  Mova, 955 F. Supp. at 131.

FDA's interpretation here is not based on a reasonable construction of the statute and its October

24, 2005 decision is not reasonable within the meaning of Chevron.  Northpoint, 412 F.3d at 151;

Nat'l Ass'n of Reg. Utility Comm'rs v. ICC, 41 F.3d 721, 728 (D.C. Cir. 1994) (court may

invalidate agency reasoning on the basis of an incorrect statutory interpretation of an agency's

authority to balance policy objectives).

A. <u>FDA's Interpretation Undermines A Central Goal of the Statute</u>

In <u>Mova</u>, FDA argued that the successful defense requirement was intended to advance "the larger purpose of the Hatch Waxman Amendments to make available more low cost generic drugs." <u>Mova</u> 955 F. Supp. at 131. This Court in <u>Mova</u> rejected this same concern as based on "speculation." <u>Id.</u> There is even less basis here than in <u>Mova</u> to credit FDA's policy analysis.

To be sure, 180-day exclusivity is a "delaying mechanism." <u>Valley Drug Co. v. Geneva Pharms.</u>, 344 F.3d 1294, 1298 (11th Cir. 2003). By definition, 180-day exclusivity means that approval of subsequent ANDAs will be delayed. Delay is the mechanism chosen by Congress to provide the incentive to generic companies to challenge the brand-name drug's patents and bring generic competition to the market as soon as possible. H.R. Rep. No. 98-857, Pt. II, at 9 (noting that Hatch Waxman intended to "get[] safe and effective generic substitutes on the market <u>as quickly as possible</u> after the expiration of the patent); <u>In re Barr Labs Inc.</u>, 930 F.2d 72, 76 (D.C. Cir. 1991) (a central purpose of the Hatch Waxman was to "get generic drugs into the hands of patients at reasonable prices - <u>fast</u>.") (emphasis added).

The important point, ignored by FDA, is that 180-day exclusivity serves to accelerate the entry of the first generic. The extent to which consumers benefit from generic entry is a function both of when generics enter the market, as well as how many ultimately enter the market. The earlier a generic enters, the greater the benefit to consumers. Because the expected financial return associated with 180-day exclusivity is so much higher than the return when entering the market with many others, the 180-day exclusivity incentive creates a race among generic applicants to be the first to file their ANDAs. Thus, generic competition begins sooner, and, even assuming 180 days of delay, subsequent applicants may well reach the market faster than they would have without 180-day exclusivity.

In the 1994 regulations containing the successful defense requirement, FDA understood that, to implement the purposes of Hatch Waxman, it was necessary to prevent delisting from disqualifying an applicant from 180-day exclusivity. It accomplished that purpose by prohibiting delisting of the pioneer's patents until any 180-day exclusivity expired. To preserve that purpose now that the successful defense requirement has been invalidated, the FDA must protect the exclusivity in the event of a patent withdrawal by the pioneer for any generic that files the first paragraph IV certification.

FDA advances a veritable kitchen sink assortment of assertions to support the proposition that it is contrary to the policy interest in avoiding delay to allow patents to remain in the Orange Book after an NDA holder has requested that the patent be delisted. All of them, however, lack a basis in the statute and are, at best, purely speculative and, at worst, baseless. In fact, given the wholly arbitrary manner in which FDA treats requests to delist, it is difficult to credit FDA's assertion that removing patents from the list serves such an important purpose that it must be done at the cost of an ANDA applicant's 180-day exclusivity. In this case, for example, Merck asked that its patents be delisted in October 2003. Yet FDA waited nearly a year to remove the patents from the Orange Book.

First, FDA observes that if a patent cannot be removed from the list, there would be "little, if any, time for meaningful use of the patent challenge process." Id. The "patent challenge process" to which FDA refers essentially provides that an ANDA applicant who believes a patent is improperly listed may send a letter to FDA and FDA will forward the letter to the NDA holder. 21 C.F.R. § 314.53(f). FDA's argument makes no sense. ANDA applicants

can always object to a listing, whether anyone is entitled to exclusivity or not.[4]  Moreover,

maintaining a patent on the list solely for the purpose of preventing the nullification of 180-day

exclusivity earned through successful notice or design is no more a barrier to the use of 21

C.F.R. § 314.53(f) than maintaining the listing for the purpose of preventing the nullification of

exclusivity earned through a successful defense.

Second, FDA states that listed patents are "barriers to approval of generic drugs" because

an ANDA applicant must make a certification and provide notice if a patent is listed.  Petition

Response, AR, Tab 23 at 14.  The certification regulation requires an ANDA applicant to analyze

the patent to determine whether it is invalid and whether the ANDA drug would infringe the

patent.  21 C.F.R. § 314.95(c)(6).  This is no obstacle to entry by subsequent ANDA applicants.

Any applicant for a generic copy of a drug that intends to market its product prior to expiration

of a patent that may be relevant must and will conduct such analysis for any patent that covers

the drug, whether the patent is listed or not.  Writing down its analysis and sending it to the

patent holder is hardly a burden and certainly not one that has any perceptible effect on approval

by FDA.  In any event, because the patent will be removed from the Orange Book at the end of

the 180-day exclusivity period when the NDA holder has requested delisting, there is no need for

a subsequent ANDA to contain a paragraph IV certification, unless the applicant wants to

challenge the patent prior to getting approval.  Of course, if the applicant does not wish to

contest the patent, it can file a simple paragraph III certification identifying the date on which the

patent will expire.  21 U.S.C. § 355(j)(2)(A)(vii)(III).

_____

4.  For example, if a questionable patent is listed for a drug that is the subject of new chemical
entity exclusivity, the ANDA applicants will have four years from approval of the NDA until
they can file an ANDA with a paragraph IV certification - four years is sufficient time to provide
meaningful use of the patent challenge process.

Third, FDA notes that listing a patent may lead to a 30-month stay and such a stay will delay approval of subsequent ANDA applicants. Petition Response, AR, Tab 23 at 15-16. This is clearly not the case. According to FDA, "the request for delisting of the patents terminates any 30-month stay on approval of an ANDA arising from those patents." Withdrawal of Patent Information from Charles King, to Office of Generic Drugs, FDA, (July 1, 2003), AR, Tab 31 at 1. The continued listing of those patents "does not change the fact that the 30-month stays attached to those patents are . . . terminated." Id. Thus, the subsequent ANDAs are delayed only for the 180-day exclusivity period and there is no delay under the 30-month stay provisions of the statute.[5]

Fourth, FDA argues that 180-day exclusivity may delay approval of subsequent ANDA applicants if the applicant that is the first to file with a paragraph IV certification fails to get approval or fails to begin marketing of an approved drug. Petition Response, AR, Tab 23 at 15. This consequence, however, is inherent in 180-day exclusivity and is wholly unrelated to whether the exclusivity was earned by successful notice or design or by successful defense. FDA essentially argues that it is authorized to place limits on 180-day exclusivity because 180-day exclusivity could have negative effects on competition. The argument illustrates that FDA's decision reflects the agency's disagreement with Congress over the value of 180-day exclusivity, and a further disagreement with both Congress and this Court over the agency's authority to impose a litigation requirement as a condition for 180-day exclusivity. The agency's position is revealed for what it is – a back door attempt to circumvent the court's admonishment that the agency cannot read into the statute a litigation requirement that is not present.

_____

5. In any event, if a patent holder that has concluded its patent is invalid, unenforceable or not infringed, it would be hard pressed, in light of the requirements of Fed. R. Civ. P. 11, to sue for patent infringement.

Fifth, and finally, the agency identifies one factor that at least purports to relate to a difference between successful notice or design and successful defense exclusivity. According to FDA, it must provide an incentive to the latter and not the former in order "to provide an incentive to the first applicant to pursue its patent litigation by assuring the applicant that the exclusivity reward will not be extinguished if the patent is removed from the Orange Book." Petition Response, AR, Tab 23 at 17. This rationale is nonsensical. An ANDA applicant does not need an incentive to "pursue its litigation." Whether litigation ensues is controlled by the patent holder, the plaintiff in a patent infringement suit. An ANDA applicant is defendant in a patent infringement suit and as such needs no incentive to "pursue" a patent infringement case.

B. FDA's Position Invites Abuse of the Patent Listing System and Creates Unnecessary Incentives to Trigger Patent Litigation

Not only has FDA failed to advance any rationale that is consistent with the Congressional policy in Hatch Waxman, but its decision also gives rise to results that are at odds with the statute. 180-day exclusivity is an immensely valuable benefit. "[T]he earliest generic drug manufacturer in a specific market has a distinct advantage over later entrants," Mova, 140 F.3d at 1066. Indeed, the benefit is so substantial that the Mova Court held that its loss would constitute irreparable injury. Providing 180-day exclusivity based on a litigation requirement puts the award of that benefit entirely in the hands of the NDA holder, because it is the NDA holder who decides whether to sue a paragraph IV ANDA applicant. In this case, for example, it was Merck that decided not to sue Ranbaxy over Ranbaxy's paragraph IV certification. If FDA's view prevails, the NDA holder controls the award of 180-day exclusivity. NDA holders make decisions based on private, not public, interests. As the court in Inwood concluded, "by subjecting the exclusivity entitlement to the caprices of the patent holder, the FDA's interpretation would seem to affect adversely the incentives Congress sought to create on

31

providing for 180 days of exclusivity for the manufacturing of generic drugs." Inwood, 723 F.

Supp. at 1526.[6]

FDA discounts the possibility of abuse by asserting that patent delistings are "relatively

uncommon." Petition Response, AR, Tab 23 at 16. FDA does not explain the basis for its

assertion, but from Ranbaxy's vantage point it seems clearly wrong. During the last year and a

half, patents for four of the drugs for which Ranbaxy was the first to file a paragraph IV

certification have been delisted or are the subject of pending requests for delisting (i.e.,

tolterodine, sumatriptin, divalproex, simvastatin). See Electronic Orange Book, Delisted Patent

Search Results, at 2, 4, 5 at http://www.accessdata.fda.gov/scripts/cder/ob/docs/delist.cfm (last

visited Nov. 6, 2005) (stating that patents for tolterodine tartrate, simvastatin and divalproex

sodium have been delisted from the Orange Book); Petition Response, AR, Tab 23 at 19 n.21

(FDA received a request to delist patents for sumatriptan succinate but has not yet delisted the

patents due to the Ranbaxy's citizen petition). FDA's decision to allow delisting to defeat

exclusivity therefore represents a blow to very substantial investments made by Ranbaxy.

Contrary to FDA's characterization, in the real world of generic manufacturers, the magnitude of

the effects of its decision does have the ability to undermine the effectiveness of exclusivity.

Finally, a system that awards exclusivity only when there is litigation invites unnecessary

litigation. Paragraph IV ANDA applicants might be tempted to provide as little information as

---

6. FDA has exercised its authority, and expertise, to promulgate regulations defining which
categories of patents may be listed in the Orange Book. See Applications for FDA Approval to
Market a New Drug: Patent Submission and Listing Requirements, Final Rule, 68 Fed. Reg.
36,676, 36,678-83 (June 18, 2003). At the same time, it declines to decide whether specific
patents fit the criteria it promulgated, delegating the decision to a private party, the NDA holder.
By allowing the private party's listing decision to determine whether the ANDA applicant has
exclusivity, it has effectively shifted its responsibility to make eligibility decisions to a private
party. This it may not do. Perot v. FEC, 97 F.3d 553, 559 (D.C. Cir. 1996).

possible to the NDA holder in their paragraph IV notifications so that the patent holder would be forced to sue them to find out if the generic product infringed. ANDA applicants might file declaratory judgment actions that they otherwise would not have filed to make sure that the litigation requirement was fulfilled. This is a point that FDA previously acknowledged in its 1999 proposed rule, when it observed, in advocating the abolition of a litigation requirement, that "an ANDA applicant should not be encouraged to file a frivolous certification that invites litigation so as qualify for exclusivity." 64 Fed. Reg. at 42,876. Here, however, FDA will encourage the precise result it sought to avoid.

C. FDA's Analogy to Patent Expiration is Unpersuasive

FDA also asserts that, for purposes of exclusivity, a withdrawn patent should be treated like an expired patent. Petition Response, AR, Tab 23 at 10. In reality, patent expirations and patent withdrawals raise entirely different issues for generic entry and competition and therefore merit different treatment under Hatch Waxman. In addition, FDA appears to assert that there are parallels between an ANDA applicant that succeeds in its challenge to a patent by successful notice or design and an applicant that loses a patent infringement suit. Id.

The distinction between an NDA applicant that succeeds in its patent infringement challenge, and one that loses a challenge, is self-evident. The distinction between expired patents and delisted patents also is clear and also justifies different treatment. Once a patent expires, it is no longer relevant for purposes of 180-day exclusivity. Congress intended to have no delays in ANDA approval after patents expire as evidenced by the statutory provisions governing paragraph III certifications, which require FDA to approve an ANDA with a paragraph III certification when the patent expires, without regard to 180-day exclusivity. It is for this reason that FDA interprets the 180-day exclusivity delay to end upon expiration of the patent.

An expired patent no longer presents a barrier to competition by generic applicants. Because no patent infringement action can be brought to enforce it, there is no need to challenge or design around it. Accordingly, FDA might conclude that there is no need to provide an incentive to challenge an expired patent, and therefore no need to recognize 180-day exclusivity beyond the patent's expiration. See Dr. Reddy's Labs., Inc. v. Thompson, 302 F. Supp. 2d 340, 354-55 (D.N.J. 2003).

By contrast, a patent that is withdrawn from the Orange Book, unlike an expired patent, can still serve as a barrier to competition. Hatch Waxman does not prohibit the patent owner of an unlisted patent from bringing a traditional patent infringement suit against a generic company, based on post-approval sale of the drug, for damages, injunctive relief and attorney's fees. See 35 U.S.C. §§ 271(a), 281, 283-85. Thus, an ANDA applicant that markets its competing product runs a potentially enormous legal risk. A patent that is withdrawn from the Orange Book because, for example, the NDA holder believes it may not meet FDA's listing criteria, may be every bit as much of an obstacle to a generic applicant as a listed patent that is not the subject of a suit within 45 days. In both cases, 180-day exclusivity serves as an important incentive to generic entry.

In addition, when a patent expires (or even when an ANDA applicant loses a patent infringement suit) there is no factual question about whether the ANDA product infringes a patent or not. If the patent expires, the generic applicant knows the expiration date in advance and knows that at expiration the patent cannot be infringed. By contrast, where an NDA holder requests delisting, there may be, as there is in this case, a substantial question – which FDA refuses to resolve – about whether the patent claims the drug and should, therefore, be listed. See Ranbaxy Reply, AR, Tab 17 at 4; Ranbaxy Reply, Hare Declaration, AR, Tab 17 at 2-8;

34

Ranbaxy Reply, Attachment A, Declaration of Dr. Tippasandra Gowripathi Chandrashekhar,

AR, Tab 17 at 1-4 (providing that the '481 and the '520 were properly listed by Merck because

the patents fall within FDA's definition of listable patents).

D. FDA's Reliance on 21 C.F.R. § 314.94 is Arbitrary, Capricious and Contrary to Law

FDA rests its decision on 21 C.F.R. § 314.94, arguing that the regulation "survives

Mova," Petition Response, AR, Tab 23 at 13, and that it authorizes the removal of a patent

that was not the subject of the litigation from the Orange Book at the request of the patent holder, so

that no applicant is eligible for 180-day exclusivity for that patent, id. at 12.  The interpretation

of a regulation is determined by the plain language "or by other indications of the of the

[agency's] intent at the time of the rules promulgation." Thomas Jefferson Univ. v. Shalala, 512

U.S. 504, 512 (1994) (quoting Gardebring v. Jenkins, 485 U.S. 415, 430 (1988)).  Here, there is

ample indication of the agency's intent at the time it promulgated 21 C.F.R. §

314.94(a)(12)(viii)(B).

The preamble to 21 C.F.R. § 314.94 establishes that (1) the regulation was intended to

prevent nullification of 180-day exclusivity; (2) the regulation was not intended to undermine

exclusivity; and (3) because FDA was of the view that 180-day exclusivity would result only

from patent litigation, the regulation did not intend to provide that the withdrawal of a patent not

in litigation would affect exclusivity.  59 Fed. Reg. at 50,348.  FDA cannot validly apply the

regulation to deviate from this interpretation.  See 21 C.F.R. § 10.85(d) and (c) (stating that a

preamble to a regulation represents the "formal position of FDA on a matter" that "obligates the

agency to follow it until it is amended or revoked.")

There is no doubt that the interpretation adopted by FDA in response to Ranbaxy's

citizen petition constitutes "a fundamental change in its interpretation of a substantive

regulation" that repeals or amends that regulation, and that it does so without having provided notice of the change and allowed for comment.  Whatever latitude an agency may generally enjoy in interpreting its own regulations does not extend to an interpretation that is contrary to the regulation's stated intent when the rule was promulgated.  Agencies may not abandon prior definitive interpretations without notice and comment.  Darrell Andrews Trucking, Inc. v. Fed. Motor Carrier Safety Admin., 296 F.3d 1120, 1125 (D.C. Cir. 2002), cited in Fina Oil and Chem Co. v. Norton, 332 F.3d 672, 676 (D.C. Cir. 2003). See also Paralyzed Veterans of Am. v. D.C. Arena L.P., 117 F.3d 579, 586 (D.C. Cir. 1997).

FDA, for reasons that are not clear, has chosen not to revoke or amend 21 C.F.R. § 314.94(a)(12)(viii)(B).  As a result, the regulation is ill-suited for many purposes and cannot support the agency's decision in this case.

## CONCLUSION

For these reasons and the reasons stated above, Ranbaxy's motion for summary judgment should be granted.

Respectfully submitted,

Of Counsel:

Jayadeep R. Deshmukh
Vice President – Intellectual Property
William D. Hare
Senior Counsel – Intellectual Property
Ranbaxy Laboratories Ltd
600 College Road East
Princeton, NJ 08540

William B. Schultz
Carlos T. Angulo
Zuckerman Spaeder LLP
1800 M St., NW, Ste. 1000
Washington, DC 20036

Dated: November 7, 2005

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314
William A. Garvin
D.C. Bar No. 486467

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Ranbaxy

37