# TAB A

MEMORANDUM

DEPARTMENT OF HEALTH AND HUMAN SERVICES
PUBLIC HEALTH SERVICE
FOOD AND DRUG ADMINISTRATION
CENTER FOR DRUG EVALUATION AND RESEARCH

---

DATE:        September 02, 2005

FROM:        Cecelia M. Parise
             Regulatory Policy Advisor to the Director
             Office of Generic Drugs
             Center for Drug Evaluation and Research

THROUGH:     Gary J. Buehler
             Director
             Office of Generic Drugs
             Center for Drug Evaluation and Research

SUBJECT:     180-day Exclusivity for Omeprazole 40mg/Apotex Request for Reconsideration

TO:          ANDA's for Omeprazole Delayed-release Capsules, 40 mg

During the course of the ongoing litigation in *Apotex Inc. v. FDA*, Apotex has argued that FDA
should apply its shared exclusivity policy to omeprazole 40 mg as between Dr. Reddy
Laboratories, Inc. (Reddy) and Andrx. Apotex argues that, under the shared exclusivity approach
adopted by FDA, any applicable exclusivity has expired and FDA may thus approve all otherwise
eligible ANDAs. We have reviewed the applicable documents and FDA's practice and
precedent, and have concluded that under FDA's longstanding patent-by-patent approach, Andrx
remains the sole ANDA applicant eligible for exclusivity for omeprazole 40 mg.

## APOTEX'S ARGUMENT

Apotex asserts that Reddy was first to submit effective paragraph IV certifications for certain
patents ('499, '505, and '230), and that FDA should have granted shared exclusivity to Reddy
and Andrx (based on Andrx's first-filed paragraph IV certifications to other patents ('103, '380,
'213, and '148)). Because there has been a court decision on the '499 patent, and because, where
shared exclusivity applies, a court decision on any patent will trigger exclusivity, Apotex claims
that such exclusivity has been triggered and expired.

We understand Apotex to be arguing the following:

(1) FDA should reopen and reevaluate its exclusivity determinations for omeprazole 40
mg based on subsequent developments. Apotex contends that such reevaluation is
warranted here because, on February 1, 2005, FDA converted Andrx's ANDA
approval status from "final" to "tentative" after Andrx was found to infringe two
patents;



180-day exclusivity
Omeprazole Delayed-release Capsules, 40 mg

(2) Once FDA reopens the exclusivity determination, FDA should apply the "*Purepac*" rule, that (as of January 28, 2003) the effective date of a paragraph IV certification in an ANDA amendment is the date on which the ANDA applicant has both submitted its paragraph IV certification to FDA and sent notice of the certification to the NDA holder. *See Purepac Pharm. Co. v. Thompson*, 354 F.3d 877, 888-89 (D.C. Cir. 2004);

(3) The original notice that Andrx provided to the NDA holder on the '499, '505, and '230 patents did not satisfy the notice requirements of the statute. Andrx submitted an amendment to its ANDA to add the 40 mg product, including paragraph IV certifications to those patents, on September 29, 1998. Andrx then produced the entire 40 mg ANDA to the NDA holder, AstraZeneca, during a document production in a litigation concerning the 10 and 20 mg products on October 21, 1998. Andrx did not provide formal notice to AstraZeneca until June 2, 1999. Reddy submitted an original ANDA containing paragraph IV certifications to the '499, '505, and '230 patents on February 4, 1999. Thus, if the litigation production were not adequate notice, by the time Andrx gave formal notice on those patents, Reddy had already satisfied the requirements of the statute and, under the *Purepac* rule, would have been first on the '499, '505, and '230 patents; and

(4) Once premises 1-3 are accepted and applied to this factual situation, the circumstances warrant the application of "shared exclusivity."

FDA has considered Apotex's argument. The agency has determined that after October 30, 2002, there could be no shared exclusivity because neither Reddy nor Andrx was eligible for final approval because such approval was blocked by the unexpired '505 and '230 patents. During the period before October 30, 2002, the *Purepac* rule did not apply, and thus - even assuming Apotex is correct that Andrx did not submit the required notice of its paragraph IV certifications in a timely manner - Reddy would not have been eligible for exclusivity as a result of its paragraph IV certifications to the '499, '505, and '230 patents. Thus, there was no point in time when FDA might have reevaluated its exclusivity determination for omeprazole 40 mg and found that Reddy and Andrx were entitled to shared exclusivity.

## PROCESS FOR ANALYZING 180 DAY EXCLUSIVITY

FDA's exclusivity determinations involve a number of inquiries made at different decision points. The first decision point generally comes when any ANDA for the drug product is ready for approval. At that point, FDA must determine whether approval of the ANDA must be delayed because an applicant is eligible for 180-day exclusivity. The agency reviews its ANDA records and determines for each listed patent which applicant submitted the first paragraph IV certification to the patent and whether the ANDA currently contains that paragraph IV

180-day exclusivity
Omeprazole Delayed-release Capsules, 40 mg

certification (i.e., the applicant has not changed an original paragraph IV certification to a paragraph III certification or a "section viii" statement).

- If at the time FDA makes this assessment, the ANDA eligible for approval contained the first paragraph IV certification as to each of the listed patents and has maintained those certifications, that applicant is eligible for exclusivity, the ANDA may be approved, and (absent waiver or relinquishment) no other ANDA referencing the listed drug may be approved until any applicable exclusivity has expired.

- If another ANDA applicant filed the first paragraph IV certification to any of the listed patents and has maintained that certification, approval of the ANDA otherwise ready for final approval must be delayed. If approval must be delayed, FDA will issue a tentative approval letter.

- If at the time FDA makes its assessment, the ANDA ready for approval contains the first paragraph IV certification to one or more patents, and other ANDAs contain the first paragraph IV certification to other patents (and all such certifications have all been maintained), the agency will assess - as described below - whether the shared exclusivity approach should be applied.

Following that initial determination, each time another ANDA for the drug product is eligible for an approval action, FDA will analyze whether it must issue a tentative approval for the ANDA or whether it may approve the application. Other changes in the status of an ANDA or a listed patent may result in an additional review of an exclusivity determination (e.g., a patent expires).

When the agency does an exclusivity review, it determines (1) what patents are relevant to the exclusivity analysis, and (2) which applicant submitted the first effective paragraph IV certification for that patent. To determine what patents are relevant, the agency identifies which patents were submitted by the NDA holder. FDA will exclude from consideration patents that have already expired, and patents as to which no paragraph IV certification remains in an ANDA (i.e., all applications containing paragraph IV certifications have changed or withdrawn their paragraph IV certifications). FDA will also exclude patents as to which any exclusivity has already been triggered by a court decision and expired.

Once the patents relevant to an exclusivity determination have been identified, FDA will determine which applicant submitted the first effective paragraph IV certification for each patent (and whether that paragraph IV certification continues to be appropriate and remains in the ANDA). For exclusivity determinations made after January 28, 2003 (the date FDA formulated what became known as the *Purepac* rule), the agency considers the date notice was sent in assessing when paragraph IV certifications submitted in amendments were effective.

3

180-day exclusivity
Omeprazole Delayed-release Capsules, 40 mg

If a single applicant submitted the first effective paragraph IV certification to each relevant patent, that applicant's eligibility for 180-day exclusivity will remain a barrier to approval of those ANDAs containing later paragraph IV certifications until either the exclusivity is triggered and expires, or until the relevant patents expire.

When different applicants were first to submit effective paragraph IV certifications to different patents, the prospect arises of mutually blocking exclusivities and the application of the shared exclusivity approach (described, for example, in FDA's letters of November 16, 2001 (omeprazole); February 4, 2003 (calcitriol); July 30, 2003 (paroxetine); April 6, 2004 (ribavirin)). Because, as we described in our November 16, 2001 letter, FDA does not believe it is appropriate to deviate from the patent-by-patent approach unless necessary to avoid mutually blocking exclusivity, FDA will make a determination regarding the applicability of shared exclusivity only when one of the applicants eligible for exclusivity as to at least one of the patents holds an ANDA that is ready for final approval and that approval is blocked only by another applicant's eligibility for exclusivity as to a different patent.

## 180-DAY EXCLUSIVITY FOR OMEPRAZOLE 40 MG

On November 16, 2001, FDA granted final approval to Andrx's ANDA for 40 mg omeprazole and notified the sponsor that it was eligible for 180-day exclusivity for that drug product. At that time, Andrx was considered to have been first to submit paragraph IV certifications to the '505, '230, '499, '380, '103, '213, and '148 patents.

On October 30, 2002, both Andrx and Reddy were found to infringe the '505 and '230 patents. On that date, the district court directed that the effective date of the approval of their ANDAs "shall not be earlier than" October 20, 2007, the expiration date of those patents and their pediatric exclusivity. The finding of infringement was affirmed by the Federal Circuit on December 11, 2003. *See In re Omeprazole Patent Litig.*, No. 03-1101, 2003 U.S. App. LEXIS 24899 (Fed. Cir. Dec. 11, 2003) (unpublished decision). As a result of the district court's decision, Andrx was no longer entitled to "final" approval status and Reddy was not eligible for final approval. Although FDA did not formally change the status of Andrx's ANDA approval from final to tentative until February 1, 2005, the basis for the change in approval status was the October 30, 2002 order. *See Mylan Laboratories v. Thompson*, 389 F.3d 1272, 1281-82 (D.C. Cir. 2004).

### Shared Exclusivity Would Not Be Applied After October 30, 2002

Because final approvals for both Andrx's and Reddy's ANDAs were, as of October 30, 2002, blocked until October 2007 by the court's order in the '505 and '230 patent litigation, after October 30, 2002, neither Andrx nor Reddy was blocked only by the other's exclusivity, and thus they could not be eligible for shared exclusivity.

4

180-day exclusivity
Omeprazole Delayed-release Capsules, 40 mg

Based on the current status of the patents for the listed drug, shared exclusivity will not apply to this product. Apotex claims that Reddy was eligible for exclusivity for the '499, '505, and '230 patents. Even if that were true at some earlier time, any eligibility for exclusivity as to these patents will have been extinguished by October 20, 2007, the first date on which approval of the ANDAs would no longer be blocked by the district court's October 30, 2002 decision finding infringement. First, any exclusivity for the '499 patent was triggered on November 30, 2002 (as a result of the non-appealable district court decision of non-infringement October 30, 2002), and has expired. Second, the '505 and '230 patents and applicable pediatric exclusivity will expire on October 20, 2007. Once these patents expire they may not serve as the basis for 180-day exclusivity, because FDA interprets the statute to award 180-day exclusivity only with respect to paragraph IV certifications to unexpired patents. *Dr. Reddy's Labs. v. Thompson*, 302 F. Supp. 2d 340, 354 (D.N.J. 2003).

In addition, as to the '505 and '230 patents, Reddy was required to change its certification from a paragraph IV to a paragraph III upon the Federal Circuit's affirmance of Reddy's infringement on December 11, 2003, and Reddy's eligibility for exclusivity ceased as of that date. Andrx has maintained its paragraph IV certifications because, although the Federal Circuit affirmed Andrx's infringement in *In re Omeprazole Patent Litig.*, Andrx has continued to pursue its claims of unenforceability. Even if Andrx were to prevail on its claims (and receive final approval before the patents expire), there is no possibility that shared exclusivity would apply because the Reddy ANDA no longer has effective paragraph IV certifications to the '505 and '230 patents and thus could not be eligible for any 180-day exclusivity as to those patents.

We note also that even if immediately after FDA developed the *Purepac* rule on January 28, 2003, the agency had reviewed the exclusivity for omeprazole 40 mg, the agency would not have applied shared exclusivity; at that time approval of both the Andrx and Reddy applications was blocked, not by any exclusivity, but by the court's October 30, 2002 finding of infringement.

In sum, the October 30, 2002 finding of infringement meant that Andrx was no longer entitled to final approval status. That same event also meant that there could be no award of shared exclusivity.

### Before October 30, 2002, FDA Had No Cause to Reevaluate Exclusivity and the *Purepac* Rule Did Not Apply

Apotex contends that the agency's conversion of Andrx's approval status on February 1, 2005 (which was based on the court's decision), should cause the agency to reassess the facts in light of the changed law and circumstances. Any such reanalysis, however, at this time or at any time after October 30, 2002, also would lead to the conclusion that Andrx was entitled to sole exclusivity.

5

180-day exclusivity
Omeprazole Delayed-release Capsules, 40 mg

FDA has determined that before the October 30, 2002 findings of infringement, there was no point at which shared exclusivity would have been awarded. After FDA granted final approval to Andrx's ANDA on November 16, 2001, Reddy challenged that determination on several grounds. FDA determined, among other things, that Reddy was not entitled to exclusivity based on its first certification to the '431 patent because the patent had expired before either ANDA was ready for final approval, and thus there was never a blocking exclusivity situation. FDA also found that Reddy's ANDA had not been ready for final approval for reasons other than any blocking exclusivities. On March 28, 2002, FDA affirmed that Andrx was entitled to sole exclusivity. Reddy did not raise and FDA did not consider the arguments that led to the development of what has become known as the "*Purepac*" rule. The federal district court in New Jersey rejected Reddy's challenges and upheld FDA's determination. *Dr. Reddy's Labs., Inc. v. Thompson*, 302 F. Supp. 2d 340 (D.N.J. 2003).

Between its March 28, 2002 administrative decision affirming Andrx's eligibility for sole exclusivity and the October 30, 2002 district court decision finding that the Andrx and Reddy products infringe the '505 and '230 patents, FDA had no reason to reexamine its exclusivity determination. Apotex has not suggested any event, other than the October 30, 2002 infringement finding and Andrx's resulting loss of final approval status, that would have caused FDA to conduct such a reexamination.

In addition, the entire March 28, 2002 to October 30, 2002 period predated FDA's articulation of the *Purepac* rule on January 28, 2003. Apotex seems to be suggesting that FDA should revisit its exclusivity determination for omeprazole 40 mg as if it were making its decision on some date before October 30, 2002 and apply the *Purepac* rule, which did not exist at the time. FDA has applied the *Purepac* rule to exclusivity determinations made after the January 28, 2003 decision, even if the certifications and notice that serve as the basis for the exclusivity were submitted to FDA before January 28, 2003. However, FDA has not revisited exclusivity determinations made before January 28, 2003 (*i.e.,* before the *Purepac* rule) to apply the *Purepac* rule, and it has certainly not done so under the fiction that it was making such a determination in the past without regard to the current status of the ANDA (including whether such application is approvable, and the status of the patent certifications).

Even if FDA were to revisit the omeprazole 40 mg exclusivity determination, there is no basis for applying the *Purepac* rule as if FDA were making the decision before the October 30, 2002 infringement finding. FDA makes exclusivity determinations based upon the circumstances as they exist at the time of the decision. *See Dr. Reddy's*, 302 F. Supp. 2d at 353 (granting deference to FDA's decision to look at the status of the paragraph IV certifications at the time of making the exclusivity determination). There has not been a time since FDA's articulation of the *Purepac* rule in which there were blocking exclusivities for omeprazole 40 mg that would have triggered FDA's application of the shared exclusivity policy. Thus, there is no scenario that would lead to the application of shared exclusivity in this case.

6

180-day exclusivity
Omeprazole Delayed-release Capsules, 40 mg

## CONCLUSION

Apotex has suggested that FDA should review its exclusivity determination for omeprazole 40 in light of the change in the approval status of Andrx's ANDA from final to tentative. FDA has considered Apotex's shared exclusivity argument and the record in this matter. We have concluded that there have never been blocking exclusivities for these drug products that would justify applying the shared exclusivity policy at a time that FDA would have revisited its exclusivity determination and applied the *Purepac* rule.