# TAB B

**50338  Federal Register / Vol. 59, No. 190 / Monday, October 3, 1994 / Rules and Regulations**

# DEPARTMENT OF HEALTH AND HUMAN SERVICES

## Food and Drug Administration

### 21 CFR Part 314

[Docket No. 85N-0214]

RIN 0905-AB63

### Abbreviated New Drug Application Regulations; Patent and Exclusivity Provisions

**AGENCY:** Food and Drug Administration, HHS.

**ACTION:** Final rule.

**SUMMARY:** The Food and Drug Administration (FDA) is issuing regulations on certain requirements governing the submission, review, and approval of abbreviated new drug applications (ANDA's). Specifically, these new regulations pertain to patent issues, certification and notice of certification of invalidity or noninfringement of a patent by ANDA applicants, effective date of approval of an application under the Federal Food, Drug, and Cosmetic Act (the act), and new drug product exclusivity. These regulations are intended to complete FDA's implementation of Title I of the Drug Price Competition and Patent Term Restoration Act of 1984.

**EFFECTIVE DATE:** November 2, 1994.

**FOR FURTHER INFORMATION CONTACT:** Sharon M. Sheehan, Center for Drug Evaluation and Research (HFD-600), Food and Drug Administration, 7500 Standish Pl., Rockville, MD 20855, 301-594-0340.

**SUPPLEMENTARY INFORMATION:**

## I. Background

On September 24, 1984, the Drug Price Competition and Patent Term Restoration Act of 1984 (Pub. L. 98-417) (the 1984 amendments) was enacted. The law consisted of two different titles. Title I authorized the approval of duplicate versions of approved drug products (other than those reviewed and approved under section 507 of the act (21 U.S.C. 357)) under an ANDA procedure. Title II authorized the extension of patent terms for approved new drug products (including antibiotics and biological drug products), some medical devices, food additives, and color additives. Congress intended these provisions to provide a careful balance between promoting competition among brand-name and duplicate or "generic" drugs and encouraging research and innovation.

Title I also amended section 505 of the act (21 U.S.C. 355) by requiring all New Drug Application (NDA) applicants and holders to provide certain patent information, requiring ANDA applicants to certify as to the status of patents claiming the drug product they intend to copy, providing for the submission and approval of applications for which the investigations relied on by the applicant to satisfy the "full reports" of safety and effectiveness requirements were not conducted by the applicant or for which the applicant had not obtained a right of reference or use from the person who conducted the investigations, establishing rules for disclosure of safety and effectiveness data submitted as part of an NDA, and providing specific time periods during which an NDA or an ANDA cannot be submitted or approved. The 1984 amendments also required FDA to promulgate new regulations implementing the statute. In the **Federal Register** of July 10, 1989 (54 FR 28872), FDA published a proposed rule on Title I. In the **Federal Register** of April 28, 1992 (57 FR 17950), FDA published a final rule on some aspects of Title I, such as ANDA content and format, approval and nonapproval of an application, and suitability petitions. In that final rule, FDA stated that it was still examining issues concerning patents and market exclusivity, and would issue a final rule once it had completed its deliberations. This document now finalizes those provisions.

In the **Federal Register** of March 7, 1988 (53 FR 7298), FDA published a final rule implementing Title II. That rule is codified at 21 CFR part 60.

## II. Highlights of the Final Rule

### A. Patent Information, Certification, and Notice of Certification to Patent Owner and Certain Application Holders

The statute prohibits the agency from making effective the approval of an ANDA or an application described by section 505(b)(2) of the act (referred to as a 505(b)(2) application) before all relevant product and use patents for the listed drug (a drug product listed in an approved drug product list published by the agency) have expired, except where the generic applicant asserts either that its product will not infringe the patent or that the patent is invalid. In the latter case, approval of the ANDA or the 505(b)(2) application may not be made effective until the patent owner and the NDA holder have been notified and have had an opportunity to litigate the issue of patent infringement or validity. To facilitate the patent protection provisions, the statute requires that applications submitted under section 505(b) of the act include the patent number and expiration date of all relevant patents that claim the drug (including product and formulation patents) in the application or use patents that claim a method of using the drug. The agency publishes this patent information in its approved drug product list ("Approved Drug Products With Therapeutic Equivalence Evaluations," also known as the "Orange Book") for each listed drug for which patent information has been submitted.

A generic drug applicant submitting an ANDA that refers to a listed drug must include a certification as to the status of all patents applicable to the listed drug. Similarly, an applicant submitting a 505(b)(2) application must make certifications with respect to patents claiming any listed drug or claiming a use for such listed drug. If a generic applicant certifies that a relevant patent expires on a specified date, the effective date of approval of the ANDA or 505(b)(2) application will be delayed until the expiration of the patent. Thus, for example, if the patent expired on January 1, 1995, the effective date of approval of the ANDA or 505(b)(2) application would be January 1, 1995. The agency regards drug products with delayed effective dates as having tentative approvals; it does not consider the approval to be final until the effective date and the issuance of a final approval letter (see 57 FR 17950 at 17956). When a generic applicant certifies that any product or use patent is invalid or will not be infringed, the applicant must give notice of such certification to the patent owner and appropriate approved application holder for the listed drug. The generic applicant must include in the notice the factual and legal basis for the applicant's opinion that the patent is invalid or will not be infringed. Finally, a patent owner has 45 days from receipt of the notice of certification to file suit against the generic applicant to defend the patent. If the patent owner files suit within 45 days, the effective date of approval of the ANDA or 505(b)(2) application may be delayed up to 30 months pending resolution of the lawsuit.

The final rule describes: (1) The requirements for the submission of patent information by an NDA holder or applicant, (2) the patent certification requirements applicable to generic applicants, and (3) the content of a patent certification notice. The final rule also specifies: (1) When and to whom the notice is to be sent, and (2) the effec of each type of patent certification on

applications do not contain a valid certification at the time of the submission would be required to submit a certification as to that patent. The agency, therefore, declines to revise this provision.

FDA also notes that, if an ANDA applicant with a pending application voluntarily makes a patent certification for an untimely filed patent, the ANDA applicant may withdraw the patent certification for the untimely filed patent. The agency, on its own initiative, has amended § 314.94(a)(12)(viii) to make this clear. Additionally, if the patent certification for the untimely filed patent was a paragraph IV certification (claiming that the patent is invalid or would not be infringed), the agency would not consider the withdrawn paragraph IV certification to preclude FDA from granting 180-day exclusivity to another ANDA applicant.

49. Proposed § 314.94(a)(12)(vii) would permit an ANDA applicant to seek confirmation of the correctness of patent information, but would also require an ANDA applicant to submit the appropriate patent certification if the disputed patent information was not amended or withdrawn. One comment suggested amending proposed § 314.94(a)(12)(vii) to declare the end of the error correction process for patent information to be final agency action. The comment explained that this section permits challenges to listed patents but, in conjunction with proposed § 314.53(f), neglects to contain a process to require patent owners to withdraw or modify patent listings. The comment said that declaring the end of the error correction process to be final agency action would enable ANDA applicants to seek judicial review rather than wait for the patent owner to voluntarily correct the patent information.

FDA disagrees with the comment. Disputes between ANDA applicants and patent holders regarding the validity or correctness of the listed patent information must be resolved among the ANDA applicants and the patent holders rather than by agency action. FDA stated this position in the preamble to the proposed rule (see 54 FR 28872 at 28910).

50. One comment addressed proposed § 314.94(a)(12)(viii) and asked FDA to permit applicants to amend their patent certifications if a patent is declared invalid. The comment proposed that any amendment, with the exception of a paragraph IV certification being changed to a paragraph III certification, be considered nunc pro tunc (now for then). If a patent were declared invalid, the comment suggested that an amendment from paragraph IV to paragraph III be considered "as if a III were originally filed, subject to a prior IV certificant's exclusivity rights during the remaining lifetime of the patent." Finally, the comment said that applicants should be permitted to make a paragraph I certification if the patent were removed from the list.

FDA agrees in part with the comment. An applicant may change its certification at any time. Although there is no need for the agency to pronounce such changes in certification nunc pro tunc, the agency agrees that the protection offered by 180-day exclusivity should not be undermined by changes from paragraph IV certification or by the filing of original certifications other than paragraph IV certifications. If a patent were removed from the list immediately upon a court decision that the patent is invalid or unenforceable, an applicant with a subsequently filed application might seek to certify that there is no relevant patent and seek an immediately effective approval. To ensure that this does not occur, the agency has required that a patent remain on the list after being declared invalid or unenforceable until the end of any applicable 180-day exclusivity period. This means that a patent is deemed to be relevant under § 314.94(a)(12)(ii) until the end of the term of the patent or applicable 180-day exclusivity period, whichever occurs first. Thus, where there is a patent that has been challenged by a paragraph IV applicant, a subsequent applicant will not be able to file a certification that there is no relevant patent or seek an immediately effective approval until either the patent or the 180-day exclusivity period expires. The agency has amended § 314.94(a)(12)(viii)(B) and made a similar change to § 314.50(i)(6)(ii) to reflect this position.

The agency also notes that an applicant may withdraw its patent certification at any time. However, as stated earlier, if an ANDA applicant made a paragraph IV certification and later withdraws that certification, the agency will not regard the withdrawn paragraph IV certification as precluding the agency from granting 180-day exclusivity to a subsequent ANDA applicant.

51. One comment suggested that ANDA applicants amend their patent certifications to a paragraph I certification if FDA or the NDA holder "delists" a patent.

As stated in the preamble to the proposed rule, the agency believes that a certification under § 314.94(a)(12)(ii), stating that no relevant patents claim the listed drug, would be more appropriate if a patent is "delisted" (see 54 FR 28872 at 28886).

52. One comment asked FDA to clarify proposed § 314.94(a)(12)(viii)(A) so that an amended patent certification would be required if a patent were held valid and infringed but not required if a patent were held infringed, but not valid.

If a claim is found to be invalid or unenforceable, the patent will ordinarily be removed from the list, and applicants with pending applications containing certifications with respect to that patent must amend their certifications accordingly to certify that no relevant patents claim the drug or, if another relevant patent claims the drug, to make an appropriate certification regarding that patent. In the amendment, the applicant must state the reason for the change in certification (that the patent has been removed from the list). A patent that is the subject of a lawsuit under § 314.107(c) will not be removed from the list until FDA determines either that no delay in effective dates of approval is required as a result of the lawsuit or that any such period of delay in effective dates of approval is ended. The agency has amended § 314.94(a)(12)(viii)(B) to clarify its position regarding certifications and patents removed from the list.

The agency also advises applicants to submit any patent certification changes by letter if the applicant has not received a "not approvable" letter from the agency. If the applicant has received a "not approvable" letter, it may include the amended certification along with the complete response to the deficiencies in the "not approvable" letter. This will enable FDA to process amendments more efficiently.

53. Six comments addressed amended certifications under proposed § 314.94(a)(12)(viii)(C)(2) which would not require applicants to amend their patent certifications when patent information is submitted after the abbreviated application's approval "whether or not the approval of the abbreviated application is effective." One comment would require amended patent certifications only if a new patent issued after the ANDA had been submitted and make supplements optional after ANDA approval. Five comments would require ANDA applicants to amend patent certifications until the effective date of their ANDA approvals because the existence of a patent would affect the ANDA's effective date of approval.

In the **Federal Register** of April 28, 1992 (57 FR 17950 at 17953), FDA stated that it had clarified its policies