UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RANBAXY LABORATORIES LIMITED, RANBAXY INC., and RANBAXY PHARMACEUTICALS, INC., <br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL O. LEAVITT SECRETARY OF HEALTH AND HUMAN SERVICES, DEPARTMENT OF HEALTH AND HUMAN SERVICES, ANDREW C. VON ESCHENBACH, ACTING COMMISSIONER OF FOOD AND DRUGS, and FOOD AND DRUG ADMINISTRATION,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 05-CV-01838 (RWR) |

## DECLARATION OF JAYADEEP R. DESHMUKH

I, Jayadeep R. Deshmukh, declare as follows:

1. I am the Vice President - Intellectual Property for Ranbaxy Laboratories Limited. Ranbaxy Laboratories Limited is a publicly traded company engaged in the development, manufacturing and marketing of pharmaceuticals in the United States and worldwide. Ranbaxy Pharmaceuticals, Inc. is a wholly owned subsidiary of Ranbaxy Inc., which is ultimately a wholly owned subsidiary of Ranbaxy Laboratories Limited. Ranbaxy Inc. is the agent of Ranbaxy Laboratories Limited in the United States. Ranbaxy Laboratories Limited has dealt and continues to deal with the United States Food and Drug Administration ("FDA") through Ranbaxy Inc. and Ranbaxy Pharmaceuticals, Inc.

2.  As the Vice President - Intellectual Property for Ranbaxy Laboratories Limited, I am responsible for all intellectual property and regulatory legal aspects of Ranbaxy Laboratories Limited's pharmaceutical business in the United States and in the rest of the world. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in particular. This document is based on my personal knowledge and records retained by Ranbaxy in the ordinary course of business.

3.  I obtained a B.S. in Chemical Engineering in 1984 from Manipal Institute of Technology in India; an M.S. in Chemical Engineering in 1989 from Cleveland State University; and a J.D. in 1992 from Case Western Reserve University. I joined Ranbaxy Laboratories Limited in 1998. I was a patent attorney at Frost and Jacobs during 1992-1994 and Dinsmore & Shohl LLP during 1994-1998.

4.  Ranbaxy Laboratories Limited manufactures and markets generic and branded generic pharmaceuticals, and active pharmaceutical ingredients. The company also is engaged in research and development of several novel drugs.

5.  Ranbaxy believes it was the first applicant to submit an ANDA with a paragraph IV certification to U.S. Patent No. RE 36,481 ("the '481 patent"), and U.S. Patent No. RE 36,520 ("the '520 patent") for simvastatin 80 mg (Zocor). As the first to submit a substantially complete ANDA for the 80 mg strength with a paragraph IV certification to the '481 and '520 patents, Ranbaxy would be entitled to 180 days of marketing exclusivity for the 80 mg strength of simvastatin which would begin after final approval by FDA. The legal basis for its entitlement is described more fully in its pending motion for summary judgment.

Need for Prompt Resolution

6.  Before Ranbaxy can bring its 80 mg simvastatin to market, it will need to invest in the

production of 80 mg simvastatin tablets. The amount of inventory that Ranbaxy will need will vary considerably depending on whether FDA will recognize its right to 180-day exclusivity or not. In order to launch in June 2006, when final approval is expected, and fully satisfy demand, Ranbaxy will need to ascertain its production needs five months in advance, that is, by mid-January 2006. Drug tablets have limited shelf lives. If Ranbaxy produces the tablets necessary to satisfy demand assuming that it will receive exclusivity, but does not obtain it, the excess inventory will need to be discarded at a substantial cost to the company.

7. Ranbaxy will be seriously and irreparably harmed from delayed resolution of its challenge to FDA.

8. Ranbaxy invested considerable money and resources to ensure that it was the first to file an ANDA with a paragraph IV certification to the '481 and '520 patents for simvastatin 80 mg. If Ranbaxy does not receive 180-day exclusivity for Zocor, then it will not be able to offset these costs that it has assumed through anticipated revenues from marketing during exclusivity.

9. According to Merck's 2004 Annual Report, sales of Zocor internationally in 2004 were $5.2 billion. Based on my knowledge of the market for simvastatin, Ranbaxy expects that, if FDA recognizes its right to exclusivity, Ranbaxy will be able to sell more than two to three times the number of simvastatin 80 mg tablets during the first year than it would absent exclusivity. To serve that demand, Ranbaxy will need to invest in considerable inventory.

10. The benefits of 180-day exclusivity are substantial. If FDA were to approve other ANDAs for simvastatin 80 mg following expiration of United States Patent No. 4,444,784, or if uncertainty over the outcome left Ranbaxy unable to anticipate the demand for its drug product, Ranbaxy would be deprived of millions in projected profits over the first six months of marketing, despite the millions of dollars in development costs.

11. It is also well known in the pharmaceutical industry that there are other substantial advantages in being able to market a drug product before your competition. First is the advantage of being a source of generic product for some period and thereby capturing market share that would otherwise be shared. In addition, during the period of exclusivity, one is able to cement relationships with customers in order to maintain market share even after other competitors enter the market. The opportunity to engender customer goodwill benefits not only the specific product, but also results in increasing sales across all of the manufacturer's product lines. All this would be entirely unrecoverable if FDA's decision were not reversed sufficiently before the triggering of the exclusivity period to allow Ranbaxy the opportunity to market its simvastatin drug.

12. Should this case not be decided in sufficient time to prepare for the launch date prior to approval, Ranbaxy will be harmed by its inability to anticipate the demand for its drug. If Ranbaxy does not acquire sufficient inventory to satisfy the demand in the event its exclusivity is upheld, it will effectively lose the benefit of its exclusivity because of its inability to supply sufficient drug product to its customers. On the other hand, if it acquires sufficient inventory to satisfy the demand expected during its exclusivity but the court upholds FDA's position, Ranbaxy will be harmed by the losses attributed to acquiring excessive inventory.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 7th day of December 2005.

Jayadeep R. Deshmukh

4