UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

RANBAXY LABORATORIES LIMITED,  )
RANBAXY INC., and              )
RANBAXY PHARMACEUTICALS, INC., )
                               )
    Plaintiffs,                )
                               )
    v.                         )
                               )
MICHAEL O. LEAVITT             )
SECRETARY OF HEALTH AND HUMAN  )
SERVICES,                      )    CIVIL NO. 05-CV-01838 (RWR)
DEPARTMENT OF HEALTH AND       )
HUMAN SERVICES,                )
ANDREW C. VON ESCHENBACH,      )
ACTING COMMISSIONER OF         )
FOOD AND DRUGS,                )
    and                        )
FOOD AND DRUG ADMINISTRATION,  )
                               )
    Defendants.                )

RANBAXY'S MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND IN REPLY TO FEDERAL DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

Of Counsel:

Jayadeep R. Deshmukh
Vice President – Intellectual Property
William D. Hare
Senior Counsel – Intellectual Property
Ranbaxy Laboratories Ltd
600 College Road East
Princeton, NJ 08540

William B. Schultz
Carlos T. Angulo
Zuckerman Spaeder LLP
1800 M St., NW, Ste. 1000
Washington, DC 20036

Dated:  December 12, 2005

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314
William A. Garvin
D.C. Bar No. 486467

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Ranbaxy Laboratories
Limited, Ranbaxy Inc, and
Ranbaxy Pharmaceuticals, Inc.

## TABLE OF CONTENTS

I.   The Relevant Statutory Language, Ignored by FDA, Requires the Agency to Recognize Ranbaxy's Exclusivity ................................................................................................. 2

   A.  Neither the Plain Language of the Statute Nor the Intent of the Statute Support a Distinction Based on Litigation ................................................................................ 2

   B.  Neither The Plain Language of Statute Nor The Statute's Purpose Allow Nullification of 180-day Exclusivity Based on Patent Withdrawal ................................................... 7

   C.  The Court May Use Subsequent Legislation to Aid in Ascertaining Congressional Intent ...................................................................................................................... 9

II.  The Portion of FDA's Regulation Conditioning Exclusivity on Litigation Is Invalid .. 10

III. FDA's Interpretation is Not Reasonable and Not Entitled to Deference ...................... 16

   A.  FDA Is Not Entitled to Deference ............................................................................ 16

   B.  The Agency's Interpretation Is Not Reasonable ...................................................... 19

      1.  FDA's Distinction Between Litigation and Non-Litigation Situations Is Not Reasonable ......................................................................................................... 19

      2.  FDA's Argument That 180-Day Exclusivity Is a Barrier to Competition Is Not Reasonable ......................................................................................................... 22

      3.  FDA's Argument That Its Approach Does Not Undermine the Incentives to Challenge Patents Is Unreasonable .................................................................... 24

      4.  FDA's Approach Is Not Reasonable Because It Places Control Over Exclusivity in the Hands of the Patent Holder ....................................................................... 25

   CONCLUSION ............................................................................................................. 28

## TABLE OF AUTHORITIES

**Cases**

Air Transport Ass'n v. Fed. Aviation Admin., 291 F.3d 49 (D.C. Cir. 2002).............................. 15

Alaska Professional Hunters Ass'n v. Fed. Aviation Admin., 177 F.3d 1030 (D.C. Cir. 1999).. 15

American Hosp. Ass'n v. Sullivan, No. 88-2027, 1990 U.S. Dist. LEXIS 6306, at *35 (D.D.C. 1990) ............................................................................................................................................ 7

Asarco, Inc. v. EPA, 616 F.2d 1153 (9th Cir. 1980) ................................................................... 24

Barnhardt v. Walton, 535 U.S. 212 (2002) ................................................................................. 17

Barr Labs. Inc., 930 F.2d 72 (D.C. Cir. 1991) ........................................................................... 19

Barron Coop. Creamery v. Wickard, 140 F.2d 485 (7th Cir. 1944) ........................................... 14

Belco Petroleum Corp'n v. Fed. Energy Reg. Comm'n, 598 F.2d 680 (D.C. Cir. 1978)............. 14

Bracco Diagnostics v. Shalala, 963 F. Supp. 20 (D.D.C. 1997) ................................................ 20

Bunker Hill Co. v. EPA, 572 F.2d 1286 (9th Cir. 1977) ............................................................ 24

Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) .................... 17, 18

Dr. Reddy's Labs. Inc. v. Thompson, 302 F. Supp. 2d 340 (D.N.J. 2003)......................... 13, 16

El Rio Santa Cruz Neighborhood Health Center v. HHS, 300 F. Supp. 2d, 42 (D.D.C. 2004) aff'd, 396 F. 3d 1265 (D.C. Cir. 2005) ................................................................................... 20

FDA v. Brown & Williamson, 529 U.S. 120 (2000) .............................................................. 10, 11

FTC v. Ken Roberts Co., 276 F.3d 583 (D.C. Cir. 2001).............................................................. 9

General Dynamics Land Sys. v. Cline, 540 U.S. 581 (2004) ...................................................... 18

Granutec Inc. v. Shalala, No. 97-1873, 1998 U.S. App. LEXIS 6685, at *21 (4th Cir. 1998)..... 18

Health Ins. Ass'n of Am. v. Shalala, 23 F.3d 412 (D.C. Cir. 1994) .......................................... 18

Int'l Bhd. of Teamsters v. United States, 431 U.S. 324 (1997) ................................................. 10

Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523 (D.D.C. 1989), appeal dismissed, 43 F.3d 712 (D.C. Cir. 1989) ................................................................................................. 18, 26

Martini v. Fannie Mae, 178 F.3d 1336 (D.C. Cir. 1999) ........................................................... 17

* Mova Pharm. Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998) .............................................
............................................................................ 2, 3, 4, 5, 6, 7, 11, 13, 14, 18, 22, 26

Mylan Pharms., Inc. v. Henney, 94 F. Supp. 2d 36 (D.D.C. 2000), vacated as moot, 276 F.3d 627 (D.C. Cir. 2002) ................................................................................................................... 13

Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30 (D.D.C. 2000)........................................... 2, 3

Nat'l Family Planning v. Sullivan, 979 F.2d 227 (D.C. Cir. 1992) ...................................... 14, 16

Northpoint Tech Ltd., v. FCC, 412 F.3d 145 (D.C. Cir. 2005) ............................................. 17, 18

Paralyzed Veterans of America v. D.C. Arena, 117 F.3d 579 (D.C. Cir. 1997).......................... 15

Purepac Pharm. Co. v. Thompson, 238 F. Supp. 2d 191 (D.D.C. 2002) aff'd 354 F.3d 877 ...........
........................................................................................................................................ 17, 23, 26

Ruckelshaus v. Monsanto, 467 U.S. 986 (1984) ........................................................................... 9

Shalala v. Guernsey Mem. Hosp., 514 U.S. 87 (1994)............................................................... 16

Shepherd v. Merit Systems Protection Bd., 652 F.2d 1040 (D.C. Cir. 1981)............................ 13

Sierra Club v. EPA, 356 F.3d 296 (D.C. Cir. 2004) ..................................................................... 7

Skidmore v. Swift & Co., 323 U.S. 134 (1944)........................................................................... 18

Syncor Int'l Corp. v. Shalala, 127 F.3d 90 (D.C. Cir. 1997) ..................................................... 15

Teva Pharm., USA, Inc. v. FDA, 182 F.3d 1003 (D.C. Cir. 1999) ............................................ 20

Torpharm, Inc. v. FDA, No. 03-2401, 2004 U.S. Dist. LEXIS 524 (D.D.C. 2004) ................... 22

Two Pesos, Inc. v. Taco Cabana, 505 U.S. 763 n.17 (1992) ........................................................ 9

United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365 (1988) ... 8

Weinberger v. Hynson, Westcott & Dunning, Inc., 412 U.S. 609 (1973) ..................................... 9

**Statutes**

21 U.S.C. § 355(b)(1) ........................................................................................................ 5, 7
21 U.S.C. § 355(c)(2) ............................................................................................................. 7
21 U.S.C. § 355(j)(5)(B)(iv) ......................................................................................... 3, 4, 5, 8
21 U.S.C. § 355(j)(5)(D)(i)(I)(bb)(CC) ................................................................................... 9

**Other Authorities**

149 Cong. Rec. S. 15,882, (2003) ......................................................................................... 10
H.R. Conf. Rep. No. 108 (2003) ........................................................................................... 10

**Regulations**

21 C.F.R. § 314.107(c) (1995) ............................................................................................. 11
21 C.F.R. § 314.94(a)(12)(viii)(B) ..................................................... 6, 10, 11, 12, 13, 14
54 Fed. Reg. 28,872, (July 10, 1989) ................................................................................... 12
59 Fed. Reg. 50,338 (Oct. 3, 1994) ........................................................................... 4, 12, 13

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RANBAXY LABORATORIES LIMITED,<br>RANBAXY INC., and<br>RANBAXY PHARMACEUTICALS, INC.,<br><br>    Plaintiffs,<br><br>    v.<br><br>MICHAEL O. LEAVITT<br>SECRETARY OF HEALTH AND HUMAN<br>SERVICES,<br>DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES,<br>ANDREW C. VON ESCHENBACH,<br>ACTING COMMISSIONER OF<br>FOOD AND DRUGS,<br>    and<br>FOOD AND DRUG ADMINISTRATION,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    CIVIL NO. 05-CV-01838 (RWR)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

RANBAXY'S MEMORANDUM IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND IN REPLY TO FEDERAL DEFENDANTS'
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT

As Ranbaxy demonstrated in its original memorandum, Congress did not intend to allow

FDA to condition 180-day exclusivity on a litigation requirement.  The text of the statute, the

structure of the act as a whole and the canons of statutory construction all demonstrate that

Congress did not distinguish among successful paragraph IV challenges based on whether the

Abbreviated New Drug Application ("ANDA") applicant was involved in patent infringement

litigation or not.  Mem. P. & A. Supp. Pl.'s Mot. Summ. J. ("Ranbaxy Mem.") at 15-25.

FDA offers just two arguments in response to Ranbaxy's Motion for Summary Judgment: that FDA's interpretation is reasonable, Defs. Opp. at 20-42,[1] and that its decision is entitled to deference, id. at 17-20. Significantly, FDA refuses to discuss the first and most critical question this Court must resolve; "whether Congress has spoken directly to the disputed issue," Mylan Pharms., Inc. v. Shalala, 81 F. Supp. 2d 30, 37 (D.D.C. 2000), and if so, whether the agency's decision is consistent with the intent of Congress. Regardless of how the agency chooses to argue its case, the Court's duty is to "exhaust the traditional tools of statutory construction" to determine whether Congress has spoken directly to the disputed issue. Mylan Pharms., 81 F. Supp. 2d at 37 (quoting Southern Cal. Edison Co. v. FERC, 195 F.3d 17, 22 (D.C. Cir. 1999)).

I.   The Relevant Statutory Language, Ignored by FDA, Requires the Agency to Recognize Ranbaxy's Exclusivity

FDA baldly states that the statute is silent as to patent delisting, and the agency therefore is entitled to fill "the gap between the patent listing and exclusivity provisions." Defs. Opp. at 20. This statement illustrates the fundamental flaw in FDA's analysis. At issue in this case is Ranbaxy's right to exclusivity. The statute is assuredly not silent as to the factors that entitle an ANDA applicant to exclusivity.

A.   Neither the Plain Language of the Statute Nor the Intent of the Statute Support a Distinction Based on Litigation

Courts facing disputes over an ANDA applicant's right to 180-day exclusivity uniformly begin with an analysis of the language of the statute. See, e.g., Mova Pharm. Corp. v. Shalala,

---

1. Fed. Defs'. Mem. Supp. Mot. Summ. J. and In Opp. Pl.'s Mot. Summ. J. ("Defs. Opp."). The federal defendants filed both a motion for summary judgment and their opposition to Ranbaxy's motion for summary judgment on December 2, 2005. The memorandum supporting federal defendants' motion for summary judgment and their opposition to Ranbaxy's motion for summary judgment are identical. We will refer to this document as "Defs. Opp." throughout this memorandum.

140 F.3d 1060, 1067 (D.C. Cir. 1998); Mylan Pharms., 81 F. Supp. 2d at 37. The text of the

180-day exclusivity provision provides that, if an ANDA contains a paragraph IV certification

and is for a drug for which a "previous ANDA has been submitted [containing a paragraph IV]

certification," the second applicant's ANDA "shall be made effective not earlier than one

hundred and eighty days after- (I)...of the first commercial marketing of the drug..., or (II) the

date of a decision of a court...holding the patent which is the subject of the certification to be

invalid or not infringed, whichever is earlier." 21 U.S.C. § 355(j)(5)(B)(iv) (2002). FDA does

not dispute that Ranbaxy submitted the first ANDA with paragraph IV certification for

simvastatin 80 mg. Thus, there should be no debate that the statute on its face entitles Ranbaxy

to 180-day exclusivity.

    FDA also does not dispute that its interpretation of the statute interpolates a litigation

requirement. Where a patent is withdrawn, the agency awards 180-day exclusivity if the ANDA

applicant has been sued but nullifies 180-day exclusivity where no litigation has ensued.[2] The

statutory provision on 180-day exclusivity, however, does not contain a successful defense or

litigation requirement.

    FDA previously tried to read a litigation requirement into this section of the statute. In its

1994 regulations, it required that, in order to be entitled to exclusivity "the applicant submitting

the first application has successfully defended against a suit for patent infringement brought

within 45 days of the patent owner's receipt of notice . . . . [of a paragraph IV certification,]" a

requirement the D.C. Circuit Court of Appeals referred to as a "successful defense" requirement.

Mova, 140 F.3d at 1065 (quoting 21 C.F.R. § 314.107(c)(1) (1995)). See also Abbreviated New

---

2. Although the agency has sought to distinguish between a litigation requirement and a
successful defense requirement, most often, there should be no difference between the two,
inasmuch as an ANDA applicant that loses its litigation will not get exclusivity.

Drug Application Regulations, Final Rule, 59 Fed. Reg. 50,338, 50,367 (Oct. 3, 1994).  In Mova,

the Court of Appeals for the District of Columbia Circuit rejected FDA's interpretation.

FDA fails to address the import of the text of the exclusivity provision, other than to say

that Mova did not reach the question of whether a litigation requirement, as opposed to a

successful defense requirement, could be read into the statute.[3]  The court's reasoning in Mova,

however, makes clear that FDA's argument rests on a distinction without a difference.  At issue

in Mova was whether FDA could read into the 180-day exclusivity provision requirements that

are not present in the language of the statute, the same question presented here.  Although FDA

argued that the statute was ambiguous, the court concluded that there was no ambiguity in the

words of Section 355(j)(5)(B)(iv), and that "to the extent that the statute is clear about anything,

it clearly forecloses the FDA's successful-defense requirement."  Mova, 140 F.3d at 1069.  The

court went on to explain that a deviation from the statutory language is permitted only if a literal

reading of the statute would thwart Congress' central goal, producing an absurd result.  Even

then, any deviation must go "no further from the statute than is needed to protect Congressional

intent."  Id. at 1068.  Because FDA had deviated further than necessary, the court concluded that

FDA exceeded its statutory authority.  Id. at 1076.

The D.C. Circuit's decision in Mova requires the same outcome in this case.  As in Mova,

there is no ambiguity in the language of Section 355(j)(5)(B)(iv) (2002).  Significantly, rather

than argue that awarding exclusivity to Ranbaxy is contrary to the central goal of the statute or

would produce an absurd result, FDA concedes that it could have adopted the position advocated

by Ranbaxy.  Defs. Opp. at 21.  Because FDA does not and cannot argue that Ranbaxy's position

---

3. FDA ignores the fact that not just this Court and the D.C. Court of Appeals, but also others
have concluded that FDA may not read a litigation requirement into Section 355(j)(5)(B)(iv).  In
its opening brief, Ranbaxy cites several such cases.  Ranbaxy Mem. at 16-17.

leads to absurd results or is not consistent with Congressional intent, under <u>Mova</u>, the agency may not deviate from the 180-day exclusivity provision's literal language.

<u>Mova</u> also explains why the examples of changed circumstances in which an ANDA applicant loses exclusivity are not relevant here. FDA provides three examples of situations in which changed circumstances lead to loss of exclusivity: where an ANDA applicant loses the patent infringement litigation, where the ANDA applicant voluntarily changes its certification from paragraph IV to some other certification, and where the patent expires before the ANDA is approved. Defs. Opp. at 22-23. FDA's first example, retaining exclusivity even though an ANDA applicant has lost its patent infringement lawsuit, is one of the absurd results that led the <u>Mova</u> court to conclude that FDA could interpret the statute to avoid absurd results. FDA's second example, where the ANDA applicant voluntarily changes its certification, would also fall into the absurd results exception. FDA's third example, the situation in which a patent expires before the ANDA is approved, is just as absurd. In that situation, there can be no paragraph IV certification because there is no patent to certify to, that is, there is no "patent which claims the drug . . . and with respect to which a claim of patent infringement could reasonably be asserted." 21 U.S.C. § 355(b)(1).[4] Further, there is no threat of infringement litigation from a patent that

_____

4. The loss of exclusivity when the patent expires is also controlled by the statute itself. The statute directs FDA to approve competitors' ANDAs containing paragraph III certification upon the expiration of the patent. 21 U.S.C. § 355(j)(5)(B)(ii). This is why FDA must treat all patent expirations in the same way. Even FDA does not argue that loss of exclusivity in connection with patent withdrawal is mandated by the statute; that is why it argues that it can treat some patent withdrawals differently from others.

does not exist.[5] Unlike these situations, there is nothing absurd about retaining exclusivity in the case of a withdrawn patent, as FDA has implicitly conceded by doing exactly that where the patent is the subject of litigation, and as FDA has explicitly conceded in this case, Defs. Opp. at 21 ("FDA could have adopted a number of approaches to patent delisting, including the one urged upon this Court by the plaintiffs. . . .").[6]

In any event, none of the circumstances alluded to by FDA is present here: Merck's previously listed patents have not expired; Ranbaxy has not lost any patent litigation; and Ranbaxy has not amended its patent certification. The facts are that U.S. Reissue Patent No. 36,481 ("the '481 patent") and U.S. Reissue Patent No. 36,520 ("the '520 patent") have not expired, that Merck certified that they claim Zocor when it first sought to list them, that Ranbaxy demonstrated that the patents do claim Zocor and therefore should be listed, that there has been no finding that these patents should not be listed either by FDA or a court, and that, even today, Ranbaxy remains at risk of patent infringement litigation from these patents. Whether other ANDAs for other drugs in different factual scenarios may face changed circumstances that affect their eligibility for exclusivity is of no relevance whatsoever in this case.

---

5. In fact, patents that have expired and patents that are withdrawn carry entirely different consequences. For one, a generic applicant knows when a patent will expire and can therefore take expiration into account. Second, no NDA holder can assert any patent rights in an expired patent, but it can enforce delisted patents. Although FDA accurately points out that a "withdrawn patent no longer bars approval of an ANDA," Defs. Opp. at 36, the same is true of a listed patent when the NDA holder does not sue. If the relevant criteria were whether the patent bars approval, then only ANDA applicants that successfully defend a patent suit would be eligible for 180-day exclusivity, the very approach that the D.C. Circuit held unlawful in Mova.

6. FDA argues that it "makes no practical sense" to allow an approved New Drug Application ("NDA") holder to withdraw a patent but leave it in the Orange Book so as to preserve the statutory grant of 180-day exclusivity. Defs. Opp. at 21 n.12. But this is exactly what FDA does if the patent is in litigation. 21 C.F.R. § 314.94(a)(12)(viii)(B). FDA surely must have thought this approach made sense when the agency adopted it as the means for preventing an NDA holder who lost a patent infringement suit from undermining an ANDA applicant's exclusivity by delisting a patent.

Neither <u>Mova</u> nor any other court decision supports FDA's notion that it may restrict the scope and effect of 180-day exclusivity through a back-door process such as removing a patent from FDA's listing, <u>i.e.</u>, the Orange Book, Ranbaxy Mem. at 4. While an applicant may lose its entitlement to 180-day exclusivity due to changed circumstances, such a loss of exclusivity can come only from the statute.

B.  Neither The Plain Language of Statute Nor The Statute's Purpose Allow Nullification of 180-day Exclusivity Based on Patent Withdrawal

Rather than addressing the language of the provision governing 180-day exclusivity, FDA begins its analysis by asserting that the patent filing provisions, 21 U.S.C. § 355(b)(1) and (c)(2), allow NDA holders to request the withdrawal of listed patents. It then argues that, because its regulations require a change in certification when FDA removes a patent from the Orange Book, Ranbaxy's exclusivity has been nullified.

FDA's construct is illogical; its focus on the patent filing provision and agency regulations are nothing but a red herring that distracts from the plain language of the 180-day exclusivity provision. The fact that the statute is silent on delisting and amendment of certifications does not allow FDA to dispense with the provision that is not ambiguous – the 180-day exclusivity provision. The agency's interpretation of any ambiguous provisions, such as the patent listing provision, and the agency's regulations, cannot nullify an unambiguous statutory provision. <u>See</u>, <u>e.g.</u>, <u>Sierra Club v. EPA</u>, 356 F.3d 296, 301-03 (D.C. Cir. 2004); <u>American Hosp. Ass'n v. Sullivan</u>, No. 88-2027, 1990 U.S. Dist. LEXIS 6306, at *35 (D.D.C. 1990) ("Administrative regulations that conflict with the statute are 'arbitrary, capricious, and an abuse of discretion' in violation of Section 706(2)(A) of the Administrative Procedure Act.").

Preserving 180-day exclusivity in the case of a withdrawn patent is necessary to effectuate the Congressional purpose in enacting the 180-day provision. As FDA has

acknowledged both in its response to Ranbaxy's citizen petition, Letter from Steven K. Galson, M.D., M.P.H., Director, Center for Drug Evaluation and Research to Monte R. Browder, Intellectual Property Counsel, IVAX Pharmaceuticals, Inc., et. al. (Oct. 24, 2005) ("Petition Response"), FDA Administrative Record ("AR"), Tab 23 at 6, and again in its brief, "the statute provides an incentive and a reward to generic drug manufacturers that expose themselves to the risk of patent litigation." Defs. Opp. at 8. A generic manufacturer exposes itself to that <u>risk</u> when it files a paragraph IV certification, even if the patent is later withdrawn or no suit is ever filed. In other words, by the time a patent is withdrawn, the generic manufacturer has already fulfilled the purpose the 180-day provision was intended to encourage. Nullifying 180-day exclusivity based upon a patent withdrawal would be contrary to the fundamental purpose of the statutory provision, which is to encourage patent challenges.

Had Congress wanted to tie 180-day exclusivity to whether the patent remains listed, it could easily have done so, by making exclusivity contingent on whether a patent is listed by FDA. It did not do so. The 180-day exclusivity statutory provision does not turn on whether a patent remains listed in the Orange Book; it turns on whether the ANDA contains a paragraph IV certification to a patent that claims the drug. 21 U.S.C. § 355(j)(5)(B)(iv) (2002).

The 180-day statutory provision and the listing provision are easily read to give effect to each. Where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed Congressional intention to the contrary, to regard each as effective. <u>United Savings Ass'n of Texas v. Timbers of Inwood Forest Associates</u>, 484 U.S. 365, 371 (1988) (stating that "[a] provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law."); <u>Ruckelshaus v. Monsanto</u>, 467 U.S. 986, 1018

(1984); <u>FTC v. Ken Roberts Co.</u>, 276 F.3d 583, 593 (D.C. Cir. 2001). As a matter of statutory

construction, the listing provision cannot be interpreted to defeat the express entitlement to

exclusivity. <u>Weinberger v. Hynson, Westcott & Dunning, Inc.</u>, 412 U.S. 609, 631 (1973) (noting

that the Food, Drug, and Cosmetic Act ("FDCA") should not be interpreted so as "to impute

Congress a purpose to paralyze with one hand what it sought to promote with the other.").

      FDA can interpret the patent filing provision to allow patent withdrawal without creating

conflict with the 180-day exclusivity provision. In fact, that is exactly what the agency does

when an NDA holder requests that a patent be delisted following litigation. In those

circumstances, FDA maintains the patent in the Orange Book, and 180-day exclusivity is

preserved. To give effect to the plain language of the 180-day exclusivity provision, FDA must

either do the same thing in circumstances in which there is no litigation or adopt some other

solution that preserves 180-day exclusivity.

C.   <u>The Court May Use Subsequent Legislation to Aid in Ascertaining Congressional Intent</u>

      The 2003 Medicare Modernization Act ("MMA") amendments, 21 U.S.C. §

355(j)(5)(D)(i)(I)(bb)(CC), provide that an "ANDA applicant will forfeit its exclusivity if a

patent is withdrawn if it fails to commercially market the drug within 75 days of patent

withdrawal." Defs. Opp. at 42. FDA does not dispute that in enacting the statutory amendment

Congress necessarily decided that an ANDA applicant <u>does</u> retain its right to exclusivity even in

the face of a patent withdrawal. Were it otherwise, Congress would not have had to adopt a

provision governing the forfeiture of exclusivity. Nor did Congress enact statutory provisions

that condition exclusivity on litigation.

      "When several acts of Congress are passed touching the same subject matter, subsequent

legislation may be considered to assist in the interpretation of prior legislation upon the same

subject." <u>Two Pesos, Inc. v. Taco Cabana</u>, 505 U.S. 763, 783 n.17 (1992) (quoting <u>Tiger v.</u>

9

Western Investment Co., 221 U.S. 286, 309 (1911)). "[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000). This canon of statutory construction is "particularly applicable" in situations where there is "no explicit legislative history" and the courts must "'[seize] everything from which aid may be derived…'" to ascertain Congressional intent. Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 394 (1997) (quoting Brown v. GSA, 425 U.S. 820, 825 (1976)).

      Citing to a portion of a statement by Senator Kennedy, Defs. Opp. at 43, FDA seeks to blunt the force of Ranbaxy's showing by arguing that Congress added the forfeiture provisions "as part of its complete restructuring of the exclusivity provisions in the MMA." The characterization of the MMA as an entire restructuring of the FDCA is misleading. While Senator Kennedy did state that the MMA "restructures" how 180-day exclusivity works, he explained that the revisions to the Hatch Waxman Act were just "refinements to the present system" aimed at stopping abuses, restoring the original intended balance, and ensuring timely access to affordable pharmaceuticals. 149 Cong. Rec. S. 15,882, 15,884 (2003). Nothing in the legislation or legislative history supports the conclusion that the MMA was intended to change the factors by which generic companies were granted 180-day exclusivity. H.R. Conf. Rep. No. 108-391, at 835-836 (2003).

## II.  The Portion of FDA's Regulation Conditioning Exclusivity on Litigation Is Invalid

      In its opening memorandum, Ranbaxy pointed out that the agency's regulation at issue here, 21 C.F.R. § 314.94(a)(12)(viii)(B), was intended to preserve 180-day exclusivity in the event of a delisting. Ranbaxy Mem. at 24. The provision no longer does so, not because the words of the regulation have changed, but because the courts have required FDA to abandon the

successful defense requirement and offer exclusivity in a broader range of circumstances. Because FDA did not revise the regulation at issue here to reflect this broader entitlement to exclusivity when it revised the companion regulations affecting exclusivity, FDA now asserts that 21 C.F.R. § 314.94(a)(12)(viii)(B) preserves exclusivity in some delisting situations, i.e., where there is litigation, and nullifies it in others, i.e., where there is no litigation.

FDA does not dispute that Section 314.94(a)(12)(viii)(B) references "a lawsuit under Section 314.107(c)," and that the reference to a lawsuit in Section 314.107(c) no longer exists because it was removed by FDA in response to the Mova decision. Instead, FDA argues that the Court should ignore this defect in the regulation because it is not "relevant" to the case. Defs. Opp. at 40. In fact, to fully eliminate the successful defense requirement FDA should have amended 21 C.F.R. § 314.94(a)(12)(viii)(B) in the same way that it amended 21 C.F.R. § 314.107(c), by striking the clauses that require a lawsuit, most notably the words "that is the subject of a lawsuit under § 314.107(c)," and leaving the section to read "A patent shall not be removed from the list until FDA determines that [no 180-day exclusivity is required, that the patent has expired, or that 180-day exclusivity has ended]." Only by striking this portion would the regulation be consistent with the statute and case law. By striking the invalid portion in its entirety, the regulation would protect 180-day exclusivity from a request for delisting, including Ranbaxy's.

FDA argues that its regulatory approach has been consistent and Ranbaxy should not have been surprised by FDA's reliance on 21 C.F.R. § 314.94(a)(12)(viii)(B) in this instance. Defs. Opp. at 26-29. Remarkably, FDA even claims that its decision is "entitled to substantial deference" because it involves a reading of the agency's own regulations. Defs. Opp. at 19. But

FDA does not acknowledge that its decision rests on a regulation that was never intended to accomplish what FDA seeks to do here: deprive an ANDA applicant of 180-day exclusivity.

The following are facts that FDA cannot refute:

1.  At the time FDA enacted 21 C.F.R. § 314.94, FDA interpreted the Hatch Waxman statute to allow 180-day exclusivity only to ANDA applicants that were sued and prevailed in patent litigation.  See 59 Fed. Reg. at 50,367.

2.  FDA's purpose in promulgating 21 C.F.R. § 314.94(a)(12)(viii)(B), as revealed in its preamble, was directed to preserving exclusivity, by preserving exclusivity even if the patent holder withdrew the patent – the exact opposite of what it seeks to do in this case.  See Ranbaxy Mem. at 6; 54 Fed. Reg. at 28,894.

3.  The means by which FDA sought to preserve exclusivity was to prohibit an NDA holder from withdrawing a patent immediately upon a court decision that the patent is invalid or unenforceable so as to preserve the ANDA applicant's exclusivity.  See, e.g., Defs. Opp. at 27-28.

4.  At the time FDA promulgated 21 C.F.R. § 314.94, neither the agency's notice of proposed rulemaking, the agency's response to public comments, nor the agency's preamble even hints that the rule would operate to deprive an ANDA applicant of 180-day exclusivity when a patent that was not the subject of litigation was delisted. Abbreviated New Drug Application Regulations, Proposed Rule, 54 Fed. Reg. 28,872, (July 10, 1989); 59 Fed. Reg. at 50,338-69.

5.  The reason the regulation was never intended to deprive an ANDA applicant such as Ranbaxy of exclusivity was because the agency did not believe that an ANDA

applicant would be entitled to exclusivity if it had not been sued for patent

infringement.  59 Fed. Reg. at 50,352-53.

There can be no genuine dispute that at the time it promulgated 21 C.F.R. § 314.94, FDA

never intended it to be applied to deprive an ANDA applicant of 180-day exclusivity.  Up until

now, FDA has repeatedly informed the courts that its interpretation is precisely contrary to what

it urges on this Court today.  Both during and after Mova, FDA interpreted the patent listing and

delisting regulation at issue "as having no effect on exclusivity because the regulation performs a

'purely ministerial function.'"  Dr. Reddy's Labs. Inc. v. Thompson, 302 F. Supp. 2d 340, 356

(D.N.J. 2003).  While that was FDA's original intent, the courts noted – without so holding – that

the language of the regulation was at odds with FDA's stated intent.  Mova, 140 F.3d at 1071

n.13; Mylan Pharms., Inc. v. Henney, 94 F. Supp. 2d 36, 56-58 (D.D.C. 2000), vacated as moot,

276 F.3d 627 (D.C. Cir. 2002).  Rather than amend the language of the regulation to conform to

its original intent, FDA now has changed its interpretation in an attempt to be more consistent

with the regulation's language, but in a way that is inconsistent with the regulation's original,

announced intent.

FDA cannot have it both ways.  As shown below, it is well settled in this Circuit that an

agency cannot promulgate a regulation in compliance with the rulemaking requirements of the

Administrative Procedure Act ("APA"), announce its intended scope in the notice, solicit

comments on that basis, signal its interpretation in the preamble but later change its

interpretation without complying with the APA.

An agency's interpretation of a regulation cannot be sustained when it is apparent that the

regulation was not contemplated for the purpose later adopted by the agency.  See Shepherd v.

Merit Systems Protection Bd., 652 F.2d 1040, 1045 (D.C. Cir. 1981) (refusing to uphold

"agency's hidden intentions and idiosyncratic interpretations" of its own regulations). A regulation must be applied "to guide and not to entrap those who are governed by it." Belco Petroleum Corp. v. Fed. Energy Reg. Comm'n, 589 F.2d 680, 686 n.5 (D.C. Cir. 1978) (quoting Barron Coop. Creamery v. Wickard, 140 F.2d 485, 488 (7th Cir. 1944)). Upholding the agency's changed interpretation of its regulation would unfairly saddle Ranbaxy and others with a responsibility not previously delineated and "with a surprise burden impossible to anticipate, which, unwarned, they had no opportunity to take steps to protect themselves against." Barron Coop., 140 F.2d at 488. See also Nat'l Family Planning & Reprod. Health Ass'n v. Sullivan, 979 F.2d 227, 240 (D.C. Cir. 1992) (quoting Robert A. Anthony, Which Agency Interpretations Should Bind Citizens and the Courts, 7 Yale J. on Reg. 1, 18 (1990)) ("If a court mistakenly gives an agency interpretation the force of law, 'an especially odious frustration is visited upon the affected private parties: they are bound by a proposition they had no opportunity to help shape and will have no meaningful opportunity to challenge when it is applied to them.'").

FDA must understand, even if it will not acknowledge, that its failure to amend 21 C.F.R. § 314.94 after Mova leaves it in a difficult situation. It cannot apply 21 C.F.R. § 314.94 to strip an ANDA applicant of its exclusivity because the regulation was never intended to be used for that purpose. But it never amended the regulation following the Mova decision to account for the fact that exclusivity does not depend on the successful defense of a patent suit.

FDA nevertheless argues that it does not have to amend 21 C.F.R. § 314.94 in conformance with the APA to apply it to Ranbaxy because there has been no "shift in agency policy." Defs. Opp. at 29. Saying so does not make it so. In fact, there has been a profound shift in policy – at the direction of the courts. The agency was directed to abandon its policy of conditioning exclusivity rights on patent litigation and to award exclusivity without regard to a

lawsuit. The regulation should have been changed to reflect that shift in policy. That this shift requires FDA to amend its regulation is equally unassailable.

Where an agency's present interpretation of a regulation constitutes a "fundamental modification of its previous interpretation, and even if [the agency] legitimately could have reached the present interpretation originally," the agency cannot switch its position merely by revising its policy. Paralyzed Veterans of America v. D.C. Arena, 117 F.3d 579, 586 (D.C. Cir. 1997). Rather, "[o]nce an agency gives its regulation an interpretation, it can only change that interpretation as it would formally modify the regulation itself: through the process of notice and comment rulemaking." Id. This is because the agency's subsequent interpretation "in effect amend[s] its rule," which the agency "may not accomplish without notice and comment." Alaska Professional Hunters Ass'n v. FAA, 177 F.3d 1030, 1034 (D.C. Cir. 1999). See also Air Transport Ass'n of Am., Inc. v. FAA, 291 F.3d 49, 55 (D.C. Cir. 2002) ("[I]t is well established that an agency may not label a substantive change to a rule an interpretation simply to avoid the notice and comment requirements."); Syncor Int'l Corp. v. Shalala, 127 F.3d 90, 95 (D.C. Cir. 1997) (FDA policy announcing that a previously unregulated industry "should be regulated" is not a change in interpretation or enforcement policy, but rather, is a "fundamentally new regulation" subject to notice-and-comment rulemaking).

Allowing an agency to make a fundamental change in its interpretation of a regulation without notice and comment undermines the APA requirements. Paralyzed Veterans, 117 F.3d

at 586.[7] The notice and comment provisions would be rendered meaningless "if an agency could effectively, constructively amend regulations by means of nonobvious readings without giving the affected parties an opportunity either to affect the content of the regulations at issue or at least be aware of the scope of their demands." Nat'l Family Planning, 979 F.2d at 240 (internal citations omitted). Cf. Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 100 (1994) (noting that where agency "adopt[s] a new position inconsistent with . . . existing regulations," APA rulemaking is required).

These cases also demonstrate why FDA's assertion that it "would make the same decision" if the regulation were invalidated, Defs. Opp. at 41, cannot justify the agency's failure to amend its regulation. The public has a right to have its view considered in a proper rulemaking. Without the pressure of litigation, FDA might well reach a different conclusion than the one it has taken in this case.

III. FDA's Interpretation is Not Reasonable and Not Entitled to Deference

A. FDA Is Not Entitled to Deference

In contrast to Ranbaxy, FDA cannot support its position by reference to the statute. Instead, FDA relies on several pages of boiler-plate assertions about the deference to be accorded agency interpretations, Defs. Opp. at 17-20, and then argues that its position is reasonable. Examined in light of the governing principles, it is clear that FDA is not entitled to deference in this case. First and foremost, an agency receives no deference when the Court is ascertaining

---

7. The District Court for the District of New Jersey discussed the change in FDA's interpretation in the Dr. Reddy decision. In that case the court determined that it need not decide whether the changed interpretation violated the APA because the plaintiff in that case did not argue that FDA had "amended" the regulation and because the case involved expired patents, as to which there had been no change in the agency's interpretation. See Dr. Reddy's, 302 F. Supp. at 357. ("Reddy does not argue, nor does it appear to be the case, that the FDA 'amended' the regulation with the new interpretation.")

whether Congress has spoken to the precise question at issue. Ranbaxy Mem. at 13-14;

Northpoint Tech Ltd., v. FCC, 412 F.3d 145, 151 (D.C. Cir. 2005); Martini v. Fannie Mae, 178

F.3d 1336, 1342 (D.C. Cir. 1999) ("In discerning Congressional intent, we owe no deference to

the agency's view.").

      Second, as demonstrated in Barnhardt, upon which FDA relies for its claim of deference,

deference is most appropriate when the legal question is of an "interstitial nature," Defs. Opp. at

18 (quoting Barnhardt v. Walton, 535 U.S. 212, 222 (2002)), but is not equally appropriate in

resolving major legal questions. As the Supreme Court has explained, the "inquiry into whether

Congress had directly spoken to the precise question is shaped, at least in some measure, by the

nature of the question presented." FDA v. Brown & Williamson, 529 U.S. at 159. Deference

under Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) is premised

on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the

agency to fill in the statutory gaps. Where the legal question is an important one, it is more

likely that Congress focused upon and answered major questions, while leaving interstitial

matters to answer themselves in the course of the statute's administration. Id. (quoting Stephen

Breyer, Judicial Review of Questions of Law and Policy, 38 Admin. L. Rev. 363, 370 (1986)).

      The 180-day exclusivity provision is a central aspect of Hatch Waxman. Purepac Pharm.

Co. v. Thompson, 238 F. Supp. 2d 191, 207 (D.D.C. 2002), aff'd 354 F.3d 877 (D.C. Cir. 2004)

(noting that paragraph IV provisions balance the rights of NDA holders and the interests of

generic manufacturers and lie "at the core of the Hatch Waxman Amendments.") The

importance of this provision indicates that Congress did not intend to delegate authority to the

agency to limit this important entitlement, let alone to allow its derogation based on distinctions

that run contrary to the statute's text and purpose. While aspects of patent listing, such as how

listing and delisting requests may be presented, can be characterized as interstitial in and of themselves, they cannot be manipulated to rewrite core policies contained in other provisions of the statute, such as 180-day exclusivity. Whether an ANDA applicant is entitled to 180-day exclusivity absent patent litigation is not interstitial and is not an issue Congress delegated to FDA to decide. The courts previously have instructed FDA that the statutory language does not favor ANDA applicants that successfully defended patent litigation over those who succeed in their challenge by avoiding litigation. Mova, 140 F.3d at 1069; Inwood Laboratories, Inc. v. Young, 723 F. Supp. 1523, 1526 (D.D.C. 1989), appeal dismissed, 43 F.3d 712 (D.C. Cir. 1989); Granutec Inc. v. Shalala, No. 97-1873, 1998 U.S. App. LEXIS 6685, at *21 (4th Cir. 1998) (unpublished). FDA's attempt in this case to resurrect its successful defense requirement should meet the same fate here as it did in Mova, where FDA first sought to limit the scope of 180-day exclusivity.

Finally, even when a statute is deemed ambiguous, deference is not appropriate where, as here, the agency's interpretation is in "conflict with the policy judgments that undergird the statutory scheme." Health Ins. Ass'n of Am. v. Shalala, 23 F.3d 412, 416 (D.C. Cir. 1994). An agency interpretation must be based on a "permissible" construction of the statute, Northpoint Tech Ltd., v. FCC, 412 F.3d 145, 151 (D.C. Cir. 2005), and when it is not, the agency is not entitled to deference. Id. As noted by the Supreme Court, there is "no need to choose between [Skidmore v. Swift & Co., 323 U.S. 134 (1944) deference] and Chevron [deference]" when an agency is clearly wrong in interpreting a statute. General Dynamics Land Sys. v. Cline, 540 U.S. 581, 601 (2004).

It is clear that the language of the statute precludes disparate treatment between ANDA applicants that successfully challenge a listed patent by notice or design and those successful in

litigation. It is equally clear that the design of the statute as a whole precludes the distinction. Deference, therefore, is not appropriate here.

B.  The Agency's Interpretation Is Not Reasonable

In its initial memorandum, Ranbaxy demonstrated that FDA's decision is arbitrary and capricious because, in addition to the other reasons set forth in the memorandum, FDA's interpretation undermines a central goal of the statute, invites abuse of the patent listing system and creates incentives to trigger patent litigation. Ranbaxy Mem. at 25-33. In response, the agency acknowledges, as it must, that there is a "benefit derived from maintaining exclusivity," Defs. Opp. at 30, but asserts that the benefit is not outweighed by the costs of "the delay in generic drug approvals that would arise from leaving a patent listed." Id. The "costs" identified by FDA, however, either are illusory or are features of the 180-day exclusivity itself as designed by Congress. Therefore, FDA's interpretation is contrary to the overall Hatch Waxman scheme, and for that reason should be vacated as arbitrary, capricious and contrary to law.

1.  FDA's Distinction Between Litigation and Non-Litigation Situations Is Not Reasonable

FDA's litigation distinction bears no relation to the actual success of an ANDA applicant or the speed with which a generic competitor will enter the market, the objectives Congress sought to achieve through Hatch Waxman. An ANDA applicant is no less successful because its paragraph IV notice contained a convincing showing that the NDA holder will not succeed and which causes the NDA holder to decide not to waste money litigating a patent infringement case it cannot win. An ANDA applicant that is not sued is able to market a generic version earlier than it would were it sued. FDA's distinction therefore fails to advance a central Congressional objective behind Hatch Waxman – "to get generic drugs into the hands of patients at reasonable prices – fast." In re Barr Labs. Inc., 930 F.2d 72, 76 (D.C. Cir. 1991).

Further, FDA's approach is profoundly unjust to an ANDA applicant that has made a substantial investment in reliance on the listing in the Orange Book.  There is no reason to conclude that an ANDA applicant that is sued will have incurred greater total expense than one that is not sued, or that consumers will benefit more from a generic that was the subject of litigation.  There is no material distinction between the expenditures required to defend a lawsuit and those required to design around a patent.  From the perspective of an ANDA applicant, the costs of defending a suit can range from the insignificant into the millions, but so too can the cost of designing around a broad patent.  Thus, the investment required to earn exclusivity is not dependent on whether an ANDA applicant was sued or not; in either case, the actual expenditures can be of similar magnitude.[8]  Nor is the nature of the benefit reaped by consumers dependent on whether opening a market to generics is due to litigation or to successful patent notice.  Thus, no meaningful distinction can be drawn between the two situations.[9]  It is manifestly unfair, and legally unsound, for FDA to treat similarly situated ANDA applicants differently.  See, e.g., El Rio Santa Cruz Neighborhood Health Ctr., Inc. v. HHS, 300 F. Supp. 2d, 42-43 (D.D.C. 2004) aff'd, 396 F.3d 1265 (D.C. Cir. 2005); Bracco Diagnostics v. Shalala, 963 F. Supp. 20, 27-28 (D.D.C. 1997).

---

8.  Any assumption that litigation expenses necessarily exceed design expenses is unwarranted. Just as the cost of design can be substantial, the cost of litigation can be minimal.  For example, exclusivity can be triggered by a court decision in litigation involving other parties.  FDA, Guidance for Industry: Court Decisions, ANDA Approvals, and 180-Day Exclusivity Under the Hatch-Waxman Amendments to the Federal Food, Drug, and Cosmetic Act, 4 (Mar. 2000). Litigation also can be swiftly concluded by a concession that a patent is not enforceable.  Teva Pharm., USA, Inc. v. FDA, 182 F.3d 1003, 1006 (D.C. Cir. 1999).

9.  FDA also argues that it cannot reward "successful notice" as Ranbaxy advocates, because it cannot identify applicants that provide successful notice, and that, therefore, abolishing the litigation requirement would reward companies that have neither mounted a successful defense nor provided a successful notice.  Defs. Opp. at 32.  Because any generic applicant that submits a paragraph IV certification and avoids litigation has provided a successful notice, there is no reason to make distinctions among ANDA applicants that are not sued.

FDA offers only one rationale to support its litigation distinction that actually relates to the difference between a first applicant that is in litigation and one that is not - its mistaken hypothesis that a defendant in a patent infringement suit needs the incentive of 180-day exclusivity to defend a case. Defs. Opp. at 33. FDA's hypothesis has no basis in reality. If a defendant does not adequately defend a patent litigation case, it will not be able to enter the market until patent expiration. This means that it will be shut out of the market behind its competitors that do defend or are not sued, and saddled with the costs involved in having prepared its ANDA, its paragraph IV notice and the litigation. If, as FDA contends, the vigor of the defense can reasonably be expected to be commensurate with the expected reward, then the defendant has great incentive to defend the suit. The reality is that companies continue to litigate patent cases even without exclusivity. For example, Ranbaxy is involved in two such lawsuits now. See Pfizer Inc. v. Ranbaxy Pharms., No. 03-CV-1824 (D.N.J.); Pfizer Inc. v. Teva Pharm., No. 05-620 (D.N.J.).

The point of 180-day exclusivity is to encourage generic companies to take on the costs and uncertainties associated with preparing an ANDA and the risk of patent litigation. Congress could have chosen to provide the incentive of 180-day exclusivity to those ANDA applicants that are sued for patent infringement, or to those that litigate vigorously and/or successfully. It did not do so. Congress elected to provide the incentive at the point a generic manufacturer decides to file its ANDA and incur the risk of litigation. The choice Congress made has resulted in more generic entry than when FDA conditioned exclusivity on a successful defense of patent litigation. See Federal Trade Commission, Generic Drug Entry Prior to Patent Expiration: An FTC Study (July 2002) at 60 available at http://www.ftc.gov/os/2002/07/genericdrugstudy.pdf (last accessed

Dec. 11, 2005) (180-day exclusivity granted to 3 generic applicants before <u>Mova</u>; 31 received it after <u>Mova</u>).

2.  <u>FDA's Argument That 180-Day Exclusivity Is a Barrier to Competition Is Not Reasonable</u>

FDA continues to argue that limiting the number of ANDA applicants that receive exclusivity is reasonable because 180-day exclusivity is a barrier to competition. Regardless of its protestations to the contrary, <u>see</u> <u>e.g.</u>, Defs. Opp. at 35, the reality is that the "barriers" FDA wants to avoid are precisely the "barriers" that Congress sought to provide.[10] The intent behind 180-day exclusivity is to encourage a generic company to seek approval of its generic version of the pioneer drug so as to provide a cheaper alternative to consumers. To do so, Congress explicitly provided that competition by subsequent generic entrants would be delayed by 180 days. In enacting 180-day exclusivity, Congress already determined that any "cost" of delaying entry by subsequent generic companies was outweighed by the benefits to consumers of having an alternative to the pioneer.

FDA also continues to argue that a continued listing places a "burden" on subsequent ANDA applicants to make a patent certification, and that the burden, which FDA does not quantify, is assertedly not "trivial" and "not a small matter." Defs Opp. at 35. As Ranbaxy has explained, this argument rests on a fundamental misunderstanding of the actual process and costs of the Hatch Waxman provisions on an ANDA applicant. <u>See</u> Ranbaxy Mem. at 29. In any event, regardless of the size of the "burden," an ANDA applicant that does not want to undertake the burden of filing a paragraph IV certification does not have to do so. Once the 180-day

_____

10. Curiously, FDA holds out as evidence that it does not disagree with Congressional intent, its decision that the statute provides multiple periods of exclusivity for multiple patents. Defs. Opp. at 35. In fact, that interpretation could just as easily illustrate that FDA has strayed from Congress's intent. FDA's interpretation providing exclusivity by patent was rejected by one court as inconsistent with the statutory provisions. <u>Torpharm, Inc. v. FDA</u>, No. 03-2401, 2004 U.S. Dist. LEXIS 524 (D.D.C. 2004).

exclusivity has expired, FDA can delist the patent and a subsequent ANDA applicant need not make a paragraph IV certification. Moreover, the "costs" do not, in FDA's view, outweigh the benefits if a patent is the subject of litigation when an ANDA holder requests delisting. It is illogical to conclude that the balance shifts in the absence of litigation.[11]

Were the continued listing of a patent to truly harm competition, or consumers, one would expect FDA's policy to require delisting immediately upon request by an NDA holder. Yet FDA left the patents at issue listed in the Orange Book for nearly a year after Merck requested their delisting. Compare Patent Delisting Request from Andrew M. Tershakovec, M.D., Director, Regulatory Affairs to David Orloff, M.D., Director, Division of Metabolic and Endocrine Drug Products (Oct. 10, 2003), AR, Tab 6 at 1 with Petition Response, AR, Tab 23 at 3 (FDA maintained Merck's listing of the patents in the Orange Book until September 2004). FDA's own actions in response to the request for delisting belie the validity of the concerns the agency now advances.

This is not the first time that FDA has advanced a rationale in support of a decision that is at odds with its conduct. In Purepac v. Thompson, FDA listed a patent in the Orange Book as claiming the use of a drug for treatment of neurodegenerative diseases. Purepac, 191 F. Supp. 2d at 210. In subsequent litigation, the agency asserted that the use of the drug covered by the patent should be the treatment of epilepsy rather than neurodegenerative diseases. This Court rejected the agency's effort to retreat from what it had previously done, particularly when "the agency has offered no justification for retreating from its previous position." Id.

---

11. In fact, where the first applicant has not been sued, there is little likelihood that a subsequent applicant submitting a paragraph IV certification will be sued, whereas there is a significantly greater likelihood of a lawsuit against the subsequent applicant where FDA's "litigation" requirement has been met in the case of the first applicant.

In this case, FDA's conduct evidences that there is no real concern with the potential

burden, delay or any other of the "costs" it identifies in this case.  Having maintained the listing

for 11 months despite Merck's request, FDA may not, "consistent with the requirement of

reasoned decisionmaking," adopt a position wholly incompatible with the agency's conduct.  Id.

The sharp contrast between FDA's actual policy of delaying delisting, for no stated reason, and

the position it now advances, demonstrates that its proffered rationale is artificial and its decision

to deprive Ranbaxy of its exclusivity arbitrary and capricious.

3.  FDA's Argument That Its Approach Does Not Undermine the Incentives to Challenge
    Patents Is Unreasonable

As Ranbaxy has pointed out, FDA's approach undermines a generic company's

incentives to challenge innovator patents.  Ranbaxy Mem. at 27-28.  If the innovator has the

power to deny exclusivity by withdrawing the patent at any time, a generic applicant will have

less certainty when deciding whether to challenge a patent.  As described in the declaration of

Dr. Ward, according to the economic principles governing entry of generics, denying 180-day

exclusivity to generic drug companies that avoid patent litigation may reduce the number and

speed of generic entry.  Declaration of Michael R. Ward, Ph.D. ("Ward Decl.") at

¶¶ 4, 17, Attachment B.[12]

Without contesting this fundamental economic principle, FDA argues that the deterrent is

likely to be small, persisting in its assertions that "patent delisting is relatively uncommon."

Defs. Opp. at 31.  The accuracy of this characterization can be judged by the long list on FDA's

website of patents delisted since February 2004.  Electronic Orange Book, Delisted Patent

Search Results at http://www.accessdata.fda.gov/scripts/cder/ob/docs/delist.cfm (last visited Dec.

---

12.  It is appropriate for a court to consider explanatory evidence to assist with highly technical
subject matter.  Asarco, Inc. v. EPA, 616 F.2d 1153, 1159 (9th Cir. 1980); Bunker Hill Co. v.
EPA, 572 F.2d 1286, 1292 (9th Cir. 1977).

24

11, 2005), Attachment A.  Moreover, FDA's conclusion that the lack of exclusivity is not likely

to be a significant deterrent to generic entry is wrong.  From the perspective of the handful of

generic companies that have developed the expertise to allow them to be the first to file, the

reality is that delisting does not seem to be uncommon at all.  FDA also fails to apprehend the

magnitude of the disincentive to generic drug manufacturers when it minimizes Ranbaxy's

experience.  The patents for four drugs for which Ranbaxy believes it was the first to file

paragraph IV certifications have been delisted in the last year and a half.  Ranbaxy Mem. at 32.

Those drugs represent approximately $5.9 billion in sales.  (data obtained from IMS Health, a

company that provides sales information related to the pharmaceutical industry, found at

http://www.imshealth.com).  The loss of exclusivity is a powerful disincentive to Ranbaxy, as it

will be for other companies that have aggressively entered the generic field in reliance on the

incentives of Hatch Waxman.

      FDA also argues that the deterrent effect is small because there are other circumstances in

which the first paragraph IV generic applicant might lose its exclusivity.  It is true that first

applicants may sometimes lose their exclusivity, but that fact is irrelevant to this analysis.

Adding a new, unpredictable way in which an ANDA applicant might lose exclusivity is an

additional deterrent regardless of the number of other ways in which it might happen.

4.  FDA's Approach Is Not Reasonable Because It Places Control Over Exclusivity in the Hands
   of the Patent Holder

      In its opening brief, Ranbaxy argued that it is arbitrary and capricious to place control

over 180-day exclusivity decisions in the hands of the NDA holder.  Ranbaxy Mem. at 31.  An

NDA holder that does not choose to litigate to enforce its patent can simply delist the patent to

deprive the paragraph IV applicant of 180-day exclusivity.  As Dr. Ward's declaration explains,

NDA holders may have strategic reasons to delist a patent to the detriment of generic entry and consumer interests. Ward Decl. at ¶¶ 18-21.

FDA does not disagree that its approach places the exclusivity decision in the hands of the NDA holder, but argues that this is an appropriate result because the statute gives NDA holders unfettered control over patent listing. FDA Mem. at 36-37.[13] It is entirely unreasonable for FDA to equate listing with delisting, as if the consequences of the two are equal. If a patent is not listed, an ANDA applicant may disagree with the NDA holder's decision, but, unlike delisting, the ANDA applicant has not spent potentially millions of dollars and exposed itself to litigation in reliance on the representation of the NDA holder. Also, an ANDA applicant can challenge an improperly listed patent in patent infringement litigation, but it has no recourse when an NDA holder withdraws a patent.

Ranbaxy has challenged the withdrawal of the patents from the Orange Book. The unrebutted facts in the administrative record show that the patents at issue claim the drug and should be listed. Reply to FTC Response to Citizen Petition on behalf of Ranbaxy to Division of Docket Managements, FDA (May 20, 2005), Declaration of William D. Hare, AR, Tab 17 at 4-8. FDA, however, refuses to decide whether the withdrawal is proper, even though it is aware that, while FDA regulations tell the parties what they are supposed to do, they do not actually keep non-conforming patents out of the Orange Book or conforming patents in the Orange Book. Purepac Pharm. Co., 238 F. Supp. 2d at 208. As the Court previously warned, FDA cannot

_____

13. FDA points out that Mova and Inwood Labs., cited in Ranbaxy's opening brief, Ranbaxy Mem. at 16, do not involve patent delisting. Whether they involve delisting is irrelevant. Mova speaks to the value of 180-day exclusivity, and Inwood, which considered FDA's successful defense requirement, states that "by subjecting the exclusivity entitlement to the caprices of the patent holder, the FDA's interpretation would seem to affect adversely the incentives Congress sought to create on providing for 180-day exclusivity for the manufacturing of generic drugs," Inwood Labs., 723 F. Supp. at 1526.

ground its decision on the "fictitious" premise that NDA holders' listing decisions comply with the regulations. Id.

FDA's position puts total control over exclusivity in the hands of the generic applicant's competitor, in a way that the decision as to whether to list does not, and it does so after the generic applicant has expended substantial resources in developing its ANDA application and designing around the NDA holder's patent. In these circumstances, FDA's position cannot be reasonable.

FDA goes on to argue that Ranbaxy's position is flawed because it undermines the patent challenge process. Defs. Opp. at 25. That process establishes a method for the ANDA applicant to communicate, through FDA, with the NDA holder about listing and delisting decisions that it believes are not correct. It gives the ANDA applicant no power to affect the decision and does not cause FDA to review or otherwise involve itself in the NDA holder's decision. It does nothing but facilitate a communication through FDA that could be accomplished by the NDA holder and ANDA applicant directly.

FDA expresses concern over removing this incentive to challenge patent listings. As Ranbaxy has explained, a proper reading of the statute does not remove this incentive. Ranbaxy Mem. at 28-29. While a patent challenge cannot result in removal of a patent until expiration of the 180-day exclusivity delay, it can result in the removal of the patent immediately once it concludes. Moreover, even if the continued listing of a patent to protect exclusivity after request for withdrawal by the NDA holder were deemed a disincentive to challenge a patent listing – which is not the case – FDA cannot credibly argue that such a disincentive warrants nullification of 180-day exclusivity earned by an applicant under the standards set forth by Congress. In fact,

under FDA's proposed interpretation of the statute, the same "disincentive" exists where patents

remain listed based on the filing of a lawsuit against the first applicant.

In this instance, as with the other concerns raised by FDA, there is no reasonable basis to

nullify an ANDA applicant's entitlement to exclusivity because of a litigation distinction. This

is the reason the statutory provisions themselves do not allow such a distinction.

CONCLUSION

For the reasons stated above, and in its initial memorandum, Ranbaxy is entitled to

summary judgment.

Respectfully submitted,

Of Counsel:

Jayadeep R. Deshmukh
Vice President – Intellectual Property
William D. Hare
Senior Counsel – Intellectual Property
Ranbaxy Laboratories Ltd
600 College Road East
Princeton, NJ 08540

William B. Schultz
Carlos T. Angulo
Zuckerman Spaeder LLP
1800 M St., NW, Ste. 1000
Washington, DC 20036

Dated:  December 12, 2005

Kate C. Beardsley
D.C. Bar No. 416806
Carmen M. Shepard
D.C. Bar No. 331314
William A. Garvin
D.C. Bar No. 486467

Buc & Beardsley
919 Eighteenth Street, N.W.
Suite 600
Washington, D.C. 20006
(202) 736-3600

Counsel for Ranbaxy