UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RANBAXY LABORATORIES LIMITED, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-1838 (RWR) |
| | ) | |
| MICHAEL O. LEAVITT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | (Consolidated) |
| | ) | |
| IVAX PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-2180 (RWR) |
| | ) | |
| MICHAEL O. LEAVITT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

FEDERAL DEFENDANTS' REPLY MEMORANDUM
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

INTRODUCTION

In making their argument that they are entitled to 180 days of exclusivity for their generic

drug products, both Ranbaxy and Ivax focus on one provision in the Food, Drug, and Cosmetic

Act (FDCA), arguing that if they are the first Abbreviated New Drug Application (ANDA)

applicant to submit a challenge to a listed patent (i.e., a paragraph IV certification) then they are

entitled to exclusivity regardless of subsequent events. Their arguments ignore FDA's long-

standing interpretation and the fact that FDA accounts for changes in circumstances when it

makes exclusivity determinations. Among other things, the statute requires the holder of a new

drug application (NDA) to list patents which claim the listed drug, and only those patents. The

statute is silent on what is to occur with respect to exclusivity when an NDA holder requests that a patent be delisted or withdrawn, and FDA's decision regarding what to do in this situation is entitled to deference. Significantly, the FDA has specifically addressed, by regulation, what is to occur in the precise situation presented in the instant case; i.e., when an NDA holder requests that a patent be delisted and there has been no patent litigation. 21 C.F.R. § 314.94(a)(12)(viii)(B). Plaintiffs' position would require FDA to completely disregard this regulation and would significantly unsettle industry expectations for patent withdrawals.

This regulation has never been challenged, and thus no court has addressed the precise issue raised here. Courts that have addressed very similar issues, however, have rejected the notion that ANDA applicants are entitled to exclusivity simply by being the first to submit a paragraph IV certification, and have held that it is within FDA's authority to consider, when making exclusivity decisions, whether circumstances have changed after submission of the initial certification. In one of those cases, Dr. Reddy's Laboratories, Inc. v. Thompson, 302 F. Supp.2d 340 (D.N.J. 2003), plaintiff made arguments virtually identical to those made by Ranbaxy and Ivax, and was nevertheless denied exclusivity by the court.

Plaintiffs argue that FDA's regulation and FDA's application of this regulation in this case are foreclosed by the decision of the D.C. Circuit in Mova Pharmaceutical Corp. v. Shalala, 140 F.3d 1060 (D.C. Cir. 1998). Although Mova invalidated a portion of an FDA regulation, the D.C. Circuit did not address the issue presented here, nor did it address the issue of the withdrawal of a patent in any context. Moreover, the court in Mova recognized that it is within FDA's authority to utilize a "litigation requirement" in awarding exclusivity. The recognition of this authority, in and of itself, requires denial of plaintiffs' claims in the instant case. For these

2

and other reasons discussed in more detail below and in the government's initial summary judgment memorandum ("FDA Mem."), the government's motion for summary judgment should be granted.

## ARGUMENT

### I.    21 U.S.C. § 355(j)(5)(B)(iv) DOES NOT, WITHOUT MORE, ENTITLE PLAINTIFFS TO EXCLUSIVITY

The principal argument advanced by both Ranbaxy and Ivax is that this case should be examined under Chevron step one because 21 U.S.C. § 355(j)(5)(B)(iv) allegedly entitles the first generic applicant who submits a paragraph IV certification to a listed patent to 180 days of exclusivity, and that is the end of the inquiry. Ranbaxy's Memorandum in Opposition to Federal Defendants' Motion for Summary Judgment, filed December 12, 2005 ("Ranbaxy") at 7, 18; Plaintiff Ivax Pharmaceuticals, Inc.'s Memorandum in Opposition to Federal Defendants' Motion for Summary Judgment, filed December 12, 2005 ("Ivax") at 1-2, 7. The FDCA, however, is silent on the consequence of a patent delisting request and FDA's decision in this context is entitled to deference under Chevron step two. FDA Mem. at 17-20. Ranbaxy concedes that deference "is most appropriate when the legal question is of an 'interstitial nature.'" Ranbaxy at 17. It also admits that "aspects of patent listing . . . can be characterized as interstitial. . . ." Id. at 17-18. It has already conceded that the statute is silent on patent withdrawal. Ranbaxy Initial Mem. at 23. Thus FDA's decision in filling these "interstices" is entitled to deference. See FDA Mem at 17-20; FDA Response to Citizen Petitions (AR Tab 23) at 8, 17.

Plaintiffs' argument ignores the fact that FDA must apply all provisions of the statute

3

and, in doing so, must account for changes in the status of patent listings when making exclusivity determinations. See AR Tab 23 at 9-10. In its response to plaintiffs' citizen petitions, FDA discussed a number of ways that an ANDA applicant that was the first to file a paragraph IV certification might not be eligible for exclusivity due to changed circumstances. Id. Because the statute is silent with respect to requests to delist patents, FDA has provided by regulation – heretofore unchallenged – that it will delist patents at the NDA holder's request unless the patent is the subject of litigation. 21 C.F.R. § 314.94(a)(12)(viii)(B). This regulation requires ANDA applicants to amend their paragraph IV certifications when a patent is removed from the list.[1] The result urged by plaintiffs would require FDA to completely disregard this regulation. If FDA were to act in a manner in direct contravention of this regulation and award exclusivity to Ranbaxy and Ivax, any ANDA applicants affected by this decision would undoubtedly seek to enjoin the FDA to do just the opposite and follow the explicit terms of its regulation.

In Dr. Reddy's, the court deferred to FDA's interpretation in the face of arguments almost identical to those made by the plaintiffs in this case. Because the court in Dr. Reddy's thoroughly and carefully addressed these issues, that decision is discussed at length here. In Dr. Reddy's the patent in question had expired, but Dr. Reddy's argued – just as plaintiffs here – that because it was the first to file a paragraph IV certification, the "unambiguous language" of the statute required that it be awarded 180 days of exclusivity. 302 F. Supp.2d at 351.

---

[1] FDA does not, contrary to Ranbaxy's argument, both leave a patent in the Orange Book and take it out when there is a request for delisting and there has been patent litigation. Ranbaxy at 6 n.6. Rather, consistent with the plain terms of the regulation, FDA does not delist patents that are the subject of litigation until resolution of any exclusivity issues.

4

> In Reddy's view, this provision [21 U.S.C. § 355(j)(5)(B)(iv)] requires the award of exclusivity if the ANDA applicant is the first applicant to file a paragraph IV certification on a patent, without more, because at that time the ANDA applicant <u>exposes itself to patent litigation by providing the requisite notice of the certification</u>.

<u>Id.</u> (emphasis added).  Dr. Reddy's had not just exposed itself to the risk of patent litigation, it had in fact been sued for infringement with respect to its certification.  <u>Id.</u> at 355.

The court did <u>not</u> frame the issue – as urged by Dr. Reddy's, as well as Ranbaxy and Ivax – as a simple question of applying certain language of the exclusivity provision of the statute in isolation, but rather as

> (1) whether the FDA can require an ANDA applicant to amend certifications, and (2) whether, to be eligible for exclusivity, an ANDA must contain a paragraph IV certification at the time of filing only or at the time the FDA makes its exclusivity determination.  The statute clearly addresses neither issue.

<u>Id.</u> at 352.  The court recognized that FDA required, by regulation, ANDA applicants to amend certifications when "circumstances change after applicants file their ANDAs." <u>Id.</u> at 350 (citing subpart (C) of 21 C.F.R. § 314.94(a)(12)(viii)).  Significantly, the regulation does not specifically address the issue of expired patents.  In <u>Dr. Reddy's</u>, FDA therefore relied on the general language of subpart (C) of the regulation requiring amended certifications if, before approval of the ANDA, "the applicant learns that the submitted certification is no longer accurate." <u>Id.</u> at 351.[2]  By contrast, in the instant case, subpart (B) of the regulation specifically addresses the issue of delisting requests and requires that certifications be changed when patents are withdrawn.  21 C.F.R. § 314.94(a)(12)(viii)(B).  Even though subpart (C) does not specifically

---

[2]  <u>See</u> 21 C.F.R. § 314.94(a)(12)(viii)(C) ("Except as provided [in circumstances not relevant here], an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate.").

address amending certifications when a patent has expired, the <u>Dr. Reddy's</u> court held that FDA's interpretation of the statute was permissible, and was "entitled to substantial deference." <u>Id.</u> at 353-56. The court held that FDA cannot act in a manner inconsistent with its own regulation. <u>Id.</u> at 356. <u>A fortiori</u>, because subpart (B) explicitly requires certifications to be amended when a patent is withdrawn, the relief that Ranbaxy and Ivax seek would require FDA to act in a manner in direct contravention with its regulation and in violation of established principles of agency decisionmaking.

Dr. Reddy's had submitted its paragraph IV certification 33 months before the patent expired and had "vigorously litigated the validity of the '431 patent." <u>Id.</u> at 354-55. Although Dr. Reddy's argued that FDA's position was inconsistent with the purpose of the statute to provide an incentive to file paragraph IV certifications, <u>id.</u> at 355, the court rejected its claim. In the instant case, plaintiffs argue that by filing paragraph IV certifications they have incurred the <u>risk</u> of patent litigation, Ranbaxy at 8, Ivax at 11, but Dr. Reddy's had incurred both the <u>risk</u> and <u>cost</u> of patent litigation. Nonetheless, the court rejected its arguments.

The court in <u>Dr. Reddy's</u> also rejected the argument that eligibility for exclusivity should be determined at the time ANDAs are first filed. <u>Id.</u> at 353. The court recognized that circumstances can change after ANDAs are submitted, and the appropriate time for making eligibility determinations is when ANDAs are approved. <u>Id.</u>

The rationale in <u>Dr. Reddy's</u> applies regardless of whether the patent expired or was withdrawn. Ranbaxy attempts to manufacture a distinction between the two situations, stating that it is appropriate that there be no exclusivity when a patent has expired because "there can be no paragraph IV certification because <u>there is no patent to certify to</u> . . .," and that loss of

6

exclusivity for expired patents is "controlled by the statute itself." Ranbaxy at 5 & n.4 (emphasis added) (citing 355(j)(5)(B)(ii)). In Dr. Reddy's, however, there was a paragraph IV certification, and it was changed by operation of the same regulation applicable (even more explicitly) in the instant case, 21 C.F.R. § 314.94(a)(12)(viii). 302 F. Supp.2d at 355-57. The loss of exclusivity in Dr. Reddy's was not "controlled by the statute" any more than loss of exclusivity for patent withdrawal. See also Mylan Labs., Inc. v. Thompson, 389 F.3d 1272, 1282-84 (D.C. Cir. 2004) (paragraph IV certification changed to a paragraph II by operation of the FDA regulation – over the objection of Mylan – due to changed circumstances "not fully foreseen or provided for by the Congress"); Ranbaxy Labs. Ltd. v. FDA, 307 F. Supp.2d 15, 19-21 (D.D.C.), aff'd 96 Fed. Appx. 1 (D.C. Cir. 2004) (paragraph IV certification changed to a paragraph II by operation of the FDA regulation – over the objection of Ranbaxy – upon expiration of patent).[3]

Ranbaxy cites, in connection with its argument that FDA should amend 21 C.F.R. § 314.94(a)(12)(viii), a statement in Dr. Reddy's for the proposition that at one time FDA viewed this regulation "as having no effect on exclusivity" and that it has since improperly changed this interpretation. Ranbaxy at 13. Although the court in Dr. Reddy's indicated that such a change would have been permissible, it was not persuaded that FDA had actually changed its position with respect to expired patents, and approved of FDA's position as "consistent with the clear

_____

[3] Ranbaxy argues that the distinction between an expired and a delisted patent is significant because it is subject to an infringement action for a delisted patent, but not for an expired patent. Ranbaxy at 6 n.5. However, whether Ranbaxy is subject to suit for a delisted patent is not relevant under the FDCA for purposes of determining exclusivity. The only lawsuits relevant to ANDA approvals are those regarding patents listed in the Orange Book. In any event, it seems unlikely that a patent holder would voluntarily delist a patent – which would mean giving up the automatic 30-month stay of approval of the ANDA – and then sue for patent infringement. See FDA Mem. at 34 & n.16.

language of the regulation." 302 F. Supp.2d at 357.  Similarly, with respect to the delisting issue

in the instant case, FDA's position has been consistent, and it is not required to amend its

regulation to restate this consistent position.  FDA Mem. at 29; AR Tab 23 at 18-20.  Neither

Ranbaxy nor Ivax points to any case in which FDA has applied the regulation in a manner

inconsistent with the decision in the instant case.

     As discussed in FDA's initial memorandum, FDA Mem. at 25, the D.C. Circuit in

Purepac Pharmaceutical Co. v. Thompson, 354 F.3d 877 (D.C. Cir. 2004) – like the court in Dr.

Reddy's – recognized that the first ANDA to file a paragraph IV is not automatically entitled to

exclusivity, and that changed circumstances can alter eligibility for  exclusivity.  There a patent

was delisted because it had been improperly listed in the first place.  Id. at 886.  Torpharm had

been the first to file a paragraph IV certification to the patent, and it had been sued for

infringement.  Id.  Torpharm argued that it was entitled to exclusivity on that basis, despite a

court determination that the patent should never have been listed at all.  The court, interpreting

21 C.F.R. § 314.94(a)(12)(viii)(B) – the same regulation applicable in the instant case – held that

Torpharm was not entitled to exclusivity.  Because Torpharm had been sued for infringement, it

had an even stronger claim than Ranbaxy and Ivax under  21 C.F.R. § 314.94(a)(12)(viii)(B) that

the patent should not be delisted, or that it should nevertheless be entitled to exclusivity.

Nonetheless, the court held that it was within FDA's authority to delist the patent and deny

exclusivity to Torpharm.[4]  The D.C. Circuit affirmed the district court's conclusion that FDA's

---

    [4]  Ivax attempts to distinguish Purepac on the ground that the patent listing there was
improper in the first instance and thus no ANDA could maintain a valid paragraph IV
certification.  Ivax at 10-11 n.6.  It asserts, in contrast, that it has "valid" paragraph IV
certifications and that the patents were delisted at the NDA holder's request.  Id.  Whatever the
reason for the delisting, however, Ivax cannot maintain a "valid" paragraph IV to a withdrawn

decision "deserved judicial deference." Id. Thus, courts have uniformly upheld FDA's

exclusivity decisions in cases similar to this one in which FDA has accounted for changes of

circumstance after initial paragraph IV certifications.

## II.    THE HOLDINGS IN MOVA AND PUREPAC DO NOT REQUIRE A DIFFERENT RESULT

Ivax argues that FDA has ignored the holdings in Mova Pharmaceutical Corp. v. Shalala,

140 F.3d 1060 (D.C. Cir. 1998), and Purepac Pharmaceutical Co. v. Friedman, 162 F.3d 1201

(D.C. Cir. 1998), which, it alleges, establish that FDA cannot impose a litigation requirement

when determining whether to delist a patent upon an NDA holder's request when there have been

paragraph IV certifications. Ivax at 1-2, 14. However, as FDA pointed out in its initial

memorandum, neither of those cases involved a request to delist a patent – which necessarily

implicates a loss in the basis for a paragraph IV certification. Thus, any discussion of a

"successful defense" or a litigation requirement in the context of non-delisted patents is not

relevant to the determination in this case. Plaintiffs have not articulated any basis for ignoring

the important distinction that the patents in this case were the subject of an NDA holder's

delisting request whereas the patents in Mova and Purepac were not.

If anything, the discussion of these issues in Mova actually supports FDA's decision in

the instant case. In Mova, the D.C. Circuit invalidated an FDA regulation that required an

ANDA applicant to "successfully defend" patent litigation in order to be eligible for the 180 day

exclusivity period. 140 F.3d at 1069. The court held that the "successful defense" requirement

---

patent. See Alphapharm PTY Ltd. v. Thompson, 330 F. Supp.2d 1, 9 (D.D.C. 2004) (affirming
FDA's refusal to accept an ANDA containing a paragraph IV certification to a patent that was
not listed in the Orange Book).

was too broad to address the problems identified by FDA, but one of the ways to address the issues would have been to impose a litigation requirement. Id. at 1071. Thus, the Court noted that an initial draft of FDA's regulation required the first ANDA applicant to "have been 'sued for patent infringement within 45 days. . . ,'" and that this "language would have corrected the problem of first applicants who are never sued. . . ." Id. Although FDA determined, post-Mova, not to utilize such a litigation requirement for eligibility for exclusivity in the first instance (i.e., when a patent is not delisted), see Purepac, 162 F.3d 1201, it does use such a requirement to determine eligibility for exclusivity (as in the instant case) when the NDA holder seeks to delist a patent. The D.C. Circuit's decision recognizing that it is within FDA's authority to impose such a requirement for non-delisted patents affirms the validity of FDA's decision to utilize such a requirement when there has been a request to delist. See Mova, 140 F.3d at 1071; FDA Mem. at 39.[5]

    Thus, Ranbaxy's argument that FDA "should have amended" its delisting regulation in light of Mova, see Ranbaxy at 11, and Ivax's argument that the agency's decision is entitled to no deference because the regulation has "been invalidated by a court and subsequently repealed by the agency," Ivax at 3, are meritless. Similarly meritless (and puzzling) is Ranbaxy's argument that 21 C.F.R. § 314.94(a)(12)(viii)(B) was never intended to deny exclusivity. Ranbaxy at 12, 14. FDA's interpretation and application of the regulation has remained consistent both before and after Mova: FDA has consistently delisted patents upon an NDA holder's request unless

---

    [5] Ivax argues, citing no support, that "Mova and Purepac specifically held that Congress did not permit FDA to distinguish between those applicants who have been sued for patent infringement and those who have not." Ivax at 14. As noted above, that was not the holding of those cases.

they are the subject of litigation. Under the explicit terms of the regulation, there would not be a paragraph IV certification, and thus there would be no exclusivity, for patents that the NDA holder seeks to delist prior to litigation.

In addition, Ivax continues to mischaracterize the regulation. Thus, it argues, citing FDA's 1994 preamble to the regulation, that FDA has stated that exclusivity should not be denied by a delisting request. Ivax at 5, 19. However, as discussed in FDA's initial memorandum, FDA's regulation, as recognized in the cited preamble, is only directed to preserving exclusivity when an NDA holder requests patent delisting and there is litigation, not in all situations, as suggested by Ivax. FDA Mem. at 27-28.

Another recurring argument made by Ranbaxy and Ivax is that, even though they were not sued for patent infringement with respect to the withdrawn patents, they should be rewarded with exclusivity because their patent challenges may have led to the withdrawal of the patents. Ranbaxy at 20; Ivax at 10, 18. The D.C. Circuit, however, rejected a very similar argument in Mova. There, intervenor Mylan was not sued for patent infringement even though the first paragraph IV filer, Mova, had been sued. Mylan argued that it had done a superior job of designing around the patent and that was the reason it was not sued. 140 F.3d at 1072. Therefore, Mylan argued that it should be allowed to go to market immediately, and Mova should not be awarded the exclusivity period. Id. In rejecting this argument, the court held: "The fact that a patent-holder fails to sue an ANDA applicant does not necessarily mean that it has concluded that the applicant did a good job of designing around its patent." Id. It may mean a number of things, including that the patent holder concluded that the patent was improperly listed.

11

## III.    FDA'S DECISION IS CONSISTENT WITH THE PURPOSES OF THE STATUTE

As discussed in FDA's initial memorandum, FDA's decision is consistent with the purposes of the statute because it properly maintains incentives for exclusivity, removes unnecessary barriers to generic drug entry, and defers to the patent holder's request to delist patents.  FDA Mem. at 30-38.  FDA's decision maintains the "appropriate balance between competition and incentive."  AR Tab 23 at 13.  Ranbaxy argues that FDA's decision "bears no relation to the actual success of an ANDA applicant or the speed with which a generic competitor will enter the market."  Ranbaxy at 19.  In support of this argument, Ranbaxy argues that an ANDA applicant "that is not sued is able to market a generic verison earlier than it would were it sued."  Id.  If such an applicant is awarded exclusivity, however, then although that applicant might get to market faster, others will not.  Hence, FDA's position, which permits all ANDAs to get to market faster when, as here, a withdrawn patent no longer serves as a barrier to approval, is more consistent with the purpose of the statute which, as Ranbaxy concedes, is "to get generic drugs into the hands of patients at reasonable prices – fast."  Id. at 19 (citing In re Barr Labs, Inc., 930 F.2d 72, 76 (D.C. Cir. 1991)).  Moreover, if Ranbaxy and Ivax were awarded exclusivity, they could keep all other generics off the market indefinitely if they did not trigger the exclusivity period through the commercial marketing of their products because, absent a law suit, there could never be a court decision invalidating the patent.  21 U.S.C. § 355(j)(5)(B)(iv).  See FDA Mem. at 34-35; AR Tab 23 at 15-16.

Ivax argues that FDA's decision will encourage patent holders to improperly delist patents.  Ivax at 12.  The possible reasons for such alleged delisting include: 1) collusion with an ANDA applicant; 2) a desire "to thwart the Hatch-Waxman incentive structure and thus

12

systematically discourage paragraph IV challenges generally"; and 3) a desire to harm ANDA

applicants by letting them produce too much product and then undercutting the need for such

product. Id. at 12-13. These arguments are highly speculative and presume that patent holders

will intentionally withdraw appropriately listed patents just to foil competition from one generic

company for six months while embracing competition from multiple generics for the same six

months. This argument is not only speculative and unsupported, it is illogical. See AR Tab 23 at

16.[6]

Ranbaxy argues that patent delistings are not as uncommon as FDA indicated in its initial

memorandum, and thus the potential loss of exclusivity posed by such delistings is significant.

Ranbaxy at 24. The list produced by Ranbaxy at its Attachment A in support of that assertion,

however, contains many repeat citations to the same patent for drugs for which the patent is listed

for more than one strength or where pediatric exclusivity attaches. See, e.g., Att. A at 3-4

(showing 32 separate patent delisting requests for paroxetine hydrochloride – for only two

patents). In addition, NDA holders may have many reasons to request that a patent be delisted,

such as when a court decides that the patent is invalid or not infringed – requests that would be

reflected in Attachment A but would not implicate the circumstances of this case. Ranbaxy's

Attachment A does not provide the total number of patent delisting requests for patents for which

no paragraph IV certifications were filed – and which Ranbaxy does not dispute should be

delisted – nor is such information readily obtainable from FDA's own records. Thus, the

---

[6] The Federal Trade Commission in fact expresses concern about the potential anticompetitive effects of prohibiting delisting – not allowing it. AR Tab 14 at 6 ("Such a rule [prohibiting delisting] would have significant, negative implications for competition in the pharmaceutical industry, to the detriment of consumers.").

13

delisting requests in Attachment A represent a much broader category than the requests relevant to this case, i.e., when an NDA holder requests that a patent be delisted that has been the subject of a paragraph IV certification but not litigation.

Even if requests in this category were easily identifiable or more numerous, Ranbaxy provides no empirical support for its conclusion that such requests actually deter paragraph IV certifications. Indeed, generic companies file ANDAs containing paragraph IV certifications even when it is clear that they cannot obtain exclusivity from that challenge, given the obvious benefit of early market entry that may result from filing such a challenge. See, e.g., FDA's July 2, 2004 Citizen Petition Response for Docket Nos. 2004P-0075 & 2004P-0261 at 13, available at http://www.fda.gov/ohrms/dockets/dailys/04/july04/070704/04p-0075-pdn0001.pd ("In the absence of evidence to the contrary, the continuing willingness of ANDA applicants to submit subsequent ANDAs and expose themselves to risk of patent infringement litigation – without any prospect of sharing in 180-day exclusivity – also supports the conclusion that the incentives created by 180-day exclusivity remain adequate."). A fortiori, if such challenges are routinely filed without any hope of exclusivity, it seems unlikely that the remote possibility of patent delisting will significantly deter filing paragraph IV certifications.

Lacking evidence of a deterrent, Ranbaxy relies on "economic principles governing entry of generics," citing a declaration of an economist who concludes: "If generic firms believed that the 180-day exclusivity period would be removed due to patent 'delisting,' they would be less likely to sink the resources into 'designing around a patent' and preparing for a legal challenge." Ranbaxy at 24 (citing Ward Declaration, Ranbaxy Attachment B, at ¶ 17); see also Ivax at 12 ("The ANDA filer will be reluctant to expend the time and money to locate those patents [to

14

challenge] if the potential reward is the same as the generic competitor that does nothing."). The economist's conclusion, however, rests on generic firms' "belief" that any given patent "would" be delisted, a belief that is speculative because in the ordinary course most patents are not in fact delisted until they are either successfully challenged or expire. Thus, any conclusion that can be drawn from such a belief is also speculative. In any event, this Declaration is irrelevant; it is not in the Administrative Record, nor did Ranbaxy or Ivax list these alleged facts as material in their Statements of Material Facts as to Which There is No Genuine Issue.

Finally, Ranbaxy concedes that exclusively does not automatically vest upon filing a paragraph IV certification, but argues: "Adding a new, unpredictable way in which an ANDA applicant might lose exclusivity is an additional deterrent regardless of the number of other ways in which it might happen." Ranbaxy at 25. FDA's decision in this case, however, which relies on a long-standing regulation, does not represent a "new" way that exclusivity may be lost; nor is the loss of exclusivity from patent delisting any more unpredictable than, for example, the possibility that an ANDA applicant will be sued and lose its patent litigation, or that a first applicant's exclusivity will be triggered by a court decision concerning a subsequent ANDA before the first applicant can take advantage of it. FDA's regulation at issue in this case is fully consistent with the agency's practice to account for changed circumstances when making exclusivity determinations.

## IV.    THE MMA DOES NOT AID THE COURT IN CONSTRUCTION OF THE APPLICABLE STATUTE

As discussed in FDA's initial memorandum, the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) is not applicable to the instant case

15

because the first relevant certifications were submitted prior to the effective date of the MMA. FDA Mem. at 6 n.1; see also FDA Mem. at 42-43. Ranbaxy argues that because the MMA appears to contemplate that exclusivity survives the delisting of a patent, this Court should utilize this statute in analyzing the prior statutory scheme. Ranbaxy at 9-10. However, the forfeiture provision cited by Ranbaxy is an entirely new feature of the statute that Congress passed for the express purpose "to prevent the parking of the exclusivity," i.e., the utilization of exclusivity to delay market entry. See 149 Cong. Rec. S15884 (Nov. 25, 2003). Ranbaxy is also incorrect in arguing that the MMA was not intended to change factors relevant to granting exclusivity. Ranbaxy at 10. In addition to the new forfeiture provision discussed above, Congress replaced the existing exclusivity provision with a newly enacted provision that defines "first applicant" and provides that only first applicants to file a paragraph IV certification to any listed patent will be eligible for 180-day exclusivity. See 21 U.S.C. § 355(j)(5)(B)(iv)(2005). This would preclude multiple exclusivity periods based on later-filed patents. 149 Cong. Rec. S15884 ("The Hatch-Waxman provisions in this bill also make the exclusivity available only with respect to the patent or patents challenged on the first day generic applicants challenge brand drug patents, which makes the exclusivity a product-by-product exclusivity rather than a patent-by-patent exclusivity, and the exclusivity is available to more than one generic applicant, if they all challenge patents on the same day.").

## CONCLUSION

For the foregoing reasons and the reasons stated in the federal defendants' initial

memorandum, federal defendants' motion for summary judgment should be granted.

Of Counsel:

Respectfully submitted,

PAULA M. STANNARD
Acting General Counsel

PETER D. KEISLER
Assistant Attorney General

SHELDON T. BRADSHAW
Associate General Counsel
Food and Drug Division

EUGENE M. THIROLF
Director

ERIC M. BLUMBERG
Deputy Chief Counsel, Litigation

DRAKE CUTINI
Attorney
Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044
Tel: (202) 307-0044
Fax: (202) 514-8742

WENDY S. VICENTE
Associate Chief Counsel
U.S. Dept. of Health & Human Services
Office of the General Counsel
5600 Fishers Lane
Rockville, MD 20857
(301) 827-7138

December 30, 2005

17