UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IVAX PHARMACEUTICALS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL O. LEAVITT, et. al., | ) | CIVIL NO. 05-CV-0 183 8 (RWR) |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## DECLARATION OF RAFICK HENEIN, PH.D.

I, RAFICK HENEIN, Ph.D., declare as follows:

1.    I am the President of IVAX Pharmaceuticals, Inc. ("IVAX"), which is a wholly owned subsidiary of IVAX Corporation.  IVAX's primary business is the development, manufacture, distribution and sale of generic drugs in the United States.

2.    By virtue of my present position, education, and professional experience, I am familiar with the facts relating to IVAX's present motions as well as those relating to the underlying lawsuit. I am familiar with the marketing of drug products in general and with the marketing of generic drugs in particular. This document is based on my personal knowledge and records retained by IVAX in the ordinary course of business.

3.    IVAX believes it was the first applicant to submit a substantially complete ANDA with a paragraph IV certification to U.S. Patent No. RE 36,481 ("the '481 patent"), and U.S. Patent No. RE 36,520 ("the '520 patent") for simvastatin 5, 10, 20 and 40 mg (Zocor®). As the first to submit a substantially complete ANDA for the 5, 10, 20 and 40 mg strengths with a paragraph IV certification to the '481 and '520 patents, IVAX would be entitled to 180 days of

marketing exclusivity for the 5, 10, 20 and 40 mg strengths of simvastatin. The legal basis for its entitlement is described more fully in its pending motion for summary judgment.

4.      Before IVAX can bring its 5, 10, 20 and 40 mg strengths of simvastatin to market, it will need to invest in the production of those tablets. The amount of inventory that IVAX will need will vary considerably depending on whether IVAX receives 180-day exclusivity or not. In order to fully satisfy anticipated demand at the expected launch date of June 2006, IVAX will need to ascertain its production needs at least four to five months in advance.

5.      Moreover, Drug tablets have limited shelf lives. If IVAX produces the tablets necessary to satisfy demand, assuming that it will receive exclusivity, but does not obtain it, the excess inventory will need to be discarded at a substantial cost to the company.

6.      IVAX has invested considerable money and resources to ensure that it was the first to file an ANDA with a paragraph IV certification to the '481 and '520 patents for simvastatin 5, 10, 20 and 40 mg strengths. If IVAX does not receive 180-day exclusivity for its 5, 10, 20 and 40 mg strengths of simvastatin, it will not be able to offset these costs.

7.      According to Merck's 2004 Annual Report, sales of Zocor internationally in 2004 were $5.2 billion. Based on my knowledge of the market for simvastatin, IVAX expects that, if FDA recognizes its right to exclusivity, IVAX will be able to sell three or more times the number of simvastatin 5, 10, 20 and 40 mg tablets during the first year than it would absent exclusivity. To serve that demand, IVAX will need to invest in considerable inventory.

8.    The benefits of 180-day exclusivity are substantial. If FDA were to approve other ANDAs for simvastatin 5, 10, 20 and 40 mg following expiration of United States Patent No. 4,444,784, or if uncertainty over the outcome of this litigation left IVAX unable to anticipate the demand for its drug product, IVAX would be deprived of millions of dollars in projected profits over the first six months of marketing, despite the millions of dollars in development costs.

9.    It is also well known in the pharmaceutical industry that there are substantial advantages in being able to market a drug product before your competition. First, is the advantage of being a source of generic product for some period and thereby capturing market share that would otherwise be shared. In addition, during the period of exclusivity, one is able to cement relationships with customers in order to maintain market share even after other competitors enter the market. All of this will be unrecoverable if FDA's decision is not reversed sufficiently in advance of approval to allow IVAX the opportunity to effectively market its generic simvastatin products.

10.    Should this case not be decided in sufficient time to prepare for the launch date, IVAX will be harmed by its inability to anticipate demand. If IVAX acquires too little inventory and its 180-day exclusivity is upheld, it will effectively lose the benefit of its exclusivity because it will not be able to supply sufficient drug product to its customers. Consumers, in turn, will be denied the benefit of a lower priced generic competitor. On the other hand, if IVAX acquires sufficient inventory to satisfy the demand expected during 180-day exclusivity but the court upholds FDA's position, it will be harmed by the losses attributed to acquiring excessive inventory.

11.   Accordingly, IVAX will be seriously and irreparably harmed from delayed resolution of its challenge to FDA.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 18th day of January 2006.

RAFICK HENEIN, Ph.D.